## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISON

| | | |
|---|---|---|
| LATINOS FOR TRUMP, BLACKS FOR TRUMP, JOSHUA MACIAS, M.S., B. G., J.B., J.J., | § § § § | |
| Plaintiffs. | § § | |
| v. | § § § | CIVIL ACTION NO.    6:21-cv-43 |
| PETE SESSIONS, MITCH McCONNELL, NANCY PELOSI, MARK ZUCKERBERG, CHUCK SCHUMER, ALEXANDRIA OCASIO-CORTEZ, BRAD RAFFENSPERGER, ALL MEMBERS OF THE 117TH U.S. CONGRESS, et al., | § § § § § § § § | JURY TRIAL REQUESTED |
| Defendants. | | |

## ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

COME NOW, Latinos for Trump, Blacks for Trump, Joshua Macias, M.S., B. G., J.B.,

J.J., (collectively, "Plaintiffs"), by and through their attorneys, Paul M. Davis, and

Kellye SoRelle, and respectfully represent the following to this Honorable Court:

### I.
### NATURE OF SUIT AND THE CONSTITUTIONAL CRISIS

1.     Despite the appearance of "Trump" in the names of two of the Plaintiff

entities, this is not a 2020 presidential election fraud lawsuit.[1]  This lawsuit does not

seek to change the declared winner of any election that took place in the past year,

---

[1] This is not a Sidney Powell lawsuit.  This is not a Rudy Giuliani lawsuit.  This is not a Lin Wood lawsuit.  This is not a Team Trump lawsuit.  This is not a Republican lawsuit.  This is not a Democrat lawsuit.

including the 2020 Presidential Race and the 2021 Georgia Senate Runoff.  In fact, this lawsuit will most certainly not inure to the benefit of any American politician, regardless of party affiliation.[2]

2.     Instead, this lawsuit demonstrates how various and pervasive changes in election procedures implemented in all 50 states in response to the COVID-19 pandemic violated the 2002 Help America Vote Act, 42 U.S.C §§ 15301 *et seq.*,as amended ("HAVA").  Because Congress has the express constitutional authority to enact laws,[3] such as HAVA, to mandate minimum standards for federal election integrity; because the 50 states were required to follow the minimum election standards set forth in HAVA in the 2020 federal elections; and because all 50 states failed to do so; this failure deprived every single U.S. Citizen, including Plaintiffs, of their sacrosanct Constitutional right to participate in the democratic election of their congressional representatives to the federal government in the 2020 election (the "Federal Election"),including both the U.S. Senate and House of Representatives, by stripping such Plaintiffs and other citizens of their fundamental right to cast a legal vote in the Federal Election without due process of law and while acting under color of law.[4]

3.     The evidence will show that this egregious deprivation of the most basic right guaranteed to every American since the founding of the Republic—the right to

---

[2] Except to the extent that it may benefit such persons in their role as an ordinary citizen of these United States.

[3] See Article I, Section 4

[4] *See, e.g., United States v. State of Tex.*, 252 F. Supp. 234, 250–51 (W.D. Tex.), *aff'd sub nom. Texas v. United States*, 384 U.S. 155, 86 S. Ct. 1383, 16 L. Ed. 2d 434 (1966).

cast a legal vote in a federal election, which amounts to the right to a government by consent of the governed was not, in the case of many Defendants, the result of mere negligence or ignorance.  The evidence that will come forth in the course of this lawsuit will establish an intentional concert of conduct between federal, state, and local government officials and various partisan enterprises that should be considered a boot to the throat of every American who believes that the Constitution of the United States guarantees every citizen the right to a government elected by the People.

4.      The truth of the allegations set forth herein compels the shocking conclusion that every member of currently-seated 117th U.S. Congress and the President-Elect, who is scheduled to be sworn in this coming Wednesday, January 20th, were not legitimately elected because the People of the United States were given ballots that were patently illegal under federal law, namely HAVA.  Therefore, the entire 117th Congress is illegitimate and all actions taken since January 3, 2021, including the counting of the Electoral College votes and confirmation of Joseph Biden as President-Elect and the impeachment of President Donald J. Trump are null and void.

5.      Never before in the history of the United States of America (the "Republic") has the entire federal election been conducted in clear and unequivocal violation of duly-enacted federal election law.  With the sitting President's term set to expire this Wednesday, January 20th, this situation is a Constitutional Crisis of cataclysmic proportion unlike any seen since the Southern States seceded from the

Republic in 1861.  The only conceivable remedy is for this Honorable Court to enter an injunction to restrain all further action and to enjoin the enforcement and effect of all previous actions of the 117th Congress until trial upon the merits, and, upon a verdict for the Plaintiffs, for the Court to order the 50 states to conduct a new federal election that conforms to the minimum standards of HAVA.

6.      The 20th Amendment mandates that President Trump's term must end at noon on January 20th, but since Congress's act on January 6, 2021 in confirming Joseph Biden as President-Elect was clearly illegitimate, and there is effectively no lawfully existing Legislative Branch this means that the Presidential Inauguration cannot lawfully go forward on Wednesday.  Thankfully, there is still time for the only the only lawfully and constitutionally remaining federal public official, President Donald Trump to take all reasonable and necessary action consistent with the Take Care Clause of Article II, Section 1 and all the original intents and purposes of the Constitution of the United States to preserve the lawful and orderly continuity of government.

7.      Accordingly, this Court should rest assured that the relief requested in this lawsuit will not result in the destruction of democracy, as the dishonest national news media, who has been complicit in this crisis and as will be shown in the course of this lawsuit, will attempt to claim.  No, it is actually the exact opposite.  The purpose of this lawsuit is merely to enforce the laws and Constitution of the Republic to SAVE AND RESTORE the democratic republican process on which the People have depended to protect their individual rights since the dawn of our Republic.

8.     The intentional failure of such enforcement, perpetrated by a host of federall and state government officials acting in concert with private individuals, deprived the Plaintiffs of their sacred constitutional rights.  Plaintiffs are clearly not the first group of Black and Latino voters deprived of their right to legally cast a vote, but they are the first such group to stand in the gap for all citizens and residents of the Republic, regardless of race, color, religion, creed, sex, or national origin (collectively, including Plaintiffs, the "People").  If the Court does not grant the relief requested in this Complaint and the forthcoming Emergency Motion for Temporary Restraining Order, Plaintiffs and all the People they now represent will suffer the gravest and most extreme form of imminent and irreparable harm imaginable: the permanent and irreversible right to a government by consent of the governed.

## II.
## SUMMARY OF CASE

9.     The sheer volume of evidence in this action revealing Defendants' shocking acts and omissions that deprived Plaintiffs of their constitutional and statutory rights to participate in the democratic election of their representatives to Congress could give anyone the impression that this lawsuit presents convoluted or complex legal theories.  To the contrary, Plaintiffs' right to relief in this matter is so simple that a 3rd grader could be taught to understand it.  Here is the unassailable syllogism that compels Plaintiffs' relief:

1) Article 1, Section 4 of the Constitution specifies that, although the state legislatures shall prescribe the regulations for the election of Senators and Representatives, the Congress may make or alter such regulations, except as to the selection of Senators;

2) Congress exercised this authority by enacting the minimum standards for election integrity in HAVA to restore public confidence in US elections in response to the *Bush v. Gore* debacle;

3) States were therefore required to follow the minimum standards for the election of Representatives;

4) As to Senators, all 50 states made an enforceable contract with Congress by accepting federal monies in exchange for the state's agreement to implement the minimum standards of HAVA;

5) All 50 states made changes to their election procedures regarding voter registration and ballot applications, particularly mail-in and absentee ballot applications that violate the minimum standards of HAVA prior to the 2020 congressional elections in response to the COVID-19 pandemic;

6) Therefore, the ballots provided to all persons who voted in the 2020 congressional elections were themselves illegal;

7) It is self-evident that a legal vote cannot be cast by virtue of an illegal ballot;

8) Therefore, not a single member of the 117th United States Congress was legally elected, which renders Congress illegitimate.

## III.
## PARTIES

### A. Plaintiffs

10.     Plaintiff, Joshua Macias is an individual residing in North Carolina.

11.     Plaintiffs, Latinos for Trumps, are a political organization whose members are Latino and located throughout the United States;

12.     B.G.[5] is the founder of Latinos for Trump and resides in Texas.

13.     Plaintiffs, Blacks for Trump, are a political organization whose members are Latino and located throughout the United States;

---

[5] Plaintiffs with initials are so named due to their reasonable fear of their personal safety if their identity is made public as a result of this lawsuit.

14.     Plaintiff, M. S. founder of Latinos for Trump and resides in Florida.

15.     Plaintiff, J.B. is a former Texas congressional candidate who was on the federal ballot for a Congressional seat in the 117th Congress and who resides in Texas.

16.     Plaintiff J.J. resides in Alabama.

**B. Defendants**

17.     Defendant, Pete Session and acted as an individual and in his official capacity as a so-called Member of the US House of Representatives who may be served with process at his Waco District Office, 400 Austin Ave., Suite 302, Waco, TX 76701 or wherever he may be found and is a resident of the State of Texas.

18.     Defendant, Nancy Pelosi is and acted as an individual and in her official capacity as the Speaker of the US House of Representatives who may be served with process at 1236 Longworth H.O.B. Washington, DC 20515 or wherever she may be found and is a resident of the State of California.

19.     Defendant, Mitch McConnell is and acted as an individual and in his official capacity a as a US Senator and Senate Majority Leader who may be served with process at 317 Russell Senate Office Building Washington D.C or wherever he may be found and is a resident of the State of Kentucky.

20.     Defendant, Mark Zuckerberg is and acted as an individual and in his capacity as founder of the Chan Zuckerberg Initiative located at 314 Lytton Ave Palo Alto, Ca. 94301, where he may be served with process or wherever else he may be found.

21.    Defendant, Chuck Schumer, is and acted as an individual and in his official capacity as a US Senator who may be served with process at 322 Hart Senate Office Building Washington, D.C. 20510.

22.    Defendant, Brad Raffensperger, is and acted as an individual and in his official capacity as Georgia Secretary of State, may be served with process at 214 State Capitol Atlanta, Georgia 30334.

23.    Plaintiff name, individually as Defendants all current so-called members of the 117th Congress of the United States, including all members of both the U.S. House of Representatives and the U.S. Senate who are individuals residing in the respective states they purport to represent and may be served with process at their respective Washington D.C. and/or local state offices at the addresses publicly provided via the following links or by virtue of other publicly available sources or wherever they may be found:

https://ballotpedia.org/List_of_current_members_of_the_U.S._Congress   and https://ballotpedia.org/List_of_current_members_of_the_U.S._Congress#U.S._Senate

24.    Plaintiffs additionally names as Defendants, all the state governors and secretaries of state listed in Exhibit 1 attached hereto.  These individuals reside in the respective state listed above their names and may be served with process at the addresses provide in Exhibit 1 or wherever they may be found.

**IV.**
**JURISDICTION AND VENUE**

25.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States.  Furthermore, where, as here, deprivations of constitutional rights are alleged, including a conspiracy to deprive or failure to prevent or render aid regarding such deprivations, 28 U.S.C. § 1343 confers original subject matter jurisdiction on the federal district courts.  Finally, this court also has diversity jurisdiction.

26.     The Court has personal jurisdiction over the federal elected officials named as Defendants because they acted in alongside state or local officials under color of law.[6] In so doing, the purposely availed themselves of and or can reasonably anticipate being hailed into federal court in the State of Texas.

27.     Venue is proper in this district because one or more of the Defendants resides in this district and the district has a substantial connection to the claim, since one or more of the Plaintiffs also reside in this district.

28.     All conditions precedent to this action have occurred.

## V.
## STATEMENT OF FACTS

### A. The Failure to comply with HAVA

29.     HAVA is a statutory scheme enacted by the 107th congress to address allegations of "fraud in the 2000" election that effectively changed major elements of the administrative process for federal elections by invoking Congress's constitutional authority to set rules for congressional elections.

---

[6] *Tongol v. Usery*, 601 F.2d 1091 (9th Cir. 1979).

30.    HAVA set forth specific "minimum requirements" with which the Defendants, as members of state or federal government, or governmental employees, or elected officials acting under color of law, failed to comply in the conduct of the 2020 Federal Election.

31.    The minimum requirements in HAVA stipulated specific duties regarding "mail in ballots," "registration of voters by mail," and highly detailed voter identification processes, and other requirements with which Defendants, as members of state or federal government, or governmental employees, or elected officials acting under color of law purposefully or negligently failed to comply.

32.    Defendants are members of state or federal government, or are governmental employees, or elected officials acting alongside one another and/or in concert under color of law, who unlawfully used federal monies tied to HAVA in a manner which failed to meet lawful requirements defined as "minimum requirements" in HAVA and instead used federal monies for the purpose of causing all 53 federal voting regions to fail to comply with federal election law.

33.    Defendants, as members of state or federal government, or governmental employees, or elected officials acting alongside one another and/or in concert under color of law, engaged in "last minute" conduct, which violated federal law regarding "certification" of voting machines.

34.    Defendants as members of state or federal government, or governmental employees, or elected officials acting alongside one another and/or in concert under color of law, engaged in acts of 'selective enforcement' to fraudulently certify federal

elections as valid, when in fact they were unlawful and failed to meet criteria set forth in federal law.

35.    Defendants as members of state or federal government, or governmental employees, or elected officials acting alongside one another and/or in concert under color of law, had specific knowledge of administrative requirements due to HAVA, and negligently failed to implement these requirements using unlawful 'states rights' claims.

36.    Defendants as members of state or federal government, or governmental employees, or elected officials acting alongside one another and/or in concert under color of law, by oath have specific duties which they failed to conduct in support of acts of conspiracy to unlawfully influence a federal election.

37.    Defendants as members of government, or governmental employees, or elected officials acting alongside one another and/or in concert under color of law, after Plaintiffs and other third parties raised concern regarding the possibility of an unlawful election engaged in acts to destroy evidence, inhibit discovery, and engaged in fraudulent statements to defend a conspiracy to engage in the conduct described herein.

38.    Defendants who are members of U.S. Congress knowingly passed the CARES Act to provide federal money used to modify state procedures for federal elections in violation of HAVA and then negligently failed to amend HAVA to accommodate these changes to state procedures for federal elections.

39.    The foregoing actions of Defendants, many, if not all, acting alongside one another and/or in concert, resulted in the failure of every ballot used to conduct the 2020 federal elections, including the Senate, House of Representatives, and the Presidential elections.

**B. Specific Failures in Each State to Comply with HAVA**

Due to the acts of the Defendants all fifty states failed to comply with HAVA as follows:

40. **Alabama.**

Alabama modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting:** Any qualified voter could cast an absentee ballot in the general election.

41. **Alaska**

**General election changes: Alaska modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:**

**Absentee/mail-in voting: The witness requirement was suspended.**

Alaska election changes

**October 12, 2020: State supreme court suspends absentee/mail-in ballot witness requirement**

On October 12, 2020, the Alaska Supreme Court affirmed a lower court's order suspending the state's witness requirement for absentee/mail-in ballots. On October 5, 2020, Superior Court Judge Dani Crosby ruled "application of the Witness Requirement during the pandemic impermissibly burdens the right to vote." The plaintiffs to the original lawsuit–including the Arctic Village Council and the League of Women Voters of Alaska–argued that they and other voters "should not be forced to choose between risking exposure to COVID-19 through complying with

the Witness Requirement or forgoing their right to vote." The defendants said the plaintiffs "waited too long to seek relief from the court and that the doctrine of laches requires the court to dismiss their complaint." Under the laches doctrine, a party is not entitled to pursue a claim if the plaintiff has "unreasonably delayed in bringing the action."  The state supreme court did not explain its reasoning in its October 12, 2020, order, saying that a full opinion on the matter would be forthcoming.

**March 20, 2020: Alaska Democrats cancel in-person voting and extend vote-by-mail deadline for presidential preference primary**

On March 20, 2020, the Democratic Party of Alaska announced the cancelation of in-person voting in its presidential preference primary, originally scheduled for April 4, 2020, opting instead to conduct all voting by mail. The party extended the vote-by-mail ballot receipt deadline to April 10, 2020.

42. **Arizona**

**General election changes**

Arizona modified its voter registration procedures for the November 3, 2020, general election as follows:

**Voter registration:** Voters had until 5:00 p.m. on October 15, 2020, to register to vote.  In all aspects Arizona failed to meet the identification requirements with mail in ballots, and mail in registration, as well as failed to obtain and then maintain identification documents with the mail in ballot for first time voters in a federal election.

Arizona election changes

**October 6, 2020: Ninth Circuit reverses lower court's extension of period during which voters can add missing signatures to vote-by-mail ballots**

On October 6, 2020, a three-judge panel of the U.S. Court of Appeals for the Ninth Circuit reversed a lower court's order that would have allowed voters up to five days

to provide missing signatures for absentee/mail-in ballots. The plaintiffs had argued that Arizona's Election Day deadline for curing unsigned absentee/mail-in ballot envelopes violated the Fourteenth Amendment by "unjustifiably burdening the right to vote" and "denying procedural due process."

43. **Arkansas.**

**General election changes**

Arkansas modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

> **Absentee/mail-in voting:** Voters in the general election could cite concerns over COVID-19 as a valid excuse for voting absentee.
>
> Arkansas election changes

**August 7, 2020: Governor issues executive order allowing voters to cite concerns over COVID-19 as a valid excuse for voting absentee**

On August 7, 2020, Governor Asa Hutchinson (R) issued an executive order extending absentee ballot eligibility to all voters in the November 3, 2020, general election "who conclude their attendance at the polls may be a risk to their health or the health of others due to the COVID-19 pandemic." The order formalized a policy first announced by Hutchinson and Secretary of State John Thurston (R) on July 2, 2020.[24]

**July 2, 2020: Governor, secretary of state announce voters can cite concerns over COVID-19 as a valid excuse for voting absentee**

On July 2, 2020, Gov. Asa Hutchinson (R) and Secretary of State John Thurston (R) announced that voters in the November 3, 2020, election would be allowed to cite concerns over COVID-19 as a valid excuse for voting absentee. Hutchinson said, "They just simply have a concern, a fear of going to the polling place because of the COVID-19, that's enough of a reason." Hutchinson said he did not intend to issue an executive order on the matter.[25]

44. **California.**

**General election changes**

California modified its absentee/mail-in and in-person voting procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: Mail-in ballots were sent to all registered voters in the general election.

California election changes

**August 6, 2020: Governor signs legislation making modifications to administration procedures for the November 3, 2020, general election**

On August 6, 2020, Governor Gavin Newsom(D) signed SB 423 into law, making a number of modifications to administration procedures for the November 3, 2020, general election:[27]

Authorize counties to defer opening vote centers until the third day before the election (state statutes provide for vote centers to open 10 days before the election in counties conducting all balloting by mail)

**June 18, 2020: Governor signs legislation requiring county election officials to send mail-in ballots to all registered voters in the November 3, 2020, general election**

On June 18, 2020, Governor Gavin Newsom (D) signed AB860 in law, requiring county election officials to mail absentee/mail-in ballots to all registered voters in the November 3, 2020, general election. On May 8, 2020, Newsom had issued an executive order to the same effect.

**June 3, 2020: Governor issues executive order authorizing counties to consolidate polling places in November 3, 2020, general election**

On June 3, 2020, Governor Gavin Newsom (D) issued an executive order giving counties permission to consolidate polling places in the November 3, 2020, general election, provided they offer three days of early voting. Newsom authorized counties to operate one polling place per 10,000 registered voters, provided that those locations be open eight hours per day from October 31, 2020, to November 2, 2020, for early voting.

**May 8, 2020: Governor issues executive order providing for all-mail balloting in November 3, 2020, general election**

On May 8, 2020, Governor Gavin Newsom (D) signed an executive order directing county election officials to send mail-in ballots to all registered voters in the November 3, 2020, general election. Newsom announced that in-person voting locations would still be available. The full text of the press release accompanying the executive order is presented below.

45. **Colorado.**

**General election changes**

Colorado did not modify any procedures for the November 3, 2020, general election.

46. **Connecticut**

**General election changes**

Connecticut modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: Absentee/mail-in ballot applications were sent to all registered voters in the general election. Voters could cite concern over COVID-19 as a reason for voting absentee in the general election.

Connecticut election changes

**August 10, 2020: Connecticut governor issues executive order extending absentee ballot deadlines in the August 11, 2020, primary election**

On August 10, 2020, Governor Ned Lamont (D) issued an executive order directing election officials to accept absentee ballots postmarked by August 11, 2020, and delivered by August 13, 2020. The order applied only to the August 11, 2020, primary election.[37]

**July 31, 2020: Connecticut governor signs legislation extending absentee voting eligibility for November 3, 2020, general election**

On July 31, 2020, Governor Ned Lamont (D) signed HB6002 into law, allowing voters to cite concern over COVID-19 as a reason for voting by absentee ballot in the November 3, 2020, general election. The legislation provided for the following

additional administration modifications to the November 3, 2020, general election:[38][39]

- "requires town clerks to designate, and authorize absentee voters to return absentee ballots to, drop boxes"
- "authorizes the secretary of state, subject to certain conditions, to waive mandatory supervised absentee voting requirements"

47. **Delaware**

**General election changes**

Delaware modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: Vote-by-mail applications were sent to all registered voters in the general election.

Delaware election changes

**July 1, 2020: Governor signs legislation providing for automatic vote-by-mail applications to be sent to all qualified voters in the 2020 primary, general, and special elections**

On July 1, 2020, Governor John Carney (D) signed HB346 into law, providing for the state election commission to deliver a vote-by-mail application to every qualified voter in the 2020 primary, general, and special elections.

48. **Florida.**

**General election changes**

Florida modified its voter registration procedures for the November 3, 2020, general election as follows:

**Voter registration**: The voter registration deadline was extended to October 6, 2020.   Florida failed to collect first time mail in voter information / administer processes as required in Help America Vote Act Sec. 303.

49. **Georgia.**

**General election changes**

Georgia modified its absentee/mail-in voting procedures.   Georgia mailed out absentee ballot forms to all voters, and failed to conduct the requirements to obtain identification, and qualification questions / answers pursuant to Sec. 303 of Help America Vote Act.

50. **Guam.**

**General election changes**

Guam did not modify any procedures for the November 3, 2020, general election.

12. **Hawaii.**

**General election changes**

Hawaii did not modify any procedures for the November 3, 2020, general election.

51. **Idaho.**

**General election changes**

Idaho did not modify any procedures for the November 3, 2020, general election.

52. **Illinois**

**General election changes**

Illinois modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: Mail-in ballot applications were sent to all registered voters in the general election who cast ballots in the 2018 general election, the 2019 consolidated election, or the 2020 primary election.

Illinois election changes

**June 16, 2020: Governor signs legislation directing local election officials to send vote-by-mail ballot applications to all recent voters in the November 3, 2020, general election**

On June 16, 2020, Governor J.B. Pritzker (D) signed SB 863 and HB2238 into law, requiring local election officials to deliver vote-by-mail applications to all voters who cast ballots in the 2018 general election, the 2019 consolidated election, or the 2020 primary election. The legislation also expanded early voting hours at permanent

polling places and authorized curbside voting. The law's provisions were set to apply to the November 3, 2020, general election.

53. **Indiana**

**General election changes**

Indiana did not modify any procedures for the November 3, 2020, general election.

54. **Iowa.**

**General election changes**

Iowa modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: Absentee ballot application forms were sent to all registered voters in the general election.

55. **Kansas.**

**General election changes**

Kansas did not modify any procedures for the November 3, 2020, general election.


56. **Kentucky**

**General election changes**

Kentucky modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- o Absentee/mail-in voting: Absentee/mail-in voting eligibility was extended to all voters "concerned with contracting or spreading COVID-19."
- o Kentucky under executive order mandated unattended ballot drop boxes failing to conduct the identification / information gathering requirements of Sec. 303.


Kentucky election changes


**August 14, 2020: Governor, secretary of state announce changes for November 3, 2020, general election**

On August 14, 2020, Governor Andy Beshear(D) and Secretary of State Michael Adams (R) announced the following changes for the November 3, 2020, general election:[92][93]

Absentee/mail-in voting:

"Kentuckians concerned with contracting or spreading COVID-19 can request a ballot by mail."

"An online portal will launch within the week to allow Kentuckians to request a ballot by mail. Ballots can be requested through the portal through Oct. 9, and through traditional means after."

"Mail ballots must be postmarked by Election Day, Nov. 3, and received by Nov. 6."

"Drop boxes will be available for Kentuckians to return their mail ballots if they are concerned about postal delays. County clerks will determine these locations."

Early voting: "Beginning Oct. 13, three weeks before the election, every work day between Oct. 13 and Election Day, and every Saturday for at least four hours, every county clerk will provide a location for safe in-person voting."

"Early voting is not absentee voting – anyone can vote early for any reason."

Election Day voting: "County election officials will decide election sites on Election Day. The State Board of Elections, Secretary of State and Governor will approve each plan."

"Every county will have at least one voting super-center, where everyone from the county can go to vote, regardless of his or her precinct."

Voter identification: "Kentuckians who were unable to get a driver's licenses or photo ID due to the pandemic because their clerk's office was

closed, or because they were afraid of exposing themselves to COVID-19, can sign a document explaining this concern and cast their ballot."

57. **Louisiana**

**General election changes**

Louisiana modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: The absentee ballot application used in the general election included COVID-19 specific reasons for requesting an absentee ballot. Due to this Louisiana failed to collect first time mail-in and identification criteria as stipulated in Sec. 303.

58. **Maine.**

**General election changes**

Maine modified its voter registration procedures for the November 3, 2020, general election as follows:

**Voter registration**: The voter pre-registration deadline in the general election was extended to October 19, 2020. In a manner that did not violate HAVA.

59. **Maryland**

**General election changes**

Maryland modified its absentee/mail-in and candidate filing procedures, early voting, and polling places for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: Absentee/mail-in ballot request forms sent to all qualified voters in the general election. The return deadline for absentee/mail-in ballot requests was October 20, 2020.

**Polling places**: All early voting centers and Election Day polling locations were open on November 3, 2020. The Maryland State Board of Elections operated a limited number of centralized voting centers in lieu of precinct polling places for in-person voting in the general election.  Failing to monitor ballot boxes, and failing to collect required data in Sec. 303.

**August 10, 2020: Governor authorizes state board of elections to use centralized voting centers in lieu of precinct polling places**

On August 10, 2020, Governor Larry Hogan (R) issued an executive order authorizing the Maryland State Board of Elections to operate a limited number of centralized voting centers in lieu of precinct polling places for in-person voting in the November 3, 2020, general election. The state board of elections announced that approximately 350 vote centers would be operational on Election Day.

60. **Massachusetts.**

**General election changes**

Massachusetts modified its absentee/mail-in procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Absentee/mail-in voting eligibility was extended to all qualified voters in the general election.

61. **Michigan.**

   **General election changes**

Michigan modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Absentee ballot applications were sent to all registered voters in the general election.  Failing to collect first time federal voter data / identification with ballot requirements, and failure to maintain the combined ID and Ballot as required in Sec. 303.

62. **Minnesota.**

   **General election changes**

Minnesota modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: The absentee/mail-in ballot postmark deadline was extended to November 3, 2020; the receipt deadline was extended to November 10, 2020. The witness requirement for absentee/mail-in ballots was suspended.

Minnesota election changes

## October 29, 2020: Federal appeals court suggests absentee/mail-in ballot return deadline unconstitutional

On October 29, 2020, a three-judge panel of the U.S. Court of Appeals for the Eighth Circuit ruled 2-1 that the extension of Minnesota's absentee/mail-in ballot return deadline was likely unconstitutional "because the Secretary [of State] extended the deadline for receipt of ballots without legislative authorization." The court stopped short of invalidating the extension, however, instead directing officials to keep ballots received after November 3, 2020, separate from the others "in the event a final order is entered by a court of competent jurisdiction determining such votes to be invalid or unlawfully counted." Judges Bobby Shepherd and Steven Grasz formed the majority. Judge Jane Kelly dissented.[141]

On October 30, 2020, Secretary of State Steve Simon (D) said he would not appeal the decision immediately: "While Minnesota will comply with the Eight Circuit's ruling to segregate the ballots received after November 3. 2020, we need to emphasize that there is no court ruling yet saying those ballots are invalid. We absolutely reserve the right to make every argument after Election Day that protects voters."

63. **Mississippi**

**General election changes**

Mississippi modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Any individual under a physician-ordered quarantine, or an individual caring for a dependent under quarantine, due to COVID-19 was eligible to vote by absentee ballot. The absentee ballot postmark deadline was extended to November 3, 2020, and the receipt deadline to November 10, 2020.  Failing to collect information / identification / data as required in Sec. 303.

**Mississippi election changes**

**July 8, 2020: Governor signs legislation making changes to absentee voting procedures**

On July 8, 2020, Governor Tate Reeves (R) signed HB1521 into law. The legislation extended the postmark deadline for absentee ballots to November 3, 2020, and the receipt deadline to November 10, 2020. The legislation also established that an individual under a physician-ordered quarantine, or an individual caring for a dependent under quarantine, due to COVID-19 was eligible to vote by absentee ballot.

64. **Missouri**

**General election changes**

Missouri modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Any registered voter could cast an absentee ballot (subject to a notarization requirement) in the general election.   Failing to collect data / first time voter in violation of Sec. 303.

65. **Montana.**

**General election changes**

Montana modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Counties were authorized to conduct the general election entirely by mail.  Failing to collect 'first time federal voter' data criteria.


**August 6, 2020: Montana governor issues directive allowing counties to conduct November general election by mail**

On August 6, 2020, Governor Steve Bullock (D) issued a directive permitting counties to conduct the November 3, 2020, general election entirely by mail. Bullock also authorized counties to expand early voting opportunities for the general election. The directive did not mandate that counties adopt these measures, leaving implementation to their discretion.


66. **Nebraska.**

**General election changes**

Nebraska modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Mail-in ballots were sent to all registered voters in the general election.

**August 19, 2020: Nebraska to mail early/mail-in ballot applications to all voters in advance of the November 3, 2020, general election**

On August 19, 2020, Secretary of State Bob Evnen (R) announced that his office would automatically send early/mail-in ballot applications to all registered voters in the November 3, 2020, general election whose home counties had not already done so.


67. **Nevada**

**General election changes**

Nevada modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Mail-in ballots were sent to all registered voters in the general election.

  **August 3, 2020: Governor signs legislation providing for mail-in ballots to be sent automatically to all voters in the November 3, 2020, general election**

  On August 3, 2020, Governor Steve Sisolak (D) signed AB4 into law, directing election officials to distribute mail-in ballots automatically to all active registered voters in the November 3, 2020, general election.

68. **New Hampshire**

**General election changes**

New Hampshire modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Any voter could request an absentee ballot based on concerns related to COVID-19. Voters could submit one absentee ballot application for both the primary and general elections.   And failing to compile first time voter, and ID requirements as required in Sec. 303.

69. **New Jersey.**

**General election changes**

New Jersey modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Mail-in were ballots sent to all registered voters in the general election.

**August 28, 2020: Governor signs bills into law making modifications to absentee/mail-in voting in the general election**

On August 28, 2020, Governor Phil Murphy (D) signed three bills into law, making a number of modifications to the state's absentee/mail-in voting procedures for the November 3, 2020, general election.

i. A4475/S2580: Requires county election officials to provide for ballot drop-boxes at least 45 days before the election.

ii. A4276/S2598: Establishes procedures by which voters can cure their ballots (i.e., correct issues that might lead to a ballot being invalidated).

iii. A4320/S2633: Extends the ballot receipt deadline for ballots postmarked on or before Election Day to 144 hours after the close of polls on Election Day (i.e., November 9, 2020). Establishes the receipt deadline for ballots without postmarks as 48 hours after the close of polls (i.e. November 5, 2020).

Which violates section 303 requirements on multiple points.

**August 14, 2020: New Jersey to send mail-in ballots automatically to all voters in the November 3, 2020, election**

On August 14, 2020, Governor Phil Murphy (D) announced that the state would automatically send mail-in ballots to all voters in the November 3, 2020, general election. Secretary of State Tahesha Way (D) said that ballots would be mailed in the first week of October. It was also announced that all schools, many of which traditionally serve as polling sites on Election Day, would be closed to in-person instruction on November 3, 2020.

70. **New Mexico.**

**General election changes**

New Mexico modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Absentee ballot applications were sent to all registered voters in the general election.   Violating all aspects of section 303.

**June 26, 2020: Governor signs law authorizing county clerks to mail absentee ballot applications automatically to voters in the November 3, 2020, general election**

On June 26, 2020, Gov. Michelle Lujan Grisham(D) signed SB4 into law, authorizing county clerks to mail absentee ballot applications automatically to registered, mailable voters in the November 3, 2020, general election.

71. **New York.**

**General election changes**

New York modified its absentee/mail-in voting procedures for the November 3, 2020 in a manner which graphically violated multiple requirements of Sec. 303, general election as follows:

- **Absentee/mail-in voting**: Absentee voting eligibility in the general election was extended to any voter who was "unable to appear personally at the polling place of the election district in which they are a qualified voter because there is a risk of contracting or spreading a disease-causing illness to the voter or to other members of the public." The state launched an absentee ballot request portal.

New York election changes

**September 18, 2020: State expands ballot curing provisions for the general election**

On September 18, 2020, the League of Women Voters of New York reached a settlement agreement with state election officials over ballot curing provisions for the November 3, 2020, general election. Under the terms of the settlement, the following were established as curable issues:

i.   Unsigned affirmation envelope

ii.  Mismatch between signature on file and that on the affirmation envelope

iii. Ballot returned without an affirmation envelope

iv.  Affirmation envelope signed by a person providing assistance but not by the voter

v.   Affirmation envelope signed by a person other than the voter (e.g., power-of-attorney)

vi.   Affirmation envelope missing witness signature if the voter made his or her mark instead of signing

For ballots with curable issues received by officials before the day of the election, the deadline for curing defects was established as either the last day for applying for an absentee ballot, or within seven business days of the voter being notified of issues by mail, whichever is later. For ballots with curable issues received on or after Election Day, the deadline for curing defects was established as within five days of the voter being notified by mail, email, or phone.

### September 8, 2020: Governor announces availability of absentee ballot return drop boxes

On September 8, 2020, Governor Andrew Cuomo (D) announced that he would sign an executive order providing for the installation of absentee ballot return drop boxes at more than 300 locations statewide.

### September 1, 2020: Governor announces launch of online portal for absentee ballot requests for the general election

On September 2, 2020, Governor Andrew Cuomo (D) announced the launch of an online absentee ballot request portal for the November 3, 2020, general election.

### August 24, 2020: Governor issues executive order directing county officials to make preparations for absentee voting

On August 24, 2020, Governor Andrew Cuomo(D) issued an executive order directing county election officials to "take concrete steps to inform voters of upcoming deadlines, be prepared for upcoming elections, and help ensure absentee ballots can be used in all elections." Specifically, Cuomo directed counties to do the following:

vii.   "Send a mailing outlining all deadlines for voters by Tuesday, September 8."

viii.   "Send staffing plans and needs to the New York State Board of Elections by September 20 so BOE can assist in ensuring adequate coverage."

ix.   "Adopt a uniform clarified envelope for absentee ballots and require counties to use it."

x.   "Count votes faster: require all objections to be made by the county board in real time, make sure that boards are ready to count votes and reconcile affidavit and absentee ballots by 48 hours after elections."

xi.   "Provide an option for New Yorkers to vote absentee in village, town, and special district elections."

## August 20, 2020: Governor signs legislation altering absentee voting procedures for November 3, 2020, election

On August 20, 2020, Governor Andrew Cuomo(D) signed into law three bills making changes to the state's absentee voting procedures in the November 3, 2020, general election. The legislation extended absentee voting eligibility in that election to any voter who is "unable to appear personally at the polling place of the election district in which they are a qualified voter because there is a risk of contracting or spreading a disease-causing illness to the voter or to other members of the public." The legislation also opened the absentee ballot request period immediately and set November 3, 2020, as the postmark deadline for returning completed ballots.

72. **North Carolina.**

**General election changes**

North Carolina modified its absentee/mail-in voting and early voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: The witness signature requirement on completed absentee ballots decreased from two to one. The receipt deadline was extended to 5 p.m. on November 12, 2020, for ballots postmarked on or before Election Day.

**October 19, 2020: State board of elections issues new guidance on absentee/mail-in voting**

On October 19, 2020, the North Carolina State Board of Elections directed counties to accept absentee/mail-in ballots received by 5 p.m. on November 12, 2020, and postmarked on or before Election Day. The state board of elections also issued new guidance on how voters can resolve problems with their absentee/mail-in ballots.

Under the new guidance, county election boards were directed to do the following:

i.   If a voter returned a ballot without a witness signature, the county was directed to send the voter a new ballot. The original ballot was to be discarded.

ii.  If a voter returned a ballot with any of the following deficiencies, the county was directed to "send the voter a certification to sign and return to ensure the ballot is counted." These certifications had to be received by the voter's county election board by 5 p.m. on November 12, 2020.

1. Voter failed to sign the return envelope or signed the envelope in the incorrect place.

2. Witness failed to provide his or her printed name.

73. North Dakota

**General election changes**

North Dakota did not modify any procedures for the November 3, 2020, general election but had existing procedures nonetheless failed to meet the minimum requirements of HAVA.

74. **Ohio**

**General election changes**

Ohio modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Absentee ballot applications could be submitted by fax or email for the general election.

- Ohio election changes

**October 2, 2020: State appeals court says secretary of state has discretion to determine limits on absentee/mail-in ballot drop boxes**

On October 2, 2020, a three-judge panel of the Ohio 10th District Court of Appeals ruled that Ohio Secretary of State Frank LaRose (R) could direct counties to offer multiple drop-box locations for returning absentee/mail-in ballots. The panel stopped short of requiring LaRose to do so, overturning a lower court decision to that effect.[229]

On October 5, 2020, Ohio Secretary of State Frank LaRose (R) announced that counties would be allowed to offer multiple drop-off options for returning absentee/mail-in ballots. LaRose said that these options would be restricted to one site per county.[230]

**September 16, 2020: State judge enjoins state limitation on absentee/mail-in ballot drop boxes, stays order pending appeal**

On September 16, 2020, Judge Richard A. Frye, of the Franklin County Court of Common Pleas, ordered Secretary of State Frank LaRose (R) to stop directing counties to provide no more than one absentee/mail-in ballot drop box per county. However, Frye immediately stayed his order in anticipation of an appeal by LaRose and in keeping with Ohio law, which "obligates an Ohio court to stay a judgment when appeal is taken by a state agency or officer." LaRose filed his appeal with the Ohio Court of Appeals for the Tenth Appellate District on September 21, 2020.

November 3, 2020, general election. The full text of McIntosh's order can be accessed here.[235]

**August 12, 2020: Secretary of state directs counties to provide one dropbox for absentee/mail-in ballots**

On August 12, 2020, Secretary of State Frank LaRose (R) directed each county election board to provide one drop-box for absentee/mail-in ballots in the November 3, 2020, general election. LaRose included this directive in a document outlining health guidelines for county election boards.

75. **Oklahoma**

**General election changes**

Oklahoma modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Voters casting absentee ballots could submit copies of their identification in lieu of fulfilling the notarization requirement in the event of a state of emergency occurring within 45 days of an election. Individuals experiencing symptoms indicative of COVID-19, and individuals classified as vulnerable to infection, could cast an absentee ballot under the 'physical incapacitation' eligibility criterion.

**August 28, 2020: Governor extends state of emergency, triggering absentee voting modifications for the general election**

On August 28, 2020, Governor Kevin Stitt (R) issued an executive order extending Oklahoma's state of emergency by 30 days. This triggered the implementation of the following modifications to Oklahoma's absentee ballot procedures: permitted voters to submit copies of their identification in lieu of fulfilling the notarization requirement; specified that individuals experiencing symptoms indicative of COVID-19, and individuals classified as vulnerable to infection, could cast an absentee ballot under the 'physical incapacitation' eligibility category.

Oklahoma failed in all aspects of collecting first time voter / registration for mail in voting in federal elections as stipulated in Sec. 303.

76. **Oregon.**

**General election changes**

Oregon did not modify any procedures for the November 3, 2020, general election.

77. **Pennsylvania.**

**General election changes**

Pennsylvania modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

**Absentee/mail-in voting**: The mail-in ballot receipt deadline for the general election was extended to November 6, 2020. Drop boxes were made available to return ballots. The state provided prepaid return postage for all mail-in and absentee ballots.  Failed to collect federal data regarding first time voter's in a federal election as stipulated in Sec. 303.

78. **Puerto Rico.**

    **General election changes**

    Puerto Rico did not modify any procedures for the November 3, 2020, general election.

79. **Rhode Island.**

**General election changes**

Rhode Island modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Mail-in ballot applications were sent to all registered voters in the general election. Witness or notary requirements were suspended for mail-in ballots.  Failing to collect data as required in Sec. 303.

**September 11, 2020: Secretary of state announces plan to send all active registered voters absentee/mail-in ballot applications in the general election**

On September 11, 2020, Secretary of State Nellie Gorbea (D) announced that her office would send absentee/mail-in ballot applications to all active registered voters in the November 3, 2020, general election. Gorbea also announced that Governor

Gina Raimondo (D) had authorized the Rhode island National Guard "to assist in processing what is expected to be a record number of mail ballot applications for the November 3 general election."

80. **South Carolina.**

**General election changes**

South Carolina modified its absentee/mail-in and in-person voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Any eligible voter could request an absentee ballot for the general election. Return postage for all mailed absentee ballots was prepaid.   Failure to collect first time federal voter / voter ID with Ballot criteria, and failure to keep all ballots with ID /mail in as required in Sec. 303.

**September 16, 2020: Governor signs legislation extending absentee voting eligibility to all voters in the November 3, 2020, general election**

On September 16, 2020, Governor Henry McMaster (R) signed H5305 into law, extending absentee voting eligibility to all qualified electors in the November 3, 2020, general election. The legislation also established October 5, 2020, as the start date for in-person absentee voting (i.e., early voting).

81. **South Dakota.**

**General election changes**

South Dakota did not modify any procedures for the November 3, 2020, general election but had existing procedures nonetheless failed to meet the minimum requirements of HAVA.

82. **Tennessee**

**General election changes**

Tennessee modified its absentee/mail-in voting procedures and voter identification rules for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Individuals "with a special vulnerability to COVID-19" and "caretakers for individuals with a special vulnerability to COVID-19" were deemed to meet the existing statutory criteria for absentee voting eligibility. A law requiring first-time voters to vote in person was temporarily suspended.

83. **Texas.**

**General election changes**

Texas modified its absentee/mail-in voting, and early voting procedures for the November 3, 2020, general election in manner that likely did not violate Section 303, but a total review of the state may show a failure to obtain first time voters who arrived from other states.  Discovery required.

84. **Utah.**

**General election changes**

Utah modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: The third-party collection and return of absentee ballots was restricted to individuals residing in the same household as the voter.  Utah's handling of absentee and mail in ballots, failure to collect required data, and failure to interview first time voters violated Sec. 303.

- Utah election changes

  **August 31, 2020: Governor signs legislation making changes to administration of November 3, 2020, general election**

  On August 31, 2020, Governor Gary Herbert (R) signed SB6007 into law. The legislation made several temporary changes to administration procedures for the November 3, 2020, general election:

  > "A county is required to provide in-person voting, for both early voting and on election day, by traditional voting or outdoor voting."

"Requires the lieutenant governor's office to: issue protocols to protect the health and safety of voters and government employees, including poll workers, in the conduct of the 2020 regular general election; and conduct a campaign to educate the public on the provisions of this bill and to encourage voting by mail."

"Authorizes the lieutenant governor's office to make other modifications relating to deadlines, locations, and methods of conducting the 2020 regular general election to the extent the modifications are necessary to carry out the provisions of this bill."

"Restricts third-party collection and return of absentee ballots in most instances to individuals residing in the same household as the voter."

85. **Vermont.**

**General election changes**

Vermont modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Mail-in ballots were sent to all registered voters in the general election.   Vermont failed to collect first time voter interview information, and obtain voter identification requirements as stipulated in Sec. 303.

  **July 20, 2020: Vermont to send mail-in ballots to all eligible voters in the November 3, 2020, general election**

  On July 20, 2020, Vermont Secretary of State Jim Condos (D) issued a directive that a mail-in ballot be sent automatically to every active registered voter in the November 3, 2020, general election. The directive made a number of other procedural modifications to both the August 11, 2020, primary election and the November 3, 2020, general election. T

  **July 2, 2020: Legislation enacted authorizing secretary of state to implement election changes without governor's approval**

On July 2, 2020, S348 became law without the signature of Gov. Phil Scott (R). The legislation authorized the secretary of state to implement modifications to election procedures without the approval of the governor. The legislation was set to apply only to 2020 elections.

86. **Virginia.**

**General election changes**

Virginia modified its absentee/mail-in voting and candidate filing procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Drop-boxes to return absentee and mail-in ballots were used for the general election. The witness requirement for absentee voting was suspended, and all absentee and mail-in ballots had prepaid return postage.

**September 4, 2020: Governor signs law providing for absentee/mail-in ballot return drop-boxes, prepaid return postage**

On September 4, 2020, Governor Ralph Northam (D) signed into law legislation providing for the use of drop-boxes to return absentee/mail-in ballots. The enacted legislation also provided for prepaid return postage.[359]

**August 5, 2020: Witness requirement for absentee ballots suspended in the November 3, 2020, general election**

On August 5, 2020, the parties in *League of Women Voters of Virginia v. Virginia State Board of Elections* reached a settlement providing for the suspension of the Virginia's witness requirement for absentee ballots in the November 3, 2020, general election. Under the terms of the settlement, state election officials agreed not to enforce the statutory requirement that an absentee voter have another individual "sign the absentee ballot envelope next to the voter's statement and signature." A federal judge approved the terms of the settlement on August 21, 2020.

87. **Washington.**

**General election changes**

Washington did not modify any procedures for the November 3, 2020, general election.

88. **Washington, D.C.**

**General election changes**

- **Absentee/mail-in voting**: Absentee/mail-in ballots were sent automatically to all registered voters in the general election.  Washington DC failed to meet any of the requirements as stipulated and mandated in Sec. 303.

**June 17, 2020: Washington, D.C., to send all registered voters absentee/mail-in ballots in advance of November 3, 2020, general election**

On June 17, 2020, the District of Columbia Board of Elections announced that it would automatically send absentee/mail-in ballots to all registered voters in the November 3, 2020, general election.

89. **West Virginia.**

**General election changes**

West Virginia modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: All voters "concerned about their health and safety because of COVID-19" were eligible to vote absentee in the general election. An online absentee ballot request portal was created.

**July 27, 2020: West Virginia expands absentee voting eligibility, creates online application portal for November 3, 2020, general election**

On July 27, 2020, West Virginia Secretary of State Mac Warner (R) announced that all voters "concerned about their health and safety because of COVID-19" would be eligible to vote absentee in the November 3, 2020, general election. Warner also

announced the implementation of online absentee ballot request portal for the general election.

90. **Wisconsin.**

**General election changes**

Wisconsin modified its absentee/mail-in voting procedures for the November 3, 2020, general election as follows:

- **Absentee/mail-in voting**: Absentee and mail-in ballot applications were sent to most registered voters in the general election.

91. **Wyoming.**

**General election changes**

Wyoming did not modify any procedures for the November 3, 2020, general election.

### C. Members of Congress

92.     Defendants who were members of the 116th congress engaged in acts of propaganda and fraud in order to engage in acts of conspiracy to conduct an unlawful federal election and did the same acting alongside and/or in concert with state or local officials under color of law.

93.     Defendants who were members of the 116th Congress failed in their oath duties to ensure other Defendants in this matter did not conduct an unlawful federal election that resulted in null and void federal election results for the 117th Congress.

94.     Defendants who were members of the 116th Congress engaged directly with partisan enterprises, which employed other parties named as Defendants in this matter to conduct acts of mail fraud, wire fraud, and travel in the conduct of

racketeering activities. An example includes, directions given to Plaintiff J.B. by MJ Hagar to use the fraudulent talking points provided by the partisan enterprises to raise capital.

95.     Defendants who were operating under the direct supervision of members of the 116th Congress engaged in wire and mail fraud in the collection of campaign donations and other monies used to support acts of conspiracy, while engaging in travel across state lines in manners and conduct which involved interstate commerce. MJ Hager traveled across state lines for in furtherance of the act of conspiracy.

96.     Defendants who owned, operated, managed, or had considerable interest over national communication networks including social media, cable media, and broadcast media engaged in acts of propaganda making false statements and inhibited free speech in opposition to the conduct of the Conspiracy as directed by members of the 116th Congress, or distributed in opposition instructions set via mail and the wires to 'operatives' which emanated from Defendants employed in partisan enterprises acting under the control of senior members of the 116th Congress which are also named as defendants. By example Defendant Zuckerberg used his considerable power, control and authority over an enterprise known as Facebook to propagate, promote and expand the partisan enterprises talking points and personal defamatory attacks which were used in order to destabilize the government of the United States, to engage in acts of propaganda, to deny constitutionally protected free speech and to unlawfully obtain monies by acts of fraud.

97.     Defendants who unlawfully claimed offices in the 117th Congress engaged in acts specifically targeted to 'protect' the legitimacy of their frauds and denied parties of rights defined by federal law. By example, Defendant Pelosi swore an oath to assume an office of the 117th Congress when she personally had knowledge of her home State's failure to comply with HAVA.  Defendant Pelosi's knowledge of such is based upon the fact she voted yes on HAVA as a member of the 107th Congress.    After unlawfully obtaining an 'office of power' Defendant Pelosi led conspirators in acts to attack citizens of the United States in order to deny said persons of their lawfully protected rights including denying a legitimate electoral process for the office of President of the United States, which led to Plaintiff J. James attendance to a rally in Washington D.C. Plaintiff J. James in the lawful execution of his constitutionally protected right of free speech, and pursuit of happiness has been targeted fraudulently by partisan enterprises engaged in acts of conspiracy.  For the attendance of a lawfully registered political rally Plaintiff J. James as well as other Attendees have been demonized for 'assaulting the capital building', accused of sedition, and selected by Federal Agencies for prosecution.  Plaintiff J. James did not act in any dishonorable manner, nor conducted an act to injure others.   Factually, Plaintiff J. James saved the life of a capitol hill police officer, at the request of the officer and for that act has been stalked by the Federal Bureau of Investigation and targeted to be made 'an example of'.

98.     Defendants who obtained and claimed offices in the 117th Congress engaged in acts of fraud and color of law to falsely claim 'authorities of office' in acts

of conspiracy to falsely claim victory in federal elections which failed to comply with Federal law, and in violation of the US Constitution.

99.     Due to the acts of the Defendants all fifty states failed to comply with HAVA as follow

100.    The acts of the defendants named as conspirators directly violated the civil rights of the complainants. By example, the State of Georgia under the direct control of the Secretary of State and Governor, both named as defendants herein, when the conspirators agreed in violation of law and by acts of color of law caused all of the Georgia electronic voting machines to be "cleared" prior to the runoff election in January 2021. These acts directly violated the Civil Rights Act of 1960 sect 1974. Which clearly states "every officer of election shall retain and preserve, for a period of 22 months from the date of any general, special or primary election of which candidates for the office of President, Vice President, Presidential elector, member of the Senate, Member of the House of Representatives, or… are voted for all records and papers…". Clearly the intent of Congress in this federal law stipulated "ALL RECORDS" and made the destruction of any records relating to an election a civil rights violation this includes any phantom, or RAM or any internal machine memory which would also be considered a "record". It is clear the State of Georgia under the control of the defendants who acted in a conspiracy with partisan enterprises wiped the records from all Georgia voting machines conducted in the November Federal ballot election merely 7.5 weeks after the election. This is a common "anomaly" conducted by the conspirators who control the electronic voting systems in all 53

voting regions. The most common statement for requirement to "clear" is due to maintenance or storage of systems requirements, acts that violate the Civil Rights Act of 1960 and HAVA.

101.    Latinos, Blacks, American Indians, and candidate for elected office were affected by Defendants conduct prior to the unlawful federal election, and thereafter.

102.    As further factual allegations and evidence in support thereof, Plaintiffs incorporate by reference as though fully set forth herein, the following exhibits:

a.  Exhibit 2: Cain Declaration 20210118;

b.  Exhibit 3: Expert Report of John S. Vanderbol, III, "Global Risk Analysis: Special Report;"

c.  Exhibit 4: Documentary Evidence Proving Defendants' Violations of Law.

## VI.
## CAUSES OF ACTION

### A.  COUNT ONE - 42 U.S.C. § 1983 Civil action for deprivation of rights

103.    Plaintiffs hereby incorporate all allegations in the foregoing paragraphs as though fully set forth herein.

104.    Defendants subjected Plaintiffs to conduct that occurred under color of law state law to deprive Plaintiffs of their fundamental civil right to cast a legal vote in the Federal Election without due process of law by the conduct describe above which caused severe harm to Plaintiffs.

### B.  COUNT TWO - 42 U.S.C. § 1985 Conspiracy to interfere with civil rights

105.    Plaintiffs hereby incorporate all allegations in the foregoing paragraphs as though fully set forth herein.

106.    Defendants conspired for the purpose of depriving, either directly or indirectly, Plaintiffs of their fundamental civil rights to cast legal votes in the Federal Election without due process of law and did or caused to be done the foregoing acts in furtherance of the conspiracy which caused the Plaintiffs and other third parties injuries.

### C.  COUNT THREE 42 U.S.C. § 1986. Action for neglect to prevent

107.    Plaintiffs hereby incorporate all allegations in the foregoing paragraphs as though fully set forth herein.

108.    Defendants had or reasonably should have had knowledge of the wrongs conspired to be done as set forth above, had the power to prevent or aid in preventing the commission of the same, and neglected or refused so to do, resulting in the deprivation of Plaintiffs' fundamental civil rights to cast legal votes in the Federal Election.

### VII.
### APPLICATION FOR INJUNCTIVE RELIEF, INCLUDING AN EX PARTE TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

### A.  Plaintiffs' Desperate Plea Calling on the Courage of This Court.

109.    Plaintiffs hereby incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

110.    Plaintiffs' Emergency Motion for Temporary Restraining Order (the "Motion") shall be filed separately with supporting evidence attached pursuant to the

Local Rules of this Court.  Plaintiff's Motion is the last plea in desperation, made on behalf of all the People of the Republic.  Plaintiffs' urgent plea before this Honorable Court is to now join with them, in this current Constitutional Crisis, when all other safeguards set forth in the Constitution of the United States for checks and balances on unlimited, tyrannical government power have been breached, to muster the same courage displayed by the Founding Fathers[7] of our Republic, who so willingly and boldly sacrificed their blood, their tears, their fortunes, whether meager or vast, and even their very lives, to win their freedom from a tyrannical monarchy across the ocean.

### B. The "Political Question Doctrine" Does Not Apply

111.    This Complaint assumes that the courage of the Court does in fact match that of Plaintiffs' and their undersigned counsels' act in filing this Complaint.  By filing this lawsuit exposing the shocking illegal acts of the Defendants in furtherance of their conspiracy to crush the freedom and individual rights of the People by replacing our republican form of government with an illegitimately-elected Congress and President-Elect, Plaintiffs and Counsel have essentially signed their own death warrants, or at least the chance at any meaningful  career, at the hands of powerful figures who acted, funded, directed, and/or otherwise conspired in furtherance of the evil scheme to strip all power of self-government from the People.

---

[7] Those brave patriots who laid down their lives for freedom from tyranny in the Revolutionary War and/or those who signed the Declaration of Independence and/or those who framed the Constitution of the United States.

112.   One excuse that may be urged on the Court to sidestep this Complaint is the "Political Question Doctrine."  As the Court is aware, the Supreme Court has long held that Congress is the sole arbiter of whether the guarantee of a republican form of government in Article IV, Section 4 (the "Guarantee Clause") has been violated on the basis that this issue is a "political question" that can only be decided by Congress.  Any notion that granting the Motion or any relief requested in this lawsuit would violate the Political Question Doctrine should be categorically dismissed.  Denying Plaintiff's relief on the grounds that this is a political question for Congress would be tantamount to entrusting a bank robber with deciding his own verdict.  Whereas Congress took their oaths of office to "support and defend the Constitution" on January 3, 2021 after being illegally elected in gross violation of their own duly-enacted election statute, no conflict of interest could be more obvious.

### C. There Are No Issues of Standing, Laches, or Ripeness.

113.   Many federal courts, including the Supreme Court, have avoided reviewing evidence related to any of the 2020 post-election lawsuits by summarily dismissing such lawsuits on grounds of standing, laches, or, in the case of the 2021 Georgian Senate Runoff, ripeness of claim.  To undersigned counsels' knowledge, not a single federal court has held an evidentiary hearing regarding these lawsuits

114.   Here, however, Plaintiffs clearly have civil rights injuries under the various statutes pleaded in this suit since there is no more fundamental injury to the rights of a U.S. Citizen than acting under color of law to deprive Plaintiffs of their right to cast a legal ballot in the election of their representatives to the federal

government without due process of law.  Plaintiffs have standing to sue federal officials where they act alongside state or local officials,[8] as is clearly the case where state and local officials made unlawful changes to election procedures in violation of HAVA.

115.    There is no issue of laches because none of the Plaintiffs were aware of the extent to which the states had violated HAVA in the 2020 congressional elections until they hired undersigned counsel to look into the various election laws.  Even if they had been aware, it is axiomatic that a criminal or tortious act is rarely foreseeable, and it was certainly not foreseeable to Plaintiffs that the 117th Congress would take their oaths and be seated in gross violation of federal election law.  Moreover, a Court may have denied Plaintiffs' claims on the grounds that Plaintiffs' injury was not yet ripe because the result of the election had no yet occurred.  Now, however, there is no doubt Plaintiffs' causes of action are ripe since the harm to Plaintiffs' came to fruition on January 3, 2021, when the 117th Congress was seated in violation of HAVA.

### D. Grounds for Ex Parte Temporary Restraining Order and Preliminary Injunction.

116.    Plaintiffs are entitled to an Ex Parte Temporary Restraining Order against Defendants on the following grounds:

117.    **Plaintiffs will certainly suffer immediate and irreparable harm** if the Court does not immediately enter the temporary injunctive relief requested

---

[8] *E.g., Tongol v. Usery*, 601 F.ed 1091 (9th Cir. 1979).

herein (the "TRO").[9]   If the Defendants and the illegitimate Congress their actions installed are able to continue govern the Republic, it will cease to be a republic.  It may become a true RINO "*republic* in name only" in the sense that the "People's Republic of China" contains the word "Republic," although it is common public knowledge that the China does not in any way belong to its people. It belongs to a tyrannical, authoritarian, communist police state that engages in atrocities against humanity, including the active persecution of proponents of free speech, democracy, Christians, and anyone else who poses a view that does not demonstrate absolute and unquestioning loyalty to the state and whatever ideologies it chooses to cram down the throats of its citizens.  The risk of the United State government descending into such an oppressive police state is tangible and imminent if the government ceases to be accountable to the People, as occurred in the illegal 2020 Federal Election.  This risk is evidence from even a cursory review of the history of government power grabs.

118.   Furthermore, as set forth in the expert report of Steve Vanderbol entitled "Global Risk Analysis: Special Report," [10]  the involvement of  Mr. Vanderbol has 27 years of experience operating multi-national, multi-spectrum corporations with assets exceeding many billions of dollars, and is, accordingly, an expert on how geopolitical events affect the financial markets.[11]  In Mr. Vanderbol's expert opinion, based on an extensive amount of research as demonstrated in his report, the

---

[9] Fed. R. Civ. P. 65(b)(1); *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F. Supp. 2d 63, 66–68 (D. Me. 2008); *Nw. Airlines, Inc. v. Bauer*, 467 F. Supp. 2d 957, 963–64 (D.N.D. 2006); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).
[10] Exhibit 3: Global Risk Analysis: Special Report, by Steve Vanderbol
[11] Exhibit 4: CV of Steve Vanderbol.

Constitutional Crisis created by the acts and omissions of Defendants set forth herein compel the conclusion that, if the Court does not grant the TRO to prevent the illegitimate Congress and President-Elect from taking control of the U.S. Government, the economy of the United States will become unstable and cease to be a "safe haven" for financial investors.  If investors come to view their investments in assets held in the United States as inherently unstable due to the Constitutional Crisis, it is clear that would have a devastating effect on the Plaintiffs' ability to plan for retirement by investing in 401(k)s, IRAs, or other such accounts.

119.  **Thus, there is no adequate remedy at law**[12] because it would be impossible to calculate an appropriate amount of monetary damages that would compensate Plaintiffs for such harm.  Indeed, no one could even guarantee that Defendants would have sufficient financial assets available for legal damages if the U.S. financial market begin to experience prolonged instability or even total collapse, especially given that the U.S. Government is close to $30 trillion in debt and the Federal Reserve Notes known as "Dollars" ceased to be back by gold over 100 years ago. It is also obvious that the risk of permanent deprivation of the right to vote in federal elections, which could be lost forever if the Defendants are not restrained from further action and the Acts of Congress, taken after January 3, 2021 are not restrained from having legal effect.

---

[12] *Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 2d 1022, 1030–31 (N.D. Iowa 2010); *see Ruggieri v. M.I.W. Corp.*, 826 F. Supp. 2d 334, 336 (D. Mass. 2011).

120.    **There is a substantial likelihood that Plaintiffs will prevail on the merits of their claims.**[13]   As described in the introductory section of this Complaint, though this is a complex suit with regard to the factual allegations regarding a widespread conspiracy to deprive the Plaintiffs of their rights, Plaintiffs' right to relief is clear from the simple application of law to the following facts:

(1)    Plaintiffs cast ballots in the 2020 Federal Election;

(2)    The State of Texas and the other 50 states changed their 2020 Federal Election procedures in violation of the minimum standards of HAVA;

(3)    The 117th U.S. Congress was seated and took their oaths of office to defend and protect the Constitution by virtue of an election that took place in violation of HAVA;

(4)    Plaintiffs suffered injuries with no adequate remedy at law through deprivation of their substantive due process right to vote in the Federal Election and have and/or will suffer irreparable financial injury and further irreparable injury from loss of the republican form of government guaranteed in the Constitution;

121.    **The threatened harm to Plaintiffs outweighs the harm that a temporary restraining order would inflict on Defendants**.[14]   It is self-evident that the loss of the right to government by consent of the governed is far worse than any harm Defendants may suffer if the Court grants the TRO;

122.    **Issuance of a temporary restraining order would not adversely affect the public interest and public policy.**[15]   It is self-evident that preventing the loss of the right to government by consent of the governed is in the public interest.

---

[13] *Prudential Ins. Co.*, 728 F. Supp. 2d at 1029; *Fairchild Semiconductor Corp.*, 564 F. Supp. 2d at 66–67.

[14] *Prudential Ins. Co.*, 728 F. Supp. 2d at 1031–32; *Fairchild Semiconductor Corp.*, 564 F. Supp. 2d at 66; *see Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

[15] *Prudential Ins. Co.*, 728 F. Supp. 2d at 1032; *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 812 (N.D. Ohio 2008).

123. **The Court should enter this temporary restraining order without notice to defendant** because Plaintiffs will likely suffer immediate and irreparable injury, loss, or damage if the order is not granted before Defendants can be heard because (1) the vast list of Defendants in disparate geographical locations makes service of process on short notice impracticable; (2) given that the allegations and evidence revealed in this Complaint could result in federal criminal prosecutions for various and severe high crimes and misdemeanors, including but not limited to sedition, treason, racketeering, malfeasance by public officials, wire fraud, mail fraud, etc., there is a high risk that Defendants will destroy evidence prior to being given notice of the TRO.

124. Plaintiff is willing to post a bond in the amount the Court deems appropriate.

125. To avoid such imminent and irreparable harm to the Plaintiffs and, by extension, to the People, hereby request the Court enter a Temporary Restraining Order with the following injunctive relief:

(1) Enjoin each illegitimate member of the 117th US Congress, named as a Defendant herein from taking any further legislative action;

(2) Enjoin the legal enforcement of any action taken by the illegitimate members of 117th US Congress since January 3, 2021, including but not limited to:

  a) its illegitimate actions taken under Title 3 of the United States Code in counting the Electoral College votes and confirming Joe Biden as President-Elect;

  b) its actions taken to impeach and convict the 45th President Donald John Trump;

(3)     Enjoin the Department of Justice, the Federal Bureau of Investigation, and any other federal agency from arresting and/or holding in custody Plaintiff's undersigned lead counsel, Paul M. Davis and co-counsel, Kellye SoRelle, and any plaintiff or potential witness in relation to their exercise of their own exercise of civil rights by their attendance at the January 6, 2021 protest in Washington, D.C. absent a showing for good cause by clear and convincing evidence that said counsel committed some overt and intentional act of violence that directly resulting in substantial injury to the person of another, as such actions would amount to nothing more than an effort to intimidate and silence Plaintiffs and deprive them of the exercise of civil rights to bring this action under 42 U.S.C. §§ 1983, 1985, 1986 and their rights under the Constitution and which would amount to further civil rights violations by public officials acting under color of the law; and

(4)     Order the only lawfully and constitutionally remaining federal public official, The Honorable Donald John Trump, 45th President of the United States of America to take all reasonable and necessary action consistent with the Take Care Clause of Article II, Section 1 and all the original intents and purposes of the Constitution of the United States to preserve the lawful and orderly continuity of government.

## VIII.
## ATTORNEY FEES & COSTS

126.    Plaintiff are entitled to an award of attorney fees and costs under 42

U.S.C. § 1988(b) and hereby plead for the same.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, upon trial of this matter, plead for judgment against

Defendants for the following:

a.  Permanent injunctive relief forever restraining Defendants from participating in any action relating to the process of electing public officials, holding public office or any official government position, or position in any partisan enterprise related to American politics, and from defaming or threatening or otherwise interfering with the life, liberty, or property of Plaintiffs;

b.  Punitive Damages in an amount to be determined at the time of trial;

c.  Actual Damages in an amount to be determined at the time of trial;

d.  Reasonable attorneys fees' and Costs of Suit;

e.  Prejudgment and postjudgment interest.

And all other relief the Court may deem necessary or proper to which the Plaintiffs

and the People of the United States of America may be justly entitled.

Respectfully submitted to the Honorable Court this 18th day of January, 2021.

Paul M. Davis
Texas Bar Number 24078401
Admitted to Western Dist. TX
Former Associate General Counsel of
Goosehead Insurance, Inc.
(Terminated after peacefully protesting)
Now Solo Civil Rights Attorney

Kellye SoRelle
Texas Bar Number 24053486
Pro Hace Vice Application Forthcoming[16]

ATTORNEYS FOR PLAINTIFFS

---

[16] Contact info omitted for privacy and security purposes.