```
                         REPORTER'S RECORD

                  TRIAL COURT CAUSE NO. 20-1782-C425


                                    )
                                    )   IN THE DISTRICT COURT
                                    )
                                    )
                                    )
                                    )
 IN THE INTEREST OF                 )   WILLIAMSON COUNTY, TEXAS
 THE STATE OF TEXAS                 )
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )   425TH JUDICIAL DISTRICT



                  ------------------------------

                               HEARING

                  ------------------------------




    On the 10th day of November, 2020, the following

proceedings came on to be heard in the above-entitled and

numbered cause before the Honorable Betsy Lambeth, Judge

presiding, held virtually via Zoom, in Georgetown, Williamson

County, Texas;


    Proceedings reported by machine shorthand.


                    ──Mandi M. Alvarez, CSR──
```

A P P E A R A N C E S

SHANNON FRANCIS,
WILLIAMSON COUNTY ATTORNEY'S OFFICE

DANIELLE GILLIAM,
LEGAL ASSISTANT TO SHANNON FRANCIS

CHRISTOPHER J. DAVIS,
WILLIAMSON COUNTY ELECTIONS ADMINISTRATOR

STEVE ARMBRUSTER,
CHAIRPERSON FOR THE WILLIAMSON COUNTY REPUBLICAN PARTY

KIM GILBY,
CHAIRPERSON FOR THE WILLIAMSON COUNTY DEMOCRATIC PARTY

RICHARD STONE,
THE HILL COUNTRY NEWS

MARCO ORTIZ,
PRESIDENT OF TAYLOR ISD BOARD OF TRUSTEES

JENNIFER FAVREAU,
DEPUTY ELECTIONS ADMINISTRATOR

TONY DALE,
PRIVATE CITIZEN

JENNIFER MILLER,
ROUND ROCK ISD ELECTIONS COORDINATOR

RON MORGAN,
DIRECTOR OF DISTRICT COURT ADMINISTRATION

```
 1                    (Virtual Proceedings Begin 1:41pm)
 2                    THE COURT:  We are on the record in cause number
 3   20-1782-C425, In the interest of the State of Texas.
 4   Ms. Francis, if you would please announce for everyone here, I
 5   think that would be helpful.
 6                    MS. FRANCIS:  Sure.  My name is Shannon Francis,
 7   I am an Assistant County Attorney with the Williamson County
 8   Attorney's Office and I'm here today on behalf of Christopher
 9   J. Davis, the Williamson County Elections Administrator.  I
10   believe we also have with us Steve Armbruster, the chairperson
11   for the Williamson County Republican Party and Kim Gilby, the
12   chairperson for the Williamson County Democratic Party.
13                    THE COURT:  If I could have everyone else
14   announce so we have a clear record of who is present, please.
15                    MR. STONE:  Your Honor, my name is Richard
16   Stone, I'm with The Hill Country News.
17                    MR. ORTIZ:  Your Honor, my name is Marco Ortiz,
18   I am president of the Taylor ISD Board of Trustees.
19                    MS. FAVREAU:  Your Honor, I'm Jennifer Favreau,
20   the deputy elections administrator.
21                    THE COURT:  I see we have Tony Dale on as well?
22                    MR. DALE:  Yes, Your Honor, Tony Dale, private
23   citizen.
24                    THE COURT:  And Danielle Gilliam?
25                    MS. FRANCIS:  Yes, Your Honor, that's my legal
```

1  assistant.
2              THE COURT:  Someone has called in; who is the
3  call-in?
4              MS. MILLER:  Jennifer Miller, Round Rock ISD
5  Elections Coordinator.
6              THE COURT:  Is Steve Armbruster present?
7              MR. ARMBRUSTER:  Yes, ma'am, I am.
8              THE COURT:  And, Kim Gilby, are you present?
9              (No Response)
10             THE COURT:  Ms. Gilby, you may have been muted.
11 If you could please un-mute and state your name.
12             (No Response)
13             THE COURT:  Ms. Gilby?
14             MS. GILBY:  Sorry, sorry, my computer was not
15 cooperating.  I am so sorry.
16             THE COURT:  That's ok.
17             MS. GILBY:  I'm Kim Gilby, I am so sorry.
18             THE COURT:  That's ok, it happens.  I can't tell
19 you how many times it happens.  You are the chair for the
20 Democratic Party of Williamson County?
21             MS. GILBY:  Yes, ma'am, I am the chair of the
22 Williamson County Democratic Party.
23             THE COURT:  And we also have Ron Morgan on, he
24 is the Director of District Court Administration.  If I could
25 please have everyone raise your right hands to be sworn.

1          (All Parties Sworn)

2          THE COURT: Before we get started, I want to
3 state the obvious for all of the parties. As District Judge of
4 the 425th District Court, I was on the ballot this election
5 cycle. I have just had a conversation with Billy Ray
6 Stubblefield who is the third administrative regional presiding
7 judge and I asked him if he felt like there was any sort of
8 conflict of interest for me to hear this election issue. It's
9 my understanding that the purpose of this suit is simply a data
10 collection issue, it will not change the outcome of any
11 election. It is simply to collect data that is required to be
12 reported to the Secretary of State that was not picked up in
13 the early voting through our new election system.

14          Judge Stubblefield indicated to me that he did
15 not believe that there was a conflict of interest but I wanted
16 to put that on the table and I want to hear if anybody has any
17 objection. In particular, Ms. Gilby, as chair of the
18 democratic party; do you have any objection to this judge
19 hearing this matter?

20          MS. GILBY: Your Honor, I do not.

21          THE COURT: Thank you. Mr. Armbruster, as chair
22 of the republican party, do you have any objection for me
23 hearing this election case?

24          MR. ARMBRUSTER: Your Honor, I do not.

25          THE COURT: Thank you very much. Is there

1 anyone else that wishes to be heard and state any objection for
2 me hearing this case today?
3             (No Response)
4             MS. FRANCIS:  No, Your Honor.
5             THE COURT:  Hearing no objection then I will
6 proceed.  Ms. Francis, you may proceed.
7             MS. FRANCIS:  Thank you, Your Honor.  Just as a
8 brief overview, I'm sure you've read the petition but this
9 petition stems from the recent November 3rd, 2020 election
10 cycle, particularly in Williamson County Texas, where we held a
11 joint general election where multiple political entities, the
12 county, multiple cities, school districts, joined together to
13 have a joint election that was overseen by one entity, in this
14 case, the Williamson County Elections Administrator and his
15 office.  Prior to that election, Williamson County purchased
16 new electronic poll books from a certain vendor.  Part of that
17 equipment included some report generating software that would
18 come based on the tabulation of those votes.  Following the
19 in-person early voting period but before election day it was
20 discovered that the precinct-by-precinct return reports were
21 not generated for the in-person early voting ballots which was
22 corrected by the vendor and so for the election day ballots and
23 for the mail-in ballots, this reporting issue did not exist.
24             In discussing this with the Secretary of State's
25 Office -- and I'll call Mr. Davis to talk a little more about

1  that -- due to the fact that the Texas Elections Code does not
2  really address procedurally what an elections administrator
3  could do after the fact to generate these reportings,
4  particularly for electronic voting, the guidance and direction
5  from them was that this needed to be presented to a district
6  court for review and for an order authorizing the re-scanning
7  and re-tabulation of those votes in order to generate the
8  reports and so ultimately, that's what we're here for today,
9  Your Honor, is to request that the Court order that the Central
10 Counting Station reconvene and re-scan and re-tabulate those
11 ballots simply for the purpose of generating the
12 precinct-by-precinct reports which are necessary because we did
13 a joint election, those reports go out to each political entity
14 that participated in the joint election so that they can
15 individually canvass and certify their own elections so it's
16 very important.  With that, I would like to call Mr. Davis, the
17 elections administrator.
18              THE COURT:  You may proceed, thank you.
19              MS. FRANCIS:  Thank you, Your Honor.
20                     DIRECT EXAMINATION
21 BY MS. FRANCIS:
22     Q.   Mr. Davis, you were just sworn in.  I'll have you
23 start by stating your name.
24     A.   My name is Christopher Davis.
25     Q.   And how are you employed?

1  A.  I'm employed by Williamson County as the elections
2  administrator.
3  Q.  How long have you been with Williamson County in that
4  capacity?
5  A.  I've been the elections administrator for Williamson
6  County since April of 2015.
7  Q.  Ok.  I just gave a general overview to the Court
8  about the background leading to why we're here today.  Do you
9  have anything -- do you disagree with anything that I stated to
10 the Court or that you think needs clarification?
11 A.  I do not.
12 Q.  So can you tell the Court a little bit more about
13 what these precinct-by-precinct return reports are?
14 A.  Yes, thank you.  In any given election, the State
15 election code requires us to not only release to the public, to
16 the county, to participating entities and to the State of
17 Texas, a summary report which is a final and unofficial summary
18 of all returns for all races in an election, the election code
19 requires us to release a precinct level, or what's termed a
20 precinct-by-precinct report as well, and it's this incident or
21 this error that we discovered the day before the election for
22 the early voting in-person ballots that prevented us from being
23 able to generate any kind of precinct report that was anywhere
24 near correct.  We are required to have this report ready along
25 with our summary report and release it in an unofficial yet

1  final capacity to city, school districts and other
2  participating political subdivisions by Monday the 16th.  They
3  have a deadline, these political subdivisions, to canvass the
4  results of this election by the end of Tuesday, November 17th.
5      Q.   Ok.  And just for clarification for the Court, for
6  the in-person early voting ballots, your office was able to
7  generate the summary return?
8      A.   That's correct.  As part of election night at about
9  7:01 p.m., we had already generated the correct -- we're
10 certain it's correct -- summary results for early voting in
11 person.  Most mail ballots we had still received some that day.
12 By law, we must wait till the next day for any mail ballots to
13 come in if they're postmarked by the 3rd of November and then
14 of course on election night, election day returns were coming
15 in throughout the evening.  Our final report, our final summary
16 report which included all of early voting in person, all of
17 election day in person and the majority of mail-in ballots that
18 were accepted was released at about 3 a.m. Wednesday morning.
19     Q.   Ok.  And so in this election cycle are you aware of
20 or has anyone addressed any concerns with the actual tabulation
21 of the votes themselves?
22     A.   No, not to my knowledge.
23     Q.   And so we're not here today because of any concern
24 about the votes themselves?
25     A.   At least I'm not.  It's quite clear to my office and

1  in consultation with our vendor, Tenex, that sold us and
2  configured for our electronic poll book, that this was an error
3  during the early voting in-person ballot coding that only
4  affected precinct associations of voter's ballots.  Voters were
5  being given the correct ballot style, they were voting on all
6  the precise races and contests that they were eligible for when
7  they voted in person during early voting.  This is just a
8  precinct association error.
9       Q.   Ok and that error impacted simply the reporting, the
10 precinct-by-precinct reporting; nothing else?
11      A.   That's correct.  The scope of this error only affects
12 the reporting of this precinct level that we must, by law, give
13 out and did not affect election night returns -- excuse me,
14 early voting in-person summary returns or our summary report.
15      Q.   Ok.  At some point after this did you confer with the
16 Secretary of State's Office?
17      A.   We did.  On Wednesday, the day after the election, we
18 conferred with them.  Obviously, they were busy on election day
19 as were we.  We were certain on Monday evening that this was
20 not going to affect election day in person because an update
21 had been sent over the air to our election day electronic poll
22 books before the polls opened on the morning of Tuesday the 3rd
23 and we were certain that it wasn't going to affect any summary
24 reports that we were to release in the early voting in-person
25 summary report that night at 7:01 so we waited and we were in

1  contact with Christina Adkins, the chief legal director of the
2  Elections Division of the Texas Secretary of State on Wednesday
3  and she informed us that while we had the ability to go back
4  after Central Count had adjourned -- and it adjourned about
5  3 a.m. Wednesday morning -- we could go back to the early
6  voting in-person ballot bins or ballot boxes and begin a
7  massive sorting operation.  We would need a court order to
8  reconvene Central Count Station to enable us to re-scan those
9  ballots through a central count tabulator to generate these
10 precinct level reports.
11      Q.   Ok.   Is that in part because in order to go back
12 after the fact to generate the precinct-by-precinct reports you
13 in effect have to run those ballots through the tabulating
14 machine again?
15      A.   That's correct, and the only way to do that is to
16 reconvene Central Counting Station.
17      Q.   And are you aware of -- does the Texas Election Code
18 authorize you as the Elections Administrator to do something
19 like that unilaterally?
20      A.   If you mean by the reconvening of the Central
21 Counting Station, no, it does not.
22      Q.   Ultimately, was it the guidance of the Secretary of
23 State that in order to proceed with generating these
24 precinct-by-precinct returns that you would need to petition
25 the district court and the county?

―Mandi M. Alvarez, CSR―

1    A.    That's correct, yes.
2    Q.    As you discovered this error by the vendor and as
3 you've worked through how to resolve this issue, have you been
4 in communication with both the democratic and republican party
5 chairs?
6    A.    We've been in communication with both parties' chairs
7 and we've been in communication with the political subdivisions
8 that are also jointly participating in this election and we've
9 let them know about this very hearing.
10   Q.    Ok.  Are you aware of any disagreement with this
11 course of action?
12   A.    I am aware of none, no.
13   Q.    When the process of what's, in effect, a re-count
14 should the Court authorize it, will your office open that up to
15 any observers who would generally have a right to observe that
16 process?
17   A.    Yes, the Secretary of State's Office confirmed our
18 understanding that with reconvening Central Count, the ability
19 for political observers or watchers appointed by candidates,
20 parties and specific purpose committees, they are allowed to be
21 present much along the same lines as they were during our
22 normal Central Count Station event.
23   Q.    And have you talked with the political chairs about
24 that process at all yet about what that would look like?
25   A.    Yes, we have.

1  Q. So ultimately today are you asking that the Court
2  issue an order authorizing the re-counting, the re-scanning and
3  re-tabulation of all of the in-person early voting ballots from
4  the November 3rd, 2020 joint general election in Williamson
5  County, Texas? I guess, first, are you asking for the Court to
6  issue that order for the purpose of the precinct-by-precinct
7  reporting?
8  A. Yes, we're asking the Court to allow us to do those
9  things for the early voting in-person ballot cards.
10  Q. Ok. And are you also asking that the Court order
11  that the Central Counting Station reconvene effective today
12  through November 16th, 2020 on a day-to-day schedule as
13  necessary in order to complete this task?
14  A. We are, indeed, yes.
15  Q. And if the Court does issue this order today, would
16  you, as the elections administrator, understand the expectation
17  is that you would communicate what that schedule is to all
18  those who have a right to observe so that they could be there
19  to participate?
20  A. Absolutely, yes, that is my understanding.
21  Q. Is there anything else that you wanted to express to
22  the Court that you haven't had a chance to yet?
23  A. At the moment, no, unless the Court has any
24  questions.
25            MS. FRANCIS: I have no further questions,

1  Your Honor.
2          THE COURT:  Mr. Davis, just for the record, I
3  want to make certain that you affirm the other statements that
4  Ms. Francis made in her opening statement that the facts that
5  she stated are true and accurate?
6          MR. DAVIS:  Yes, Your Honor, they are.
7          THE COURT:  Thank you very much.  Does anyone
8  else who is present want to be heard on this matter?
9          (No Response)
10         THE COURT:  Specifically, Ms. Gilby, do you have
11 any objection to the Court signing this order?
12         MS. GILBY:  Your Honor, I do not.
13         THE COURT:  Thank you very much.
14 Mr. Armbruster, do you have any objection to the Court signing
15 this order?
16         MR. ARMBRUSTER:  Your Honor, I do not.
17         THE COURT:  Do any of the other entities that
18 are present have any objection to the Court signing this order?
19         (No Response)
20         THE COURT:  Thank you very much.  Anything
21 further, Ms. Francis?
22         MS. FRANCIS:  No, Your Honor.
23         THE COURT:  I will grant the order as requested.
24 Ms. Francis, if you will please provide me a very specific
25 order and make certain that you talk about it reconvening as of

1  today.  I want you to put in a time that that expires on
2  November the 16th, whenever it is.  Also as you said at the
3  very end that Mr. Davis is to communicate and confer with the
4  party chairs and also all of the other entities about the
5  procedure and how that will take place so that they can have
6  watchers there.
7              MS. FRANCIS:  I did provide a proposed order but
8  I will review it and make sure it captures everything and then
9  re-submit.
10             THE COURT:  Thank you all very much for
11 appearing today.
12             (End of Virtual Proceedings 2:02pm)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS        )
COUNTY OF WILLIAMSON      )

    I, MANDI M. ALVAREZ, Official Court Reporter in and for the 425th District Court of Williamson County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription, to the best of my ability, of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred virtually via Zoom and were reported by me.

    I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

    I further certify that the total cost for the preparation of this Reporter's Record is $__88.00____ and was paid by _____Mr. Jeremy Bravo_____.

    WITNESS MY OFFICIAL HAND this the _____3rd_____ day of _____December_____, 2020.

*Mandi M. Alvarez*
_____
MANDI M. ALVAREZ Texas CSR #9129
Expiration Date:  08/31/2021
Official Court Reporter
425th District Court
Williamson County, Texas
Georgetown, Texas

―――Mandi M. Alvarez, CSR―――