H. R. 3295

# One Hundred Seventh Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Wednesday,
the twenty-third day of January, two thousand and two*

## An Act

To establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Help America Vote Act of 2002".

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—PAYMENTS TO STATES FOR ELECTION ADMINISTRATION IMPROVEMENTS AND REPLACEMENT OF PUNCH CARD AND LEVER VOTING MACHINES

Sec. 101. Payments to States for activities to improve administration of elections.
Sec. 102. Replacement of punch card or lever voting machines.
Sec. 103. Guaranteed minimum payment amount.
Sec. 104. Authorization of appropriations.
Sec. 105. Administration of programs.
Sec. 106. Effective date.

TITLE II—COMMISSION

Subtitle A—Establishment and General Organization

PART 1—ELECTION ASSISTANCE COMMISSION

Sec. 201. Establishment.
Sec. 202. Duties.
Sec. 203. Membership and appointment.
Sec. 204. Staff.
Sec. 205. Powers.
Sec. 206. Dissemination of information.
Sec. 207. Annual report.
Sec. 208. Requiring majority approval for actions.
Sec. 209. Limitation on rulemaking authority.
Sec. 210. Authorization of appropriations.

PART 2—ELECTION ASSISTANCE COMMISSION STANDARDS BOARD AND BOARD OF ADVISORS

Sec. 211. Establishment.
Sec. 212. Duties.
Sec. 213. Membership of Standards Board.
Sec. 214. Membership of Board of Advisors.
Sec. 215. Powers of Boards; no compensation for service.
Sec. 216. Status of Boards and members for purposes of claims against Board.

H. R. 3295—2

PART 3—TECHNICAL GUIDELINES DEVELOPMENT COMMITTEE

Sec. 221. Technical Guidelines Development Committee.
Sec. 222. Process for adoption.

Subtitle B—Testing, Certification, Decertification, and Recertification of Voting
System Hardware and Software

Sec. 231. Certification and testing of voting systems.

Subtitle C—Studies and Other Activities To Promote Effective Administration of
Federal Elections

Sec. 241. Periodic studies of election administration issues.
Sec. 242. Study, report, and recommendations on best practices for facilitating mili-
tary and overseas voting.
Sec. 243. Report on human factor research.
Sec. 244. Study and report on voters who register by mail and use of social security
information.
Sec. 245. Study and report on electronic voting and the electoral process.
Sec. 246. Study and report on free absentee ballot postage.
Sec. 247. Consultation with Standards Board and Board of Advisors.

Subtitle D—Election Assistance

PART 1—REQUIREMENTS PAYMENTS

Sec. 251. Requirements payments.
Sec. 252. Allocation of funds.
Sec. 253. Condition for receipt of funds.
Sec. 254. State plan.
Sec. 255. Process for development and filing of plan; publication by Commission.
Sec. 256. Requirement for public notice and comment.
Sec. 257. Authorization of appropriations.
Sec. 258. Reports.

PART 2—PAYMENTS TO STATES AND UNITS OF LOCAL GOVERNMENT TO ASSURE
ACCESS FOR INDIVIDUALS WITH DISABILITIES

Sec. 261. Payments to States and units of local government to assure access for in-
dividuals with disabilities.
Sec. 262. Amount of payment.
Sec. 263. Requirements for eligibility.
Sec. 264. Authorization of appropriations.
Sec. 265. Reports.

PART 3—GRANTS FOR RESEARCH ON VOTING TECHNOLOGY IMPROVEMENTS

Sec. 271. Grants for research on voting technology improvements.
Sec. 272. Report.
Sec. 273. Authorization of appropriations.

PART 4—PILOT PROGRAM FOR TESTING OF EQUIPMENT AND TECHNOLOGY

Sec. 281. Pilot program.
Sec. 282. Report.
Sec. 283. Authorization of appropriations.

PART 5—PROTECTION AND ADVOCACY SYSTEMS

Sec. 291. Payments for protection and advocacy systems.
Sec. 292. Authorization of appropriations.

PART 6—NATIONAL STUDENT AND PARENT MOCK ELECTION

Sec. 295. National Student and Parent Mock Election.
Sec. 296. Authorization of appropriations.

TITLE III—UNIFORM AND NONDISCRIMINATORY ELECTION TECHNOLOGY
AND ADMINISTRATION REQUIREMENTS

Subtitle A—Requirements

Sec. 301. Voting systems standards.
Sec. 302. Provisional voting and voting information requirements.
Sec. 303. Computerized statewide voter registration list requirements and require-
ments for voters who register by mail.
Sec. 304. Minimum requirements.

H. R. 3295—3

Sec. 305. Methods of implementation left to discretion of State.

Subtitle B—Voluntary Guidance

Sec. 311. Adoption of voluntary guidance by Commission.
Sec. 312. Process for adoption.

TITLE IV—ENFORCEMENT

Sec. 401. Actions by the Attorney General for declaratory and injunctive relief.
Sec. 402. Establishment of State-based administrative complaint procedures to
        remedy grievances.

TITLE V—HELP AMERICA VOTE COLLEGE PROGRAM

Sec. 501. Establishment of program.
Sec. 502. Activities under program.
Sec. 503. Authorization of appropriations.

TITLE VI—HELP AMERICA VOTE FOUNDATION

Sec. 601. Help America Vote Foundation.

TITLE VII—VOTING RIGHTS OF MILITARY MEMBERS AND OVERSEAS
CITIZENS

Sec. 701. Voting assistance programs.
Sec. 702. Designation of single State office to provide information on registration
        and absentee ballots for all voters in State.
Sec. 703. Report on absentee ballots transmitted and received after general elec-
        tions.
Sec. 704. Extension of period covered by single absentee ballot application.
Sec. 705. Additional duties of Presidential designee under Uniformed and Overseas
        Citizens Absentee Voting Act.
Sec. 706. Prohibition of refusal of voter registration and absentee ballot applica-
        tions on grounds of early submission.
Sec. 707. Other requirements to promote participation of overseas and absent uni-
        formed services voters.

TITLE VIII—TRANSITION PROVISIONS

Subtitle A—Transfer to Commission of Functions Under Certain Laws

Sec. 801. Federal Election Campaign Act of 1971.
Sec. 802. National Voter Registration Act of 1993.
Sec. 803. Transfer of property, records, and personnel.
Sec. 804. Effective date; transition.

Subtitle B—Coverage of Commission Under Certain Laws and Programs

Sec. 811. Treatment of Commission personnel under certain civil service laws.
Sec. 812. Coverage under Inspector General Act of 1978.

TITLE IX—MISCELLANEOUS PROVISIONS

Sec. 901. State defined.
Sec. 902. Audits and repayment of funds.
Sec. 903. Clarification of ability of election officials to remove registrants from offi-
        cial list of voters on grounds of change of residence.
Sec. 904. Review and report on adequacy of existing electoral fraud statutes and
        penalties.
Sec. 905. Other criminal penalties.
Sec. 906. No effect on other laws.

# TITLE I—PAYMENTS TO STATES FOR ELECTION ADMINISTRATION IM-PROVEMENTS AND REPLACEMENT OF PUNCH CARD AND LEVER VOTING MA-CHINES

## SEC. 101. PAYMENTS TO STATES FOR ACTIVITIES TO IMPROVE ADMINISTRATION OF ELECTIONS.

(a) IN GENERAL.—Not later than 45 days after the date of the enactment of this Act, the Administrator of General Services

H. R. 3295—4

(in this title referred to as the "Administrator") shall establish a program under which the Administrator shall make a payment to each State in which the chief executive officer of the State, or designee, in consultation and coordination with the chief State election official, notifies the Administrator not later than 6 months after the date of the enactment of this Act that the State intends to use the payment in accordance with this section.

(b) USE OF PAYMENT.—

(1) IN GENERAL.—A State shall use the funds provided under a payment made under this section to carry out one or more of the following activities:

(A) Complying with the requirements under title III.

(B) Improving the administration of elections for Federal office.

(C) Educating voters concerning voting procedures, voting rights, and voting technology.

(D) Training election officials, poll workers, and election volunteers.

(E) Developing the State plan for requirements payments to be submitted under part 1 of subtitle D of title II.

(F) Improving, acquiring, leasing, modifying, or replacing voting systems and technology and methods for casting and counting votes.

(G) Improving the accessibility and quantity of polling places, including providing physical access for individuals with disabilities, providing nonvisual access for individuals with visual impairments, and providing assistance to Native Americans, Alaska Native citizens, and to individuals with limited proficiency in the English language.

(H) Establishing toll-free telephone hotlines that voters may use to report possible voting fraud and voting rights violations, to obtain general election information, and to access detailed automated information on their own voter registration status, specific polling place locations, and other relevant information.

(2) LIMITATION.—A State may not use the funds provided under a payment made under this section—

(A) to pay costs associated with any litigation, except to the extent that such costs otherwise constitute permitted uses of a payment under this section; or

(B) for the payment of any judgment.

(c) USE OF FUNDS TO BE CONSISTENT WITH OTHER LAWS AND REQUIREMENTS.—In order to receive a payment under the program under this section, the State shall provide the Administrator with certifications that—

(1) the State will use the funds provided under the payment in a manner that is consistent with each of the laws described in section 906, as such laws relate to the provisions of this Act; and

(2) the proposed uses of the funds are not inconsistent with the requirements of title III.

(d) AMOUNT OF PAYMENT.—

(1) IN GENERAL.—Subject to section 103(b), the amount of payment made to a State under this section shall be the minimum payment amount described in paragraph (2) plus

H. R. 3295—5

the voting age population proportion amount described in paragraph (3).

(2) MINIMUM PAYMENT AMOUNT.—The minimum payment amount described in this paragraph is—

(A) in the case of any of the several States or the District of Columbia, one-half of 1 percent of the aggregate amount made available for payments under this section; and

(B) in the case of the Commonwealth of Puerto Rico, Guam, American Samoa, or the United States Virgin Islands, one-tenth of 1 percent of such aggregate amount.

(3) VOTING AGE POPULATION PROPORTION AMOUNT.—The voting age population proportion amount described in this paragraph is the product of—

(A) the aggregate amount made available for payments under this section minus the total of all of the minimum payment amounts determined under paragraph (2); and

(B) the voting age population proportion for the State (as defined in paragraph (4)).

(4) VOTING AGE POPULATION PROPORTION DEFINED.—The term "voting age population proportion" means, with respect to a State, the amount equal to the quotient of—

(A) the voting age population of the State (as reported in the most recent decennial census); and

(B) the total voting age population of all States (as reported in the most recent decennial census).

## SEC. 102. REPLACEMENT OF PUNCH CARD OR LEVER VOTING MACHINES.

(a) ESTABLISHMENT OF PROGRAM.—

(1) IN GENERAL.—Not later than 45 days after the date of the enactment of this Act, the Administrator shall establish a program under which the Administrator shall make a payment to each State eligible under subsection (b) in which a precinct within that State used a punch card voting system or a lever voting system to administer the regularly scheduled general election for Federal office held in November 2000 (in this section referred to as a "qualifying precinct").

(2) USE OF FUNDS.—A State shall use the funds provided under a payment under this section (either directly or as reimbursement, including as reimbursement for costs incurred on or after January 1, 2001, under multiyear contracts) to replace punch card voting systems or lever voting systems (as the case may be) in qualifying precincts within that State with a voting system (by purchase, lease, or such other arrangement as may be appropriate) that—

(A) does not use punch cards or levers;

(B) is not inconsistent with the requirements of the laws described in section 906; and

(C) meets the requirements of section 301.

(3) DEADLINE.—

(A) IN GENERAL.—Except as provided in subparagraph (B), a State receiving a payment under the program under this section shall ensure that all of the punch card voting systems or lever voting systems in the qualifying precincts

H. R. 3295—6

within that State have been replaced in time for the regularly scheduled general election for Federal office to be held in November 2004.

(B) WAIVER.—If a State certifies to the Administrator not later than January 1, 2004, that the State will not meet the deadline described in subparagraph (A) for good cause and includes in the certification the reasons for the failure to meet such deadline, the State shall ensure that all of the punch card voting systems or lever voting systems in the qualifying precincts within that State will be replaced in time for the first election for Federal office held after January 1, 2006.

(b) ELIGIBILITY.—

(1) IN GENERAL.—A State is eligible to receive a payment under the program under this section if it submits to the Administrator a notice not later than the date that is 6 months after the date of the enactment of this Act (in such form as the Administrator may require) that contains—

(A) certifications that the State will use the payment (either directly or as reimbursement, including as reimbursement for costs incurred on or after January 1, 2001, under multiyear contracts) to replace punch card voting systems or lever voting systems (as the case may be) in the qualifying precincts within the State by the deadline described in subsection (a)(3);

(B) certifications that the State will continue to comply with the laws described in section 906;

(C) certifications that the replacement voting systems will meet the requirements of section 301; and

(D) such other information and certifications as the Administrator may require which are necessary for the administration of the program.

(2) COMPLIANCE OF STATES THAT REQUIRE CHANGES TO STATE LAW.—In the case of a State that requires State legislation to carry out an activity covered by any certification submitted under this subsection, the State shall be permitted to make the certification notwithstanding that the legislation has not been enacted at the time the certification is submitted and such State shall submit an additional certification once such legislation is enacted.

(c) AMOUNT OF PAYMENT.—

(1) IN GENERAL.—Subject to paragraph (2) and section 103(b), the amount of payment made to a State under the program under this section shall be equal to the product of—

(A) the number of the qualifying precincts within the State; and

(B) $4,000.

(2) REDUCTION.—If the amount of funds appropriated pursuant to the authority of section 104(a)(2) is insufficient to ensure that each State receives the amount of payment calculated under paragraph (1), the Administrator shall reduce the amount specified in paragraph (1)(B) to ensure that the entire amount appropriated under such section is distributed to the States.

(d) REPAYMENT OF FUNDS FOR FAILURE TO MEET DEADLINES.—

(1) IN GENERAL.—If a State receiving funds under the program under this section fails to meet the deadline applicable

H. R. 3295—7

to the State under subsection (a)(3), the State shall pay to the Administrator an amount equal to the noncompliant precinct percentage of the amount of the funds provided to the State under the program.

(2) NONCOMPLIANT PRECINCT PERCENTAGE DEFINED.—In this subsection, the term "noncompliant precinct percentage" means, with respect to a State, the amount (expressed as a percentage) equal to the quotient of—

(A) the number of qualifying precincts within the State for which the State failed to meet the applicable deadline; and

(B) the total number of qualifying precincts in the State.

(e) PUNCH CARD VOTING SYSTEM DEFINED.—For purposes of this section, a "punch card voting system" includes any of the following voting systems:

(1) C.E.S.
(2) Datavote.
(3) PBC Counter.
(4) Pollstar.
(5) Punch Card.
(6) Vote Recorder.
(7) Votomatic.

## SEC. 103. GUARANTEED MINIMUM PAYMENT AMOUNT.

(a) IN GENERAL.—In addition to any other payments made under this title, the Administrator shall make a payment to each State to which a payment is made under either section 101 or 102 and with respect to which the aggregate amount paid under such sections is less than $5,000,000 in an amount equal to the difference between the aggregate amount paid to the State under sections 101 and 102 and $5,000,000. In the case of the Commonwealth of Puerto Rico, Guam, American Samoa, and the United States Virgin Islands, the previous sentence shall be applied as if each reference to "$5,000,000" were a reference to "$1,000,000".

(b) PRO RATA REDUCTIONS.—The Administrator shall make such pro rata reductions to the amounts described in sections 101(d) and 102(c) as are necessary to comply with the requirements of subsection (a).

## SEC. 104. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—There are authorized to be appropriated for payments under this title $650,000,000, of which—

(1) 50 percent shall be for payments under section 101; and

(2) 50 percent shall be for payments under section 102.

(b) CONTINUING AVAILABILITY OF FUNDS AFTER APPROPRIATION.—Any payment made to a State under this title shall be available to the State without fiscal year limitation (subject to subsection (c)(2)(B)).

(c) USE OF RETURNED FUNDS AND FUNDS REMAINING UNEXPENDED FOR REQUIREMENTS PAYMENTS.—

(1) IN GENERAL.—The amounts described in paragraph (2) shall be transferred to the Election Assistance Commission (established under title II) and used by the Commission to make requirements payments under part 1 of subtitle D of title II.

H. R. 3295—8

(2) AMOUNTS DESCRIBED.—The amounts referred to in this paragraph are as follows:

(A) Any amounts paid to the Administrator by a State under section 102(d)(1).

(B) Any amounts appropriated for payments under this title which remain unobligated as of September 1, 2003.

(d) DEPOSIT OF AMOUNTS IN STATE ELECTION FUND.—When a State has established an election fund described in section 254(b), the State shall ensure that any funds provided to the State under this title are deposited and maintained in such fund.

(e) AUTHORIZATION OF APPROPRIATIONS FOR ADMINISTRATOR.— In addition to the amounts authorized under subsection (a), there are authorized to be appropriated to the Administrator such sums as may be necessary to administer the programs under this title.

## SEC. 105. ADMINISTRATION OF PROGRAMS.

In administering the programs under this title, the Administrator shall take such actions as the Administrator considers appropriate to expedite the payment of funds to States.

## SEC. 106. EFFECTIVE DATE.

The Administrator shall implement the programs established under this title in a manner that ensures that the Administrator is able to make payments under the program not later than the expiration of the 45-day period which begins on the date of the enactment of this Act.

# TITLE II—COMMISSION

# Subtitle A—Establishment and General Organization

## PART 1—ELECTION ASSISTANCE COMMISSION

### SEC. 201. ESTABLISHMENT.

There is hereby established as an independent entity the Election Assistance Commission (hereafter in this title referred to as the "Commission"), consisting of the members appointed under this part. Additionally, there is established the Election Assistance Commission Standards Board (including the Executive Board of such Board) and the Election Assistance Commission Board of Advisors under part 2 (hereafter in this part referred to as the "Standards Board" and the "Board of Advisors", respectively) and the Technical Guidelines Development Committee under part 3.

### SEC. 202. DUTIES.

The Commission shall serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections by—

(1) carrying out the duties described in part 3 (relating to the adoption of voluntary voting system guidelines), including the maintenance of a clearinghouse of information on the experiences of State and local governments in implementing the guidelines and in operating voting systems in general;

H. R. 3295—9

(2) carrying out the duties described in subtitle B (relating to the testing, certification, decertification, and recertification of voting system hardware and software);

(3) carrying out the duties described in subtitle C (relating to conducting studies and carrying out other activities to promote the effective administration of Federal elections);

(4) carrying out the duties described in subtitle D (relating to election assistance), and providing information and training on the management of the payments and grants provided under such subtitle;

(5) carrying out the duties described in subtitle B of title III (relating to the adoption of voluntary guidance); and

(6) developing and carrying out the Help America Vote College Program under title V.

## SEC. 203. MEMBERSHIP AND APPOINTMENT.

(a) MEMBERSHIP.—

(1) IN GENERAL.—The Commission shall have four members appointed by the President, by and with the advice and consent of the Senate.

(2) RECOMMENDATIONS.—Before the initial appointment of the members of the Commission and before the appointment of any individual to fill a vacancy on the Commission, the Majority Leader of the Senate, the Speaker of the House of Representatives, the Minority Leader of the Senate, and the Minority Leader of the House of Representatives shall each submit to the President a candidate recommendation with respect to each vacancy on the Commission affiliated with the political party of the Member of Congress involved.

(3) QUALIFICATIONS.—Each member of the Commission shall have experience with or expertise in election administration or the study of elections.

(4) DATE OF APPOINTMENT.—The appointments of the members of the Commission shall be made not later than 120 days after the date of the enactment of this Act.

(b) TERM OF SERVICE.—

(1) IN GENERAL.—Except as provided in paragraphs (2) and (3), members shall serve for a term of 4 years and may be reappointed for not more than one additional term.

(2) TERMS OF INITIAL APPOINTEES.—As designated by the President at the time of nomination, of the members first appointed—

(A) two of the members (not more than one of whom may be affiliated with the same political party) shall be appointed for a term of 2 years; and

(B) two of the members (not more than one of whom may be affiliated with the same political party) shall be appointed for a term of 4 years.

(3) VACANCIES.—

(A) IN GENERAL.—A vacancy on the Commission shall be filled in the manner in which the original appointment was made and shall be subject to any conditions which applied with respect to the original appointment.

(B) EXPIRED TERMS.—A member of the Commission shall serve on the Commission after the expiration of the member's term until the successor of such member has taken office as a member of the Commission.

(C) UNEXPIRED TERMS.—An individual appointed to fill a vacancy shall be appointed for the unexpired term of the member replaced.

(c) CHAIR AND VICE CHAIR.—

(1) IN GENERAL.—The Commission shall select a chair and vice chair from among its members for a term of 1 year, except that the chair and vice chair may not be affiliated with the same political party.

(2) NUMBER OF TERMS.—A member of the Commission may serve as the chairperson and vice chairperson for only 1 term each during the term of office to which such member is appointed.

(d) COMPENSATION.—

(1) IN GENERAL.—Each member of the Commission shall be compensated at the annual rate of basic pay prescribed for level IV of the Executive Schedule under section 5315 of title 5, United States Code.

(2) OTHER ACTIVITIES.—No member appointed to the Commission under subsection (a) may engage in any other business, vocation, or employment while serving as a member of the Commission and shall terminate or liquidate such business, vocation, or employment before sitting as a member of the Commission.

**SEC. 204. STAFF.**

(a) EXECUTIVE DIRECTOR, GENERAL COUNSEL, AND OTHER STAFF.—

(1) EXECUTIVE DIRECTOR.—The Commission shall have an Executive Director, who shall be paid at a rate not to exceed the rate of basic pay for level V of the Executive Schedule under section 5316 of title 5, United States Code.

(2) TERM OF SERVICE FOR EXECUTIVE DIRECTOR.—The Executive Director shall serve for a term of 4 years. An Executive Director may serve for a longer period only if reappointed for an additional term or terms by a vote of the Commission.

(3) PROCEDURE FOR APPOINTMENT.—

(A) IN GENERAL.—When a vacancy exists in the position of the Executive Director, the Standards Board and the Board of Advisors shall each appoint a search committee to recommend at least three nominees for the position.

(B) REQUIRING CONSIDERATION OF NOMINEES.—Except as provided in subparagraph (C), the Commission shall consider the nominees recommended by the Standards Board and the Board of Advisors in appointing the Executive Director.

(C) INTERIM SERVICE OF GENERAL COUNSEL.—If a vacancy exists in the position of the Executive Director, the General Counsel of the Commission shall serve as the acting Executive Director until the Commission appoints a new Executive Director in accordance with this paragraph.

(D) SPECIAL RULES FOR INTERIM EXECUTIVE DIRECTOR.—

(i) CONVENING OF SEARCH COMMITTEES.—The Standards Board and the Board of Advisors shall each appoint a search committee and recommend nominees for the position of Executive Director in accordance

H. R. 3295—11

with subparagraph (A) as soon as practicable after the appointment of their members.

(ii) INTERIM INITIAL APPOINTMENT.—Notwithstanding subparagraph (B), the Commission may appoint an individual to serve as an interim Executive Director prior to the recommendation of nominees for the position by the Standards Board or the Board of Advisors, except that such individual's term of service may not exceed 6 months. Nothing in the previous sentence may be construed to prohibit the individual serving as the interim Executive Director from serving any additional term.

(4) GENERAL COUNSEL.—The Commission shall have a General Counsel, who shall be appointed by the Commission and who shall serve under the Executive Director. The General Counsel shall serve for a term of 4 years, and may serve for a longer period only if reappointed for an additional term or terms by a vote of the Commission.

(5) OTHER STAFF.—Subject to rules prescribed by the Commission, the Executive Director may appoint and fix the pay of such additional personnel as the Executive Director considers appropriate.

(6) APPLICABILITY OF CERTAIN CIVIL SERVICE LAWS.—The Executive Director, General Counsel, and staff of the Commission may be appointed without regard to the provisions of title 5, United States Code, governing appointments in the competitive service, and may be paid without regard to the provisions of chapter 51 and subchapter III of chapter 53 of that title relating to classification and General Schedule pay rates, except that an individual so appointed may not receive pay in excess of the annual rate of basic pay for level V of the Executive Schedule under section 5316 of that title.

(b) EXPERTS AND CONSULTANTS.—Subject to rules prescribed by the Commission, the Executive Director may procure temporary and intermittent services under section 3109(b) of title 5, United States Code, by a vote of the Commission.

(c) STAFF OF FEDERAL AGENCIES.—Upon request of the Commission, the head of any Federal department or agency may detail, on a reimbursable basis, any of the personnel of that department or agency to the Commission to assist it in carrying out its duties under this Act.

(d) ARRANGING FOR ASSISTANCE FOR BOARD OF ADVISORS AND STANDARDS BOARD.—At the request of the Board of Advisors or the Standards Board, the Commission may enter into such arrangements as the Commission considers appropriate to make personnel available to assist the Boards with carrying out their duties under this title (including contracts with private individuals for providing temporary personnel services or the temporary detailing of personnel of the Commission).

(e) CONSULTATION WITH BOARD OF ADVISORS AND STANDARDS BOARD ON CERTAIN MATTERS.—In preparing the program goals, long-term plans, mission statements, and related matters for the Commission, the Executive Director and staff of the Commission shall consult with the Board of Advisors and the Standards Board.

H. R. 3295—12

### SEC. 205. POWERS.

(a) HEARINGS AND SESSIONS.—The Commission may hold such hearings for the purpose of carrying out this Act, sit and act at such times and places, take such testimony, and receive such evidence as the Commission considers advisable to carry out this Act. The Commission may administer oaths and affirmations to witnesses appearing before the Commission.

(b) INFORMATION FROM FEDERAL AGENCIES.—The Commission may secure directly from any Federal department or agency such information as the Commission considers necessary to carry out this Act. Upon request of the Commission, the head of such department or agency shall furnish such information to the Commission.

(c) POSTAL SERVICES.—The Commission may use the United States mails in the same manner and under the same conditions as other departments and agencies of the Federal Government.

(d) ADMINISTRATIVE SUPPORT SERVICES.—Upon the request of the Commission, the Administrator of General Services shall provide to the Commission, on a reimbursable basis, the administrative support services that are necessary to enable the Commission to carry out its duties under this Act.

(e) CONTRACTS.—The Commission may contract with and compensate persons and Federal agencies for supplies and services without regard to section 3709 of the Revised Statutes of the United States (41 U.S.C. 5).

### SEC. 206. DISSEMINATION OF INFORMATION.

In carrying out its duties, the Commission shall, on an ongoing basis, disseminate to the public (through the Internet, published reports, and such other methods as the Commission considers appropriate) in a manner that is consistent with the requirements of chapter 19 of title 44, United States Code, information on the activities carried out under this Act.

### SEC. 207. ANNUAL REPORT.

Not later than January 31 of each year (beginning with 2004), the Commission shall submit a report to the Committee on House Administration of the House of Representatives and the Committee on Rules and Administration of the Senate detailing its activities during the fiscal year which ended on September 30 of the previous calendar year, and shall include in the report the following information:

(1) A detailed description of activities conducted with respect to each program carried out by the Commission under this Act, including information on each grant or other payment made under such programs.

(2) A copy of each report submitted to the Commission by a recipient of such grants or payments which is required under such a program, including reports submitted by States receiving requirements payments under part 1 of subtitle D, and each other report submitted to the Commission under this Act.

(3) Information on the voluntary voting system guidelines adopted or modified by the Commission under part 3 and information on the voluntary guidance adopted under subtitle B of title III.

(4) All votes taken by the Commission.

H. R. 3295—13

(5) Such other information and recommendations as the Commission considers appropriate.

**SEC. 208. REQUIRING MAJORITY APPROVAL FOR ACTIONS.**

Any action which the Commission is authorized to carry out under this Act may be carried out only with the approval of at least three of its members.

**SEC. 209. LIMITATION ON RULEMAKING AUTHORITY.**

The Commission shall not have any authority to issue any rule, promulgate any regulation, or take any other action which imposes any requirement on any State or unit of local government, except to the extent permitted under section 9(a) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–7(a)).

**SEC. 210. AUTHORIZATION OF APPROPRIATIONS.**

In addition to the amounts authorized for payments and grants under this title and the amounts authorized to be appropriated for the program under section 503, there are authorized to be appropriated for each of the fiscal years 2003 through 2005 such sums as may be necessary (but not to exceed $10,000,000 for each such year) for the Commission to carry out this title.

# PART 2—ELECTION ASSISTANCE COMMISSION STANDARDS BOARD AND BOARD OF ADVISORS

**SEC. 211. ESTABLISHMENT.**

There are hereby established the Election Assistance Commission Standards Board (hereafter in this title referred to as the "Standards Board") and the Election Assistance Commission Board of Advisors (hereafter in this title referred to as the "Board of Advisors").

**SEC. 212. DUTIES.**

The Standards Board and the Board of Advisors shall each, in accordance with the procedures described in part 3, review the voluntary voting system guidelines under such part, the voluntary guidance under title III, and the best practices recommendations contained in the report submitted under section 242(b).

**SEC. 213. MEMBERSHIP OF STANDARDS BOARD.**

(a) COMPOSITION.—

(1) IN GENERAL.—Subject to certification by the chair of the Federal Election Commission under subsection (b), the Standards Board shall be composed of 110 members as follows:

(A) Fifty-five shall be State election officials selected by the chief State election official of each State.

(B) Fifty-five shall be local election officials selected in accordance with paragraph (2).

(2) LIST OF LOCAL ELECTION OFFICIALS.—Each State's local election officials, including the local election officials of Puerto Rico and the United States Virgin Islands, shall select (under a process supervised by the chief election official of the State) a representative local election official from the State for purposes of paragraph (1)(B). In the case of the District of Columbia, Guam, and American Samoa, the chief election official shall establish a procedure for selecting an individual to serve as a local election official for purposes of such paragraph,

H. R. 3295—14

except that under such a procedure the individual selected may not be a member of the same political party as the chief election official.

(3) REQUIRING MIX OF POLITICAL PARTIES REPRESENTED.— The two members of the Standards Board who represent the same State may not be members of the same political party.

(b) PROCEDURES FOR NOTICE AND CERTIFICATION OF APPOINTMENT.—

(1) NOTICE TO CHAIR OF FEDERAL ELECTION COMMISSION.— Not later than 90 days after the date of the enactment of this Act, the chief State election official of the State shall transmit a notice to the chair of the Federal Election Commission containing—

(A) the name of the State election official who agrees to serve on the Standards Board under this title; and

(B) the name of the representative local election official from the State selected under subsection (a)(2) who agrees to serve on the Standards Board under this title.

(2) CERTIFICATION.—Upon receiving a notice from a State under paragraph (1), the chair of the Federal Election Commission shall publish a certification that the selected State election official and the representative local election official are appointed as members of the Standards Board under this title.

(3) EFFECT OF FAILURE TO PROVIDE NOTICE.—If a State does not transmit a notice to the chair of the Federal Election Commission under paragraph (1) within the deadline described in such paragraph, no representative from the State may participate in the selection of the initial Executive Board under subsection (c).

(4) ROLE OF COMMISSION.—Upon the appointment of the members of the Election Assistance Commission, the Election Assistance Commission shall carry out the duties of the Federal Election Commission under this subsection.

(c) EXECUTIVE BOARD.—

(1) IN GENERAL.—Not later than 60 days after the last day on which the appointment of any of its members may be certified under subsection (b), the Standards Board shall select nine of its members to serve as the Executive Board of the Standards Board, of whom—

(A) not more than five may be State election officials;

(B) not more than five may be local election officials; and

(C) not more than five may be members of the same political party.

(2) TERMS.—Except as provided in paragraph (3), members of the Executive Board of the Standards Board shall serve for a term of 2 years and may not serve for more than 3 consecutive terms.

(3) STAGGERING OF INITIAL TERMS.—Of the members first selected to serve on the Executive Board of the Standards Board—

(A) three shall serve for 1 term;

(B) three shall serve for 2 consecutive terms; and

(C) three shall serve for 3 consecutive terms,

as determined by lot at the time the members are first appointed.

H. R. 3295—15

(4) DUTIES.—In addition to any other duties assigned under this title, the Executive Board of the Standards Board may carry out such duties of the Standards Board as the Standards Board may delegate.

**SEC. 214. MEMBERSHIP OF BOARD OF ADVISORS.**

(a) IN GENERAL.—The Board of Advisors shall be composed of 37 members appointed as follows:

(1) Two members appointed by the National Governors Association.

(2) Two members appointed by the National Conference of State Legislatures.

(3) Two members appointed by the National Association of Secretaries of State.

(4) Two members appointed by the National Association of State Election Directors.

(5) Two members appointed by the National Association of Counties.

(6) Two members appointed by the National Association of County Recorders, Election Administrators, and Clerks.

(7) Two members appointed by the United States Conference of Mayors.

(8) Two members appointed by the Election Center.

(9) Two members appointed by the International Association of County Recorders, Election Officials, and Treasurers.

(10) Two members appointed by the United States Commission on Civil Rights.

(11) Two members appointed by the Architectural and Transportation Barrier Compliance Board under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792).

(12) The chief of the Office of Public Integrity of the Department of Justice, or the chief's designee.

(13) The chief of the Voting Section of the Civil Rights Division of the Department of Justice or the chief's designee.

(14) The director of the Federal Voting Assistance Program of the Department of Defense.

(15) Four members representing professionals in the field of science and technology, of whom—

(A) one each shall be appointed by the Speaker and the Minority Leader of the House of Representatives; and

(B) one each shall be appointed by the Majority Leader and the Minority Leader of the Senate.

(16) Eight members representing voter interests, of whom—

(A) four members shall be appointed by the Committee on House Administration of the House of Representatives, of whom two shall be appointed by the chair and two shall be appointed by the ranking minority member; and

(B) four members shall be appointed by the Committee on Rules and Administration of the Senate, of whom two shall be appointed by the chair and two shall be appointed by the ranking minority member.

(b) MANNER OF APPOINTMENTS.—Appointments shall be made to the Board of Advisors under subsection (a) in a manner which ensures that the Board of Advisors will be bipartisan in nature and will reflect the various geographic regions of the United States.

(c) TERM OF SERVICE; VACANCY.—Members of the Board of Advisors shall serve for a term of 2 years, and may be reappointed.

H. R. 3295—16

Any vacancy in the Board of Advisors shall be filled in the manner in which the original appointment was made.

(d) CHAIR.—The Board of Advisors shall elect a Chair from among its members.

## SEC. 215. POWERS OF BOARDS; NO COMPENSATION FOR SERVICE.

(a) HEARINGS AND SESSIONS.—

(1) IN GENERAL.—To the extent that funds are made available by the Commission, the Standards Board (acting through the Executive Board) and the Board of Advisors may each hold such hearings for the purpose of carrying out this Act, sit and act at such times and places, take such testimony, and receive such evidence as each such Board considers advisable to carry out this title, except that the Boards may not issue subpoenas requiring the attendance and testimony of witnesses or the production of any evidence.

(2) MEETINGS.—The Standards Board and the Board of Advisors shall each hold a meeting of its members—

(A) not less frequently than once every year for purposes of voting on the voluntary voting system guidelines referred to it under section 222;

(B) in the case of the Standards Board, not less frequently than once every 2 years for purposes of selecting the Executive Board; and

(C) at such other times as it considers appropriate for purposes of conducting such other business as it considers appropriate consistent with this title.

(b) INFORMATION FROM FEDERAL AGENCIES.—The Standards Board and the Board of Advisors may each secure directly from any Federal department or agency such information as the Board considers necessary to carry out this Act. Upon request of the Executive Board (in the case of the Standards Board) or the Chair (in the case of the Board of Advisors), the head of such department or agency shall furnish such information to the Board.

(c) POSTAL SERVICES.—The Standards Board and the Board of Advisors may use the United States mails in the same manner and under the same conditions as a department or agency of the Federal Government.

(d) ADMINISTRATIVE SUPPORT SERVICES.—Upon the request of the Executive Board (in the case of the Standards Board) or the Chair (in the case of the Board of Advisors), the Administrator of the General Services Administration shall provide to the Board, on a reimbursable basis, the administrative support services that are necessary to enable the Board to carry out its duties under this title.

(e) NO COMPENSATION FOR SERVICE.—Members of the Standards Board and members of the Board of Advisors shall not receive any compensation for their service, but shall be paid travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies under subchapter I of chapter 57 of title 5, United States Code, while away from their homes or regular places of business in the performance of services for the Board.

## SEC. 216. STATUS OF BOARDS AND MEMBERS FOR PURPOSES OF CLAIMS AGAINST BOARD.

(a) IN GENERAL.—The provisions of chapters 161 and 171 of title 28, United States Code, shall apply with respect to the liability

of the Standards Board, the Board of Advisors, and their members for acts or omissions performed pursuant to and in the course of the duties and responsibilities of the Board.

(b) EXCEPTION FOR CRIMINAL ACTS AND OTHER WILLFUL CONDUCT.—Subsection (a) may not be construed to limit personal liability for criminal acts or omissions, willful or malicious misconduct, acts or omissions for private gain, or any other act or omission outside the scope of the service of a member of the Standards Board or the Board of Advisors.

# PART 3—TECHNICAL GUIDELINES DEVELOPMENT COMMITTEE

### SEC. 221. TECHNICAL GUIDELINES DEVELOPMENT COMMITTEE.

(a) ESTABLISHMENT.—There is hereby established the Technical Guidelines Development Committee (hereafter in this part referred to as the "Development Committee").

(b) DUTIES.—

(1) IN GENERAL.—The Development Committee shall assist the Executive Director of the Commission in the development of the voluntary voting system guidelines.

(2) DEADLINE FOR INITIAL SET OF RECOMMENDATIONS.—The Development Committee shall provide its first set of recommendations under this section to the Executive Director of the Commission not later than 9 months after all of its members have been appointed.

(c) MEMBERSHIP.—

(1) IN GENERAL.—The Development Committee shall be composed of the Director of the National Institute of Standards and Technology (who shall serve as its chair), together with a group of 14 other individuals appointed jointly by the Commission and the Director of the National Institute of Standards and Technology, consisting of the following:

(A) An equal number of each of the following:

(i) Members of the Standards Board.

(ii) Members of the Board of Advisors.

(iii) Members of the Architectural and Transportation Barrier Compliance Board under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792).

(B) A representative of the American National Standards Institute.

(C) A representative of the Institute of Electrical and Electronics Engineers.

(D) Two representatives of the National Association of State Election Directors selected by such Association who are not members of the Standards Board or Board of Advisors, and who are not of the same political party.

(E) Other individuals with technical and scientific expertise relating to voting systems and voting equipment.

(2) QUORUM.—A majority of the members of the Development Committee shall constitute a quorum, except that the Development Committee may not conduct any business prior to the appointment of all of its members.

(d) NO COMPENSATION FOR SERVICE.—Members of the Development Committee shall not receive any compensation for their service, but shall be paid travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies

H. R. 3295—18

under subchapter I of chapter 57 of title 5, United States Code, while away from their homes or regular places of business in the performance of services for the Development Committee.

(e) TECHNICAL SUPPORT FROM NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY.—

(1) IN GENERAL.—At the request of the Development Committee, the Director of the National Institute of Standards and Technology shall provide the Development Committee with technical support necessary for the Development Committee to carry out its duties under this subtitle.

(2) TECHNICAL SUPPORT.—The technical support provided under paragraph (1) shall include intramural research and development in areas to support the development of the voluntary voting system guidelines under this part, including—

(A) the security of computers, computer networks, and computer data storage used in voting systems, including the computerized list required under section 303(a);

(B) methods to detect and prevent fraud;

(C) the protection of voter privacy;

(D) the role of human factors in the design and application of voting systems, including assistive technologies for individuals with disabilities (including blindness) and varying levels of literacy; and

(E) remote access voting, including voting through the Internet.

(3) NO PRIVATE SECTOR INTELLECTUAL PROPERTY RIGHTS IN GUIDELINES.—No private sector individual or entity shall obtain any intellectual property rights to any guideline or the contents of any guideline (or any modification to any guideline) adopted by the Commission under this Act.

(f) PUBLICATION OF RECOMMENDATIONS IN FEDERAL REGISTER.— At the time the Commission adopts any voluntary voting system guideline pursuant to section 222, the Development Committee shall cause to have published in the Federal Register the recommendations it provided under this section to the Executive Director of the Commission concerning the guideline adopted.

## SEC. 222. PROCESS FOR ADOPTION.

(a) GENERAL REQUIREMENT FOR NOTICE AND COMMENT.—Consistent with the requirements of this section, the final adoption of the voluntary voting system guidelines (or modification of such a guideline) shall be carried out by the Commission in a manner that provides for each of the following:

(1) Publication of notice of the proposed guidelines in the Federal Register.

(2) An opportunity for public comment on the proposed guidelines.

(3) An opportunity for a public hearing on the record.

(4) Publication of the final guidelines in the Federal Register.

(b) CONSIDERATION OF RECOMMENDATIONS OF DEVELOPMENT COMMITTEE; SUBMISSION OF PROPOSED GUIDELINES TO BOARD OF ADVISORS AND STANDARDS BOARD.—

(1) CONSIDERATION OF RECOMMENDATIONS OF DEVELOPMENT COMMITTEE.—In developing the voluntary voting system guidelines and modifications of such guidelines under this section,

H. R. 3295—19

the Executive Director of the Commission shall take into consideration the recommendations provided by the Technical Guidelines Development Committee under section 221.

(2) BOARD OF ADVISORS.—The Executive Director of the Commission shall submit the guidelines proposed to be adopted under this part (or any modifications to such guidelines) to the Board of Advisors.

(3) STANDARDS BOARD.—The Executive Director of the Commission shall submit the guidelines proposed to be adopted under this part (or any modifications to such guidelines) to the Executive Board of the Standards Board, which shall review the guidelines (or modifications) and forward its recommendations to the Standards Board.

(c) REVIEW.—Upon receipt of voluntary voting system guidelines described in subsection (b) (or a modification of such guidelines) from the Executive Director of the Commission, the Board of Advisors and the Standards Board shall each review and submit comments and recommendations regarding the guideline (or modification) to the Commission.

(d) FINAL ADOPTION.—

(1) IN GENERAL.—A voluntary voting system guideline described in subsection (b) (or modification of such a guideline) shall not be considered to be finally adopted by the Commission unless the Commission votes to approve the final adoption of the guideline (or modification), taking into consideration the comments and recommendations submitted by the Board of Advisors and the Standards Board under subsection (c).

(2) MINIMUM PERIOD FOR CONSIDERATION OF COMMENTS AND RECOMMENDATIONS.—The Commission may not vote on the final adoption of a guideline described in subsection (b) (or modification of such a guideline) until the expiration of the 90-day period which begins on the date the Executive Director of the Commission submits the proposed guideline (or modification) to the Board of Advisors and the Standards Board under subsection (b).

(e) SPECIAL RULE FOR INITIAL SET OF GUIDELINES.—Notwithstanding any other provision of this part, the most recent set of voting system standards adopted by the Federal Election Commission prior to the date of the enactment of this Act shall be deemed to have been adopted by the Commission as of the date of the enactment of this Act as the first set of voluntary voting system guidelines adopted under this part.

# Subtitle B—Testing, Certification, Decertification, and Recertification of Voting System Hardware and Software

## SEC. 231. CERTIFICATION AND TESTING OF VOTING SYSTEMS.

(a) CERTIFICATION AND TESTING.—

(1) IN GENERAL.—The Commission shall provide for the testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories.

H. R. 3295—20

(2) OPTIONAL USE BY STATES.—At the option of a State, the State may provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the Commission under this section.

(b) LABORATORY ACCREDITATION.—

(1) RECOMMENDATIONS BY NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY.—Not later than 6 months after the Commission first adopts voluntary voting system guidelines under part 3 of subtitle A, the Director of the National Institute of Standards and Technology shall conduct an evaluation of independent, non-Federal laboratories and shall submit to the Commission a list of those laboratories the Director proposes to be accredited to carry out the testing, certification, decertification, and recertification provided for under this section.

(2) APPROVAL BY COMMISSION.—

(A) IN GENERAL.—The Commission shall vote on the accreditation of any laboratory under this section, taking into consideration the list submitted under paragraph (1), and no laboratory may be accredited for purposes of this section unless its accreditation is approved by a vote of the Commission.

(B) ACCREDITATION OF LABORATORIES NOT ON DIRECTOR LIST.—The Commission shall publish an explanation for the accreditation of any laboratory not included on the list submitted by the Director of the National Institute of Standards and Technology under paragraph (1).

(c) CONTINUING REVIEW BY NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY.—

(1) IN GENERAL.—In cooperation with the Commission and in consultation with the Standards Board and the Board of Advisors, the Director of the National Institute of Standards and Technology shall monitor and review, on an ongoing basis, the performance of the laboratories accredited by the Commission under this section, and shall make such recommendations to the Commission as it considers appropriate with respect to the continuing accreditation of such laboratories, including recommendations to revoke the accreditation of any such laboratory.

(2) APPROVAL BY COMMISSION REQUIRED FOR REVOCATION.—The accreditation of a laboratory for purposes of this section may not be revoked unless the revocation is approved by a vote of the Commission.

(d) TRANSITION.—Until such time as the Commission provides for the testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories under this section, the accreditation of laboratories and the procedure for the testing, certification, decertification, and recertification of voting system hardware and software used as of the date of the enactment of this Act shall remain in effect.

# Subtitle C—Studies and Other Activities To Promote Effective Administration of Federal Elections

**SEC. 241. PERIODIC STUDIES OF ELECTION ADMINISTRATION ISSUES.**

(a) IN GENERAL.—On such periodic basis as the Commission may determine, the Commission shall conduct and make available to the public studies regarding the election administration issues described in subsection (b), with the goal of promoting methods of voting and administering elections which—

(1) will be the most convenient, accessible, and easy to use for voters, including members of the uniformed services and overseas voters, individuals with disabilities, including the blind and visually impaired, and voters with limited proficiency in the English language;

(2) will yield the most accurate, secure, and expeditious system for voting and tabulating election results;

(3) will be nondiscriminatory and afford each registered and eligible voter an equal opportunity to vote and to have that vote counted; and

(4) will be efficient and cost-effective for use.

(b) ELECTION ADMINISTRATION ISSUES DESCRIBED.—For purposes of subsection (a), the election administration issues described in this subsection are as follows:

(1) Methods and mechanisms of election technology and voting systems used in voting and counting votes in elections for Federal office, including the over-vote and under-vote notification capabilities of such technology and systems.

(2) Ballot designs for elections for Federal office.

(3) Methods of voter registration, maintaining secure and accurate lists of registered voters (including the establishment of a centralized, interactive, statewide voter registration list linked to relevant agencies and all polling sites), and ensuring that registered voters appear on the voter registration list at the appropriate polling site.

(4) Methods of conducting provisional voting.

(5) Methods of ensuring the accessibility of voting, registration, polling places, and voting equipment to all voters, including individuals with disabilities (including the blind and visually impaired), Native American or Alaska Native citizens, and voters with limited proficiency in the English language.

(6) Nationwide statistics and methods of identifying, deterring, and investigating voting fraud in elections for Federal office.

(7) Identifying, deterring, and investigating methods of voter intimidation.

(8) Methods of recruiting, training, and improving the performance of poll workers.

(9) Methods of educating voters about the process of registering to vote and voting, the operation of voting mechanisms, the location of polling places, and all other aspects of participating in elections.

(10) The feasibility and advisability of conducting elections for Federal office on different days, at different places, and

H. R. 3295—22

during different hours, including the advisability of establishing a uniform poll closing time and establishing—

(A) a legal public holiday under section 6103 of title 5, United States Code, as the date on which general elections for Federal office are held;

(B) the Tuesday next after the 1st Monday in November, in every even numbered year, as a legal public holiday under such section;

(C) a date other than the Tuesday next after the 1st Monday in November, in every even numbered year as the date on which general elections for Federal office are held; and

(D) any date described in subparagraph (C) as a legal public holiday under such section.

(11) Federal and State laws governing the eligibility of persons to vote.

(12) Ways that the Federal Government can best assist State and local authorities to improve the administration of elections for Federal office and what levels of funding would be necessary to provide such assistance.

(13)(A) The laws and procedures used by each State that govern—

(i) recounts of ballots cast in elections for Federal office;

(ii) contests of determinations regarding whether votes are counted in such elections; and

(iii) standards that define what will constitute a vote on each type of voting equipment used in the State to conduct elections for Federal office.

(B) The best practices (as identified by the Commission) that are used by States with respect to the recounts and contests described in clause (i).

(C) Whether or not there is a need for more consistency among State recount and contest procedures used with respect to elections for Federal office.

(14) The technical feasibility of providing voting materials in eight or more languages for voters who speak those languages and who have limited English proficiency.

(15) Matters particularly relevant to voting and administering elections in rural and urban areas.

(16) Methods of voter registration for members of the uniformed services and overseas voters, and methods of ensuring that such voters receive timely ballots that will be properly and expeditiously handled and counted.

(17) The best methods for establishing voting system performance benchmarks, expressed as a percentage of residual vote in the Federal contest at the top of the ballot.

(18) Broadcasting practices that may result in the broadcast of false information concerning the location or time of operation of a polling place.

(19) Such other matters as the Commission determines are appropriate.

(c) REPORTS.—The Commission shall submit to the President and to the Committee on House Administration of the House of Representatives and the Committee on Rules and Administration of the Senate a report on each study conducted under subsection (a) together with such recommendations for administrative and legislative action as the Commission determines is appropriate.

H. R. 3295—23

### SEC. 242. STUDY, REPORT, AND RECOMMENDATIONS ON BEST PRACTICES FOR FACILITATING MILITARY AND OVERSEAS VOTING.

(a) STUDY.—

(1) IN GENERAL.—The Commission, in consultation with the Secretary of Defense, shall conduct a study on the best practices for facilitating voting by absent uniformed services voters (as defined in section 107(1) of the Uniformed and Overseas Citizens Absentee Voting Act) and overseas voters (as defined in section 107(5) of such Act).

(2) ISSUES CONSIDERED.—In conducting the study under paragraph (1) the Commission shall consider the following issues:

(A) The rights of residence of uniformed services voters absent due to military orders.

(B) The rights of absent uniformed services voters and overseas voters to register to vote and cast absentee ballots, including the right of such voters to cast a secret ballot.

(C) The rights of absent uniformed services voters and overseas voters to submit absentee ballot applications early during an election year.

(D) The appropriate preelection deadline for mailing absentee ballots to absent uniformed services voters and overseas voters.

(E) The appropriate minimum period between the mailing of absentee ballots to absent uniformed services voters and overseas voters and the deadline for receipt of such ballots.

(F) The timely transmission of balloting materials to absent uniformed services voters and overseas voters.

(G) Security and privacy concerns in the transmission, receipt, and processing of ballots from absent uniformed services voters and overseas voters, including the need to protect against fraud.

(H) The use of a single application by absent uniformed services voters and overseas voters for absentee ballots for all Federal elections occurring during a year.

(I) The use of a single application for voter registration and absentee ballots by absent uniformed services voters and overseas voters.

(J) The use of facsimile machines and electronic means of transmission of absentee ballot applications and absentee ballots to absent uniformed services voters and overseas voters.

(K) Other issues related to the rights of absent uniformed services voters and overseas voters to participate in elections.

(b) REPORT AND RECOMMENDATIONS.—Not later than the date that is 18 months after the date of the enactment of this Act, the Commission shall submit to the President and Congress a report on the study conducted under subsection (a)(1) together with recommendations identifying the best practices used with respect to the issues considered under subsection (a)(2).

### SEC. 243. REPORT ON HUMAN FACTOR RESEARCH.

Not later than 1 year after the date of the enactment of this Act, the Commission, in consultation with the Director of the

H. R. 3295—24

National Institute of Standards and Technology, shall submit a report to Congress which assesses the areas of human factor research, including usability engineering and human-computer and human-machine interaction, which feasibly could be applied to voting products and systems design to ensure the usability and accuracy of voting products and systems, including methods to improve access for individuals with disabilities (including blindness) and individuals with limited proficiency in the English language and to reduce voter error and the number of spoiled ballots in elections.

### SEC. 244. STUDY AND REPORT ON VOTERS WHO REGISTER BY MAIL AND USE OF SOCIAL SECURITY INFORMATION.

(a) REGISTRATION BY MAIL.—

(1) STUDY.—

(A) IN GENERAL.—The Commission shall conduct a study of the impact of section 303(b) on voters who register by mail.

(B) SPECIFIC ISSUES STUDIED.—The study conducted under subparagraph (A) shall include—

(i) an examination of the impact of section 303(b) on first time mail registrant voters who vote in person, including the impact of such section on voter registration;

(ii) an examination of the impact of such section on the accuracy of voter rolls, including preventing ineligible names from being placed on voter rolls and ensuring that all eligible names are placed on voter rolls; and

(iii) an analysis of the impact of such section on existing State practices, such as the use of signature verification or attestation procedures to verify the identity of voters in elections for Federal office, and an analysis of other changes that may be made to improve the voter registration process, such as verification or additional information on the registration card.

(2) REPORT.—Not later than 18 months after the date on which section 303(b)(2) takes effect, the Commission shall submit a report to the President and Congress on the study conducted under paragraph (1)(A) together with such recommendations for administrative and legislative action as the Commission determines is appropriate.

(b) USE OF SOCIAL SECURITY INFORMATION.—Not later than 18 months after the date on which section 303(a)(5) takes effect, the Commission, in consultation with the Commissioner of Social Security, shall study and report to Congress on the feasibility and advisability of using Social Security identification numbers or other information compiled by the Social Security Administration to establish voter registration or other election law eligibility or identification requirements, including the matching of relevant information specific to an individual voter, the impact of such use on national security issues, and whether adequate safeguards or waiver procedures exist to protect the privacy of an individual voter.

## SEC. 245. STUDY AND REPORT ON ELECTRONIC VOTING AND THE ELECTORAL PROCESS.

(a) STUDY.—

(1) IN GENERAL.—The Commission shall conduct a thorough study of issues and challenges, specifically to include the potential for election fraud, presented by incorporating communications and Internet technologies in the Federal, State, and local electoral process.

(2) ISSUES TO BE STUDIED.—The Commission may include in the study conducted under paragraph (1) an examination of—

(A) the appropriate security measures required and minimum standards for certification of systems or technologies in order to minimize the potential for fraud in voting or in the registration of qualified citizens to register and vote;

(B) the possible methods, such as Internet or other communications technologies, that may be utilized in the electoral process, including the use of those technologies to register voters and enable citizens to vote online, and recommendations concerning statutes and rules to be adopted in order to implement an online or Internet system in the electoral process;

(C) the impact that new communications or Internet technology systems for use in the electoral process could have on voter participation rates, voter education, public accessibility, potential external influences during the elections process, voter privacy and anonymity, and other issues related to the conduct and administration of elections;

(D) whether other aspects of the electoral process, such as public availability of candidate information and citizen communication with candidates, could benefit from the increased use of online or Internet technologies;

(E) the requirements for authorization of collection, storage, and processing of electronically generated and transmitted digital messages to permit any eligible person to register to vote or vote in an election, including applying for and casting an absentee ballot;

(F) the implementation cost of an online or Internet voting or voter registration system and the costs of elections after implementation (including a comparison of total cost savings for the administration of the electoral process by using Internet technologies or systems);

(G) identification of current and foreseeable online and Internet technologies for use in the registration of voters, for voting, or for the purpose of reducing election fraud, currently available or in use by election authorities;

(H) the means by which to ensure and achieve equity of access to online or Internet voting or voter registration systems and address the fairness of such systems to all citizens; and

(I) the impact of technology on the speed, timeliness, and accuracy of vote counts in Federal, State, and local elections.

(b) REPORT.—

(1) SUBMISSION.—Not later than 20 months after the date of the enactment of this Act, the Commission shall transmit to the Committee on House Administration of the House of Representatives and the Committee on Rules and Administration of the Senate a report on the results of the study conducted under subsection (a), including such legislative recommendations or model State laws as are required to address the findings of the Commission.

(2) INTERNET POSTING.—In addition to the dissemination requirements under chapter 19 of title 44, United States Code, the Election Administration Commission shall post the report transmitted under paragraph (1) on an Internet website.

## SEC. 246. STUDY AND REPORT ON FREE ABSENTEE BALLOT POSTAGE.

(a) STUDY ON THE ESTABLISHMENT OF A FREE ABSENTEE BALLOT POSTAGE PROGRAM.—

(1) IN GENERAL.—The Commission, in consultation with the Postal Service, shall conduct a study on the feasibility and advisability of the establishment of a program under which the Postal Service shall waive or otherwise reduce the amount of postage applicable with respect to absentee ballots submitted by voters in general elections for Federal office (other than balloting materials mailed under section 3406 of title 39, United States Code) that does not apply with respect to the postage required to send the absentee ballots to voters.

(2) PUBLIC SURVEY.—As part of the study conducted under paragraph (1), the Commission shall conduct a survey of potential beneficiaries under the program described in such paragraph, including the elderly and disabled, and shall take into account the results of such survey in determining the feasibility and advisability of establishing such a program.

(b) REPORT.—

(1) SUBMISSION.—Not later than the date that is 1 year after the date of the enactment of this Act, the Commission shall submit to Congress a report on the study conducted under subsection (a)(1) together with recommendations for such legislative and administrative action as the Commission determines appropriate.

(2) COSTS.—The report submitted under paragraph (1) shall contain an estimate of the costs of establishing the program described in subsection (a)(1).

(3) IMPLEMENTATION.—The report submitted under paragraph (1) shall contain an analysis of the feasibility of implementing the program described in subsection (a)(1) with respect to the absentee ballots to be submitted in the general election for Federal office held in 2004.

(4) RECOMMENDATIONS REGARDING THE ELDERLY AND DISABLED.—The report submitted under paragraph (1) shall—

(A) include recommendations on ways that program described in subsection (a)(1) would target elderly individuals and individuals with disabilities; and

(B) identify methods to increase the number of such individuals who vote in elections for Federal office.

(c) POSTAL SERVICE DEFINED.—The term "Postal Service" means the United States Postal Service established under section 201 of title 39, United States Code.

SEC. 247. CONSULTATION WITH STANDARDS BOARD AND BOARD OF ADVISORS.

The Commission shall carry out its duties under this subtitle in consultation with the Standards Board and the Board of Advisors.

# Subtitle D—Election Assistance

## PART 1—REQUIREMENTS PAYMENTS

SEC. 251. REQUIREMENTS PAYMENTS.

(a) IN GENERAL.—The Commission shall make a requirements payment each year in an amount determined under section 252 to each State which meets the conditions described in section 253 for the year.

(b) USE OF FUNDS.—

(1) IN GENERAL.—Except as provided in paragraph (2), a State receiving a requirements payment shall use the payment only to meet the requirements of title III.

(2) OTHER ACTIVITIES.—A State may use a requirements payment to carry out other activities to improve the administration of elections for Federal office if the State certifies to the Commission that—

(A) the State has implemented the requirements of title III; or

(B) the amount expended with respect to such other activities does not exceed an amount equal to the minimum payment amount applicable to the State under section 252(c).

(c) RETROACTIVE PAYMENTS.—

(1) IN GENERAL.—Notwithstanding any other provision of this subtitle, including the maintenance of effort requirements of section 254(a)(7), a State may use a requirements payment as a reimbursement for costs incurred in obtaining voting equipment which meets the requirements of section 301 if the State obtains the equipment after the regularly scheduled general election for Federal office held in November 2000.

(2) SPECIAL RULE REGARDING MULTIYEAR CONTRACTS.—A State may use a requirements payment for any costs for voting equipment which meets the requirements of section 301 that, pursuant to a multiyear contract, were incurred on or after January 1, 2001, except that the amount that the State is otherwise required to contribute under the maintenance of effort requirements of section 254(a)(7) shall be increased by the amount of the payment made with respect to such multiyear contract.

(d) ADOPTION OF COMMISSION GUIDELINES AND GUIDANCE NOT REQUIRED TO RECEIVE PAYMENT.—Nothing in this part may be construed to require a State to implement any of the voluntary voting system guidelines or any of the voluntary guidance adopted by the Commission with respect to any matter as a condition for receiving a requirements payment.

(e) SCHEDULE OF PAYMENTS.—As soon as practicable after the initial appointment of all members of the Commission (but in no event later than 6 months thereafter), and not less frequently than once each calendar year thereafter, the Commission shall make requirements payments to States under this part.

(f) LIMITATION.—A State may not use any portion of a requirements payment—

    (1) to pay costs associated with any litigation, except to the extent that such costs otherwise constitute permitted uses of a requirements payment under this part; or

    (2) for the payment of any judgment.

**SEC. 252. ALLOCATION OF FUNDS.**

(a) IN GENERAL.—Subject to subsection (c), the amount of a requirements payment made to a State for a year shall be equal to the product of—

    (1) the total amount appropriated for requirements payments for the year pursuant to the authorization under section 257; and

    (2) the State allocation percentage for the State (as determined under subsection (b)).

(b) STATE ALLOCATION PERCENTAGE DEFINED.—The "State allocation percentage" for a State is the amount (expressed as a percentage) equal to the quotient of—

    (1) the voting age population of the State (as reported in the most recent decennial census); and

    (2) the total voting age population of all States (as reported in the most recent decennial census).

(c) MINIMUM AMOUNT OF PAYMENT.—The amount of a requirements payment made to a State for a year may not be less than—

    (1) in the case of any of the several States or the District of Columbia, one-half of 1 percent of the total amount appropriated for requirements payments for the year under section 257; or

    (2) in the case of the Commonwealth of Puerto Rico, Guam, American Samoa, or the United States Virgin Islands, one-tenth of 1 percent of such total amount.

(d) PRO RATA REDUCTIONS.—The Administrator shall make such pro rata reductions to the allocations determined under subsection (a) as are necessary to comply with the requirements of subsection (c).

(e) CONTINUING AVAILABILITY OF FUNDS AFTER APPROPRIATION.—A requirements payment made to a State under this part shall be available to the State without fiscal year limitation.

**SEC. 253. CONDITION FOR RECEIPT OF FUNDS.**

(a) IN GENERAL.—A State is eligible to receive a requirements payment for a fiscal year if the chief executive officer of the State, or designee, in consultation and coordination with the chief State election official, has filed with the Commission a statement certifying that the State is in compliance with the requirements referred to in subsection (b). A State may meet the requirement of the previous sentence by filing with the Commission a statement which reads as follows: "_____ hereby certifies that it is in compliance with the requirements referred to in section 253(b) of the Help America Vote Act of 2002." (with the blank to be filled in with the name of the State involved).

(b) STATE PLAN REQUIREMENT; CERTIFICATION OF COMPLIANCE WITH APPLICABLE LAWS AND REQUIREMENTS.—The requirements referred to in this subsection are as follows:

    (1) The State has filed with the Commission a State plan covering the fiscal year which the State certifies—

(A) contains each of the elements described in section 254 with respect to the fiscal year;

(B) is developed in accordance with section 255; and

(C) meets the public notice and comment requirements of section 256.

(2) The State has filed with the Commission a plan for the implementation of the uniform, nondiscriminatory administrative complaint procedures required under section 402 (or has included such a plan in the State plan filed under paragraph (1)), and has such procedures in place for purposes of meeting the requirements of such section. If the State does not include such an implementation plan in the State plan filed under paragraph (1), the requirements of sections 255(b) and 256 shall apply to the implementation plan in the same manner as such requirements apply to the State plan.

(3) The State is in compliance with each of the laws described in section 906, as such laws apply with respect to this Act.

(4) To the extent that any portion of the requirements payment is used for activities other than meeting the requirements of title III—

(A) the State's proposed uses of the requirements payment are not inconsistent with the requirements of title III; and

(B) the use of the funds under this paragraph is consistent with the requirements of section 251(b).

(5) The State has appropriated funds for carrying out the activities for which the requirements payment is made in an amount equal to 5 percent of the total amount to be spent for such activities (taking into account the requirements payment and the amount spent by the State) and, in the case of a State that uses a requirements payment as a reimbursement under section 251(c)(2), an additional amount equal to the amount of such reimbursement.

(c) METHODS OF COMPLIANCE LEFT TO DISCRETION OF STATE.—The specific choices on the methods of complying with the elements of a State plan shall be left to the discretion of the State.

(d) TIMING FOR FILING OF CERTIFICATION.—A State may not file a statement of certification under subsection (a) until the expiration of the 45-day period (or, in the case of a fiscal year other than the first fiscal year for which a requirements payment is made to the State under this subtitle, the 30-day period) which begins on the date the State plan under this subtitle is published in the Federal Register pursuant to section 255(b).

(e) CHIEF STATE ELECTION OFFICIAL DEFINED.—In this subtitle, the "chief State election official" of a State is the individual designated by the State under section 10 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–8) to be responsible for coordination of the State's responsibilities under such Act.

## SEC. 254. STATE PLAN.

(a) IN GENERAL.—The State plan shall contain a description of each of the following:

(1) How the State will use the requirements payment to meet the requirements of title III, and, if applicable under section 251(a)(2), to carry out other activities to improve the administration of elections.

H. R. 3295—30

(2) How the State will distribute and monitor the distribution of the requirements payment to units of local government or other entities in the State for carrying out the activities described in paragraph (1), including a description of—

(A) the criteria to be used to determine the eligibility of such units or entities for receiving the payment; and

(B) the methods to be used by the State to monitor the performance of the units or entities to whom the payment is distributed, consistent with the performance goals and measures adopted under paragraph (8).

(3) How the State will provide for programs for voter education, election official education and training, and poll worker training which will assist the State in meeting the requirements of title III.

(4) How the State will adopt voting system guidelines and processes which are consistent with the requirements of section 301.

(5) How the State will establish a fund described in subsection (b) for purposes of administering the State's activities under this part, including information on fund management.

(6) The State's proposed budget for activities under this part, based on the State's best estimates of the costs of such activities and the amount of funds to be made available, including specific information on—

(A) the costs of the activities required to be carried out to meet the requirements of title III;

(B) the portion of the requirements payment which will be used to carry out activities to meet such requirements; and

(C) the portion of the requirements payment which will be used to carry out other activities.

(7) How the State, in using the requirements payment, will maintain the expenditures of the State for activities funded by the payment at a level that is not less than the level of such expenditures maintained by the State for the fiscal year ending prior to November 2000.

(8) How the State will adopt performance goals and measures that will be used by the State to determine its success and the success of units of local government in the State in carrying out the plan, including timetables for meeting each of the elements of the plan, descriptions of the criteria the State will use to measure performance and the process used to develop such criteria, and a description of which official is to be held responsible for ensuring that each performance goal is met.

(9) A description of the uniform, nondiscriminatory State-based administrative complaint procedures in effect under section 402.

(10) If the State received any payment under title I, a description of how such payment will affect the activities proposed to be carried out under the plan, including the amount of funds available for such activities.

(11) How the State will conduct ongoing management of the plan, except that the State may not make any material change in the administration of the plan unless the change—

H. R. 3295—31

(A) is developed and published in the Federal Register in accordance with section 255 in the same manner as the State plan;

(B) is subject to public notice and comment in accordance with section 256 in the same manner as the State plan; and

(C) takes effect only after the expiration of the 30-day period which begins on the date the change is published in the Federal Register in accordance with subparagraph (A).

(12) In the case of a State with a State plan in effect under this subtitle during the previous fiscal year, a description of how the plan reflects changes from the State plan for the previous fiscal year and of how the State succeeded in carrying out the State plan for such previous fiscal year.

(13) A description of the committee which participated in the development of the State plan in accordance with section 255 and the procedures followed by the committee under such section and section 256.

(b) REQUIREMENTS FOR ELECTION FUND.—

(1) ELECTION FUND DESCRIBED.—For purposes of subsection (a)(5), a fund described in this subsection with respect to a State is a fund which is established in the treasury of the State government, which is used in accordance with paragraph (2), and which consists of the following amounts:

(A) Amounts appropriated or otherwise made available by the State for carrying out the activities for which the requirements payment is made to the State under this part.

(B) The requirements payment made to the State under this part.

(C) Such other amounts as may be appropriated under law.

(D) Interest earned on deposits of the fund.

(2) USE OF FUND.—Amounts in the fund shall be used by the State exclusively to carry out the activities for which the requirements payment is made to the State under this part.

(3) TREATMENT OF STATES THAT REQUIRE CHANGES TO STATE LAW.—In the case of a State that requires State legislation to establish the fund described in this subsection, the Commission shall defer disbursement of the requirements payment to such State until such time as legislation establishing the fund is enacted.

(c) PROTECTION AGAINST ACTIONS BASED ON INFORMATION IN PLAN.—

(1) IN GENERAL.—No action may be brought under this Act against a State or other jurisdiction on the basis of any information contained in the State plan filed under this part.

(2) EXCEPTION FOR CRIMINAL ACTS.—Paragraph (1) may not be construed to limit the liability of a State or other jurisdiction for criminal acts or omissions.

H. R. 3295—32

### SEC. 255. PROCESS FOR DEVELOPMENT AND FILING OF PLAN; PUBLICATION BY COMMISSION.

(a) IN GENERAL.—The chief State election official shall develop the State plan under this subtitle through a committee of appropriate individuals, including the chief election officials of the two most populous jurisdictions within the States, other local election officials, stake holders (including representatives of groups of individuals with disabilities), and other citizens, appointed for such purpose by the chief State election official.

(b) PUBLICATION OF PLAN BY COMMISSION.—After receiving the State plan of a State under this subtitle, the Commission shall cause to have the plan published in the Federal Register.

### SEC. 256. REQUIREMENT FOR PUBLIC NOTICE AND COMMENT.

For purposes of section 251(a)(1)(C), a State plan meets the public notice and comment requirements of this section if—

(1) not later than 30 days prior to the submission of the plan, the State made a preliminary version of the plan available for public inspection and comment;

(2) the State publishes notice that the preliminary version of the plan is so available; and

(3) the State took the public comments made regarding the preliminary version of the plan into account in preparing the plan which was filed with the Commission.

### SEC. 257. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—In addition to amounts transferred under section 104(c), there are authorized to be appropriated for requirements payments under this part the following amounts:

(1) For fiscal year 2003, $1,400,000,000.

(2) For fiscal year 2004, $1,000,000,000.

(3) For fiscal year 2005, $600,000,000.

(b) AVAILABILITY.—Any amounts appropriated pursuant to the authority of subsection (a) shall remain available without fiscal year limitation until expended.

### SEC. 258. REPORTS.

Not later than 6 months after the end of each fiscal year for which a State received a requirements payment under this part, the State shall submit a report to the Commission on the activities conducted with the funds provided during the year, and shall include in the report—

(1) a list of expenditures made with respect to each category of activities described in section 251(b);

(2) the number and type of articles of voting equipment obtained with the funds; and

(3) an analysis and description of the activities funded under this part to meet the requirements of this Act and an analysis and description of how such activities conform to the State plan under section 254.

H. R. 3295—33

# PART 2—PAYMENTS TO STATES AND UNITS OF LOCAL GOVERNMENT TO ASSURE ACCESS FOR INDIVIDUALS WITH DISABILITIES

### SEC. 261. PAYMENTS TO STATES AND UNITS OF LOCAL GOVERNMENT TO ASSURE ACCESS FOR INDIVIDUALS WITH DISABILITIES.

(a) IN GENERAL.—The Secretary of Health and Human Services shall make a payment to each eligible State and each eligible unit of local government (as described in section 263).

(b) USE OF FUNDS.—An eligible State and eligible unit of local government shall use the payment received under this part for—

(1) making polling places, including the path of travel, entrances, exits, and voting areas of each polling facility, accessible to individuals with disabilities, including the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters; and

(2) providing individuals with disabilities and the other individuals described in paragraph (1) with information about the accessibility of polling places, including outreach programs to inform the individuals about the availability of accessible polling places and training election officials, poll workers, and election volunteers on how best to promote the access and participation of individuals with disabilities in elections for Federal office.

(c) SCHEDULE OF PAYMENTS.—As soon as practicable after the date of the enactment of this Act (but in no event later than 6 months thereafter), and not less frequently than once each calendar year thereafter, the Secretary shall make payments under this part.

### SEC. 262. AMOUNT OF PAYMENT.

(a) IN GENERAL.—The amount of a payment made to an eligible State or an eligible unit of local government for a year under this part shall be determined by the Secretary.

(b) CONTINUING AVAILABILITY OF FUNDS AFTER APPROPRIATION.—A payment made to an eligible State or eligible unit of local government under this part shall be available without fiscal year limitation.

### SEC. 263. REQUIREMENTS FOR ELIGIBILITY.

(a) APPLICATION.—Each State or unit of local government that desires to receive a payment under this part for a fiscal year shall submit an application for the payment to the Secretary at such time and in such manner and containing such information as the Secretary shall require.

(b) CONTENTS OF APPLICATION.—Each application submitted under subsection (a) shall—

(1) describe the activities for which assistance under this section is sought; and

(2) provide such additional information and certifications as the Secretary determines to be essential to ensure compliance with the requirements of this part.

(c) PROTECTION AGAINST ACTIONS BASED ON INFORMATION IN APPLICATION.—

(1) IN GENERAL.—No action may be brought under this Act against a State or unit of local government on the basis of any information contained in the application submitted under subsection (a).

(2) EXCEPTION FOR CRIMINAL ACTS.—Paragraph (1) may not be construed to limit the liability of a State or unit of local government for criminal acts or omissions.

### SEC. 264. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—There are authorized to be appropriated to carry out the provisions of this part the following amounts:

(1) For fiscal year 2003, $50,000,000.
(2) For fiscal year 2004, $25,000,000.
(3) For fiscal year 2005, $25,000,000.

(b) AVAILABILITY.—Any amounts appropriated pursuant to the authority of subsection (a) shall remain available without fiscal year limitation until expended.

### SEC. 265. REPORTS.

(a) REPORTS BY RECIPIENTS.—Not later than the 6 months after the end of each fiscal year for which an eligible State or eligible unit of local government received a payment under this part, the State or unit shall submit a report to the Secretary on the activities conducted with the funds provided during the year, and shall include in the report a list of expenditures made with respect to each category of activities described in section 261(b).

(b) REPORT BY SECRETARY TO COMMITTEES.—With respect to each fiscal year for which the Secretary makes payments under this part, the Secretary shall submit a report on the activities carried out under this part to the Committee on House Administration of the House of Representatives and the Committee on Rules and Administration of the Senate.

# PART 3—GRANTS FOR RESEARCH ON VOTING TECHNOLOGY IMPROVEMENTS

### SEC. 271. GRANTS FOR RESEARCH ON VOTING TECHNOLOGY IMPROVE-MENTS.

(a) IN GENERAL.—The Commission shall make grants to assist entities in carrying out research and development to improve the quality, reliability, accuracy, accessibility, affordability, and security of voting equipment, election systems, and voting technology.

(b) ELIGIBILITY.—An entity is eligible to receive a grant under this part if it submits to the Commission (at such time and in such form as the Commission may require) an application containing—

(1) certifications that the research and development funded with the grant will take into account the need to make voting equipment fully accessible for individuals with disabilities, including the blind and visually impaired, the need to ensure that such individuals can vote independently and with privacy, and the need to provide alternative language accessibility for individuals with limited proficiency in the English language (consistent with the requirements of the Voting Rights Act of 1965); and

H. R. 3295—35

(2) such other information and certifications as the Commission may require.

(c) APPLICABILITY OF REGULATIONS GOVERNING PATENT RIGHTS IN INVENTIONS MADE WITH FEDERAL ASSISTANCE.—Any invention made by the recipient of a grant under this part using funds provided under this part shall be subject to chapter 18 of title 35, United States Code (relating to patent rights in inventions made with Federal assistance).

(d) RECOMMENDATION OF TOPICS FOR RESEARCH.—

(1) IN GENERAL.—The Director of the National Institute of Standards and Technology (hereafter in this section referred to as the "Director") shall submit to the Commission an annual list of the Director's suggestions for issues which may be the subject of research funded with grants awarded under this part during the year.

(2) REVIEW OF GRANT APPLICATIONS RECEIVED BY COMMISSION.—The Commission shall submit each application it receives for a grant under this part to the Director, who shall review the application and provide the Commission with such comments as the Director considers appropriate.

(3) MONITORING AND ADJUSTMENT OF GRANT ACTIVITIES AT REQUEST OF COMMISSION.—After the Commission has awarded a grant under this part, the Commission may request that the Director monitor the grant, and (to the extent permitted under the terms of the grant as awarded) the Director may recommend to the Commission that the recipient of the grant modify and adjust the activities carried out under the grant.

(4) EVALUATION OF GRANTS AT REQUEST OF COMMISSION.—

(A) IN GENERAL.—In the case of a grant for which the Commission submits the application to the Director under paragraph (2) or requests that the Director monitor the grant under paragraph (3), the Director shall prepare and submit to the Commission an evaluation of the grant and the activities carried out under the grant.

(B) INCLUSION IN REPORTS.—The Commission shall include the evaluations submitted under subparagraph (A) for a year in the report submitted for the year under section 207.

(e) PROVISION OF INFORMATION ON PROJECTS.—The Commission may provide to the Technical Guidelines Development Committee under part 3 of subtitle A such information regarding the activities funded under this part as the Commission deems necessary to assist the Committee in carrying out its duties.

### SEC. 272. REPORT.

(a) IN GENERAL.—Each entity which receives a grant under this part shall submit to the Commission a report describing the activities carried out with the funds provided under the grant.

(b) DEADLINE.—An entity shall submit a report required under subsection (a) not later than 60 days after the end of the fiscal year for which the entity received the grant which is the subject of the report.

### SEC. 273. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—There are authorized to be appropriated for grants under this part $20,000,000 for fiscal year 2003.

H. R. 3295—36

(b) AVAILABILITY OF FUNDS.—Amounts appropriated pursuant to the authorization under this section shall remain available, without fiscal year limitation, until expended.

# PART 4—PILOT PROGRAM FOR TESTING OF EQUIPMENT AND TECHNOLOGY

### SEC. 281. PILOT PROGRAM.

(a) IN GENERAL.—The Commission shall make grants to carry out pilot programs under which new technologies in voting systems and equipment are tested and implemented on a trial basis so that the results of such tests and trials are reported to Congress.

(b) ELIGIBILITY.—An entity is eligible to receive a grant under this part if it submits to the Commission (at such time and in such form as the Commission may require) an application containing—

(1) certifications that the pilot programs funded with the grant will take into account the need to make voting equipment fully accessible for individuals with disabilities, including the blind and visually impaired, the need to ensure that such individuals can vote independently and with privacy, and the need to provide alternative language accessibility for individuals with limited proficiency in the English language (consistent with the requirements of the Voting Rights Act of 1965 and the requirements of this Act); and

(2) such other information and certifications as the Commission may require.

(c) RECOMMENDATION OF TOPICS FOR PILOT PROGRAMS.—

(1) IN GENERAL.—The Director of the National Institute of Standards and Technology (hereafter in this section referred to as the "Director") shall submit to the Commission an annual list of the Director's suggestions for issues which may be the subject of pilot programs funded with grants awarded under this part during the year.

(2) REVIEW OF GRANT APPLICATIONS RECEIVED BY COMMISSION.—The Commission shall submit each application it receives for a grant under this part to the Director, who shall review the application and provide the Commission with such comments as the Director considers appropriate.

(3) MONITORING AND ADJUSTMENT OF GRANT ACTIVITIES AT REQUEST OF COMMISSION.—After the Commission has awarded a grant under this part, the Commission may request that the Director monitor the grant, and (to the extent permitted under the terms of the grant as awarded) the Director may recommend to the Commission that the recipient of the grant modify and adjust the activities carried out under the grant.

(4) EVALUATION OF GRANTS AT REQUEST OF COMMISSION.—

(A) IN GENERAL.—In the case of a grant for which the Commission submits the application to the Director under paragraph (2) or requests that the Director monitor the grant under paragraph (3), the Director shall prepare and submit to the Commission an evaluation of the grant and the activities carried out under the grant.

(B) INCLUSION IN REPORTS.—The Commission shall include the evaluations submitted under subparagraph (A) for a year in the report submitted for the year under section 207.

(d) PROVISION OF INFORMATION ON PROJECTS.—The Commission may provide to the Technical Guidelines Development Committee under part 3 of subtitle A such information regarding the activities funded under this part as the Commission deems necessary to assist the Committee in carrying out its duties.

**SEC. 282. REPORT.**

(a) IN GENERAL.—Each entity which receives a grant under this part shall submit to the Commission a report describing the activities carried out with the funds provided under the grant.

(b) DEADLINE.—An entity shall submit a report required under subsection (a) not later than 60 days after the end of the fiscal year for which the entity received the grant which is the subject of the report.

**SEC. 283. AUTHORIZATION OF APPROPRIATIONS.**

(a) IN GENERAL.—There are authorized to be appropriated for grants under this part $10,000,000 for fiscal year 2003.

(b) AVAILABILITY OF FUNDS.—Amounts appropriated pursuant to the authorization under this section shall remain available, without fiscal year limitation, until expended.

# PART 5—PROTECTION AND ADVOCACY SYSTEMS

**SEC. 291. PAYMENTS FOR PROTECTION AND ADVOCACY SYSTEMS.**

(a) IN GENERAL.—In addition to any other payments made under this subtitle, the Secretary of Health and Human Services shall pay the protection and advocacy system (as defined in section 102 of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (42 U.S.C. 15002)) of each State to ensure full participation in the electoral process for individuals with disabilities, including registering to vote, casting a vote and accessing polling places. In providing such services, protection and advocacy systems shall have the same general authorities as they are afforded under subtitle C of title I of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (42 U.S.C. 15041 et seq.).

(b) MINIMUM GRANT AMOUNT.—The minimum amount of each grant to a protection and advocacy system shall be determined and allocated as set forth in subsections (c)(3), (c)(4), (c)(5), (e), and (g) of section 509 of the Rehabilitation Act of 1973 (29 U.S.C. 794e), except that the amount of the grants to systems referred to in subsections (c)(3)(B) and (c)(4)(B) of that section shall be not less than $70,000 and $35,000, respectively.

(c) TRAINING AND TECHNICAL ASSISTANCE PROGRAM.—

(1) IN GENERAL.—Not later than 90 days after the date on which the initial appropriation of funds for a fiscal year is made pursuant to the authorization under section 292, the Secretary shall set aside 7 percent of the amount appropriated under such section and use such portion to make payments to eligible entities to provide training and technical assistance with respect to the activities carried out under this section.

(2) USE OF FUNDS.—A recipient of a payment under this subsection may use the payment to support training in the use of voting systems and technologies, and to demonstrate and evaluate the use of such systems and technologies, by individuals with disabilities (including blindness) in order to

H. R. 3295—38

assess the availability and use of such systems and technologies for such individuals. At least one of the recipients under this subsection shall use the payment to provide training and technical assistance for nonvisual access.

(3) ELIGIBILITY.—An entity is eligible to receive a payment under this subsection if the entity—

(A) is a public or private nonprofit entity with demonstrated experience in voting issues for individuals with disabilities;

(B) is governed by a board with respect to which the majority of its members are individuals with disabilities or family members of such individuals or individuals who are blind; and

(C) submits to the Secretary an application at such time, in such manner, and containing such information as the Secretary may require.

### SEC. 292. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—In addition to any other amounts authorized to be appropriated under this subtitle, there are authorized to be appropriated $10,000,000 for each of the fiscal years 2003, 2004, 2005, and 2006, and for each subsequent fiscal year such sums as may be necessary, for the purpose of making payments under section 291(a); except that none of the funds provided by this subsection shall be used to initiate or otherwise participate in any litigation related to election-related disability access, notwithstanding the general authorities that the protection and advocacy systems are otherwise afforded under subtitle C of title I of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (42 U.S.C. 15041 et seq.).

(b) AVAILABILITY.—Any amounts appropriated pursuant to the authority of this section shall remain available until expended.

# PART 6—NATIONAL STUDENT AND PARENT MOCK ELECTION

### SEC. 295. NATIONAL STUDENT AND PARENT MOCK ELECTION.

(a) IN GENERAL.—The Election Assistance Commission is authorized to award grants to the National Student and Parent Mock Election, a national nonprofit, nonpartisan organization that works to promote voter participation in American elections to enable it to carry out voter education activities for students and their parents. Such activities may—

(1) include simulated national elections at least 5 days before the actual election that permit participation by students and parents from each of the 50 States in the United States, its territories, the District of Columbia, and United States schools overseas; and

(2) consist of—

(A) school forums and local cable call-in shows on the national issues to be voted upon in an "issues forum";

(B) speeches and debates before students and parents by local candidates or stand-ins for such candidates;

(C) quiz team competitions, mock press conferences, and speech writing competitions;

(D) weekly meetings to follow the course of the campaign; or

(E) school and neighborhood campaigns to increase voter turnout, including newsletters, posters, telephone chains, and transportation.

(b) REQUIREMENT.—The National Student and Parent Mock Election shall present awards to outstanding student and parent mock election projects.

### SEC. 296. AUTHORIZATION OF APPROPRIATIONS.

There are authorized to be appropriated to carry out the provisions of this subtitle $200,000 for fiscal year 2003 and such sums as may be necessary for each of the 6 succeeding fiscal years.

# TITLE III—UNIFORM AND NONDISCRIMINATORY ELECTION TECHNOLOGY AND ADMINISTRATION REQUIREMENTS

## Subtitle A—Requirements

### SEC. 301. VOTING SYSTEMS STANDARDS.

(a) REQUIREMENTS.—Each voting system used in an election for Federal office shall meet the following requirements:

(1) IN GENERAL.—

(A) Except as provided in subparagraph (B), the voting system (including any lever voting system, optical scanning voting system, or direct recording electronic system) shall—

(i) permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted;

(ii) provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error); and

(iii) if the voter selects votes for more than one candidate for a single office—

(I) notify the voter that the voter has selected more than one candidate for a single office on the ballot;

(II) notify the voter before the ballot is cast and counted of the effect of casting multiple votes for the office; and

(III) provide the voter with the opportunity to correct the ballot before the ballot is cast and counted.

(B) A State or jurisdiction that uses a paper ballot voting system, a punch card voting system, or a central count voting system (including mail-in absentee ballots and mail-in ballots), may meet the requirements of subparagraph (A)(iii) by—

H. R. 3295—40

(i) establishing a voter education program specific to that voting system that notifies each voter of the effect of casting multiple votes for an office; and

(ii) providing the voter with instructions on how to correct the ballot before it is cast and counted (including instructions on how to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error).

(C) The voting system shall ensure that any notification required under this paragraph preserves the privacy of the voter and the confidentiality of the ballot.

(2) AUDIT CAPACITY.—

(A) IN GENERAL.—The voting system shall produce a record with an audit capacity for such system.

(B) MANUAL AUDIT CAPACITY.—

(i) The voting system shall produce a permanent paper record with a manual audit capacity for such system.

(ii) The voting system shall provide the voter with an opportunity to change the ballot or correct any error before the permanent paper record is produced.

(iii) The paper record produced under subparagraph (A) shall be available as an official record for any recount conducted with respect to any election in which the system is used.

(3) ACCESSIBILITY FOR INDIVIDUALS WITH DISABILITIES.— The voting system shall—

(A) be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters;

(B) satisfy the requirement of subparagraph (A) through the use of at least one direct recording electronic voting system or other voting system equipped for individuals with disabilities at each polling place; and

(C) if purchased with funds made available under title II on or after January 1, 2007, meet the voting system standards for disability access (as outlined in this paragraph).

(4) ALTERNATIVE LANGUAGE ACCESSIBILITY.—The voting system shall provide alternative language accessibility pursuant to the requirements of section 203 of the Voting Rights Act of 1965 (42 U.S.C. 1973aa–1a).

(5) ERROR RATES.—The error rate of the voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under section 3.2.1 of the voting systems standards issued by the Federal Election Commission which are in effect on the date of the enactment of this Act.

(6) UNIFORM DEFINITION OF WHAT CONSTITUTES A VOTE.— Each State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be

counted as a vote for each category of voting system used in the State.

(b) VOTING SYSTEM DEFINED.—In this section, the term "voting system" means—

(1) the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used—

(A) to define ballots;

(B) to cast and count votes;

(C) to report or display election results; and

(D) to maintain and produce any audit trail information; and

(2) the practices and associated documentation used—

(A) to identify system components and versions of such components;

(B) to test the system during its development and maintenance;

(C) to maintain records of system errors and defects;

(D) to determine specific system changes to be made to a system after the initial qualification of the system; and

(E) to make available any materials to the voter (such as notices, instructions, forms, or paper ballots).

(c) CONSTRUCTION.—

(1) IN GENERAL.—Nothing in this section shall be construed to prohibit a State or jurisdiction which used a particular type of voting system in the elections for Federal office held in November 2000 from using the same type of system after the effective date of this section, so long as the system meets or is modified to meet the requirements of this section.

(2) PROTECTION OF PAPER BALLOT VOTING SYSTEMS.—For purposes of subsection (a)(1)(A)(i), the term "verify" may not be defined in a manner that makes it impossible for a paper ballot voting system to meet the requirements of such subsection or to be modified to meet such requirements.

(d) EFFECTIVE DATE.—Each State and jurisdiction shall be required to comply with the requirements of this section on and after January 1, 2006.

## SEC. 302. PROVISIONAL VOTING AND VOTING INFORMATION REQUIREMENTS.

(a) PROVISIONAL VOTING REQUIREMENTS.—If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:

(1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election.

(2) The individual shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is—

H. R. 3295—42

(A) a registered voter in the jurisdiction in which the individual desires to vote; and

(B) eligible to vote in that election.

(3) An election official at the polling place shall transmit the ballot cast by the individual or the voter information contained in the written affirmation executed by the individual under paragraph (2) to an appropriate State or local election official for prompt verification under paragraph (4).

(4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.

(5)(A) At the time that an individual casts a provisional ballot, the appropriate State or local election official shall give the individual written information that states that any individual who casts a provisional ballot will be able to ascertain under the system established under subparagraph (B) whether the vote was counted, and, if the vote was not counted, the reason that the vote was not counted.

(B) The appropriate State or local election official shall establish a free access system (such as a toll-free telephone number or an Internet website) that any individual who casts a provisional ballot may access to discover whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted. States described in section 4(b) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–2(b)) may meet the requirements of this subsection using voter registration procedures established under applicable State law. The appropriate State or local official shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by the free access system established under paragraph (5)(B). Access to information about an individual provisional ballot shall be restricted to the individual who cast the ballot.

(b) VOTING INFORMATION REQUIREMENTS.—

(1) PUBLIC POSTING ON ELECTION DAY.—The appropriate State or local election official shall cause voting information to be publicly posted at each polling place on the day of each election for Federal office.

(2) VOTING INFORMATION DEFINED.—In this section, the term "voting information" means—

(A) a sample version of the ballot that will be used for that election;

(B) information regarding the date of the election and the hours during which polling places will be open;

(C) instructions on how to vote, including how to cast a vote and how to cast a provisional ballot;

(D) instructions for mail-in registrants and first-time voters under section 303(b);

(E) general information on voting rights under applicable Federal and State laws, including information on the right of an individual to cast a provisional ballot and instructions on how to contact the appropriate officials if these rights are alleged to have been violated; and

(F) general information on Federal and State laws regarding prohibitions on acts of fraud and misrepresentation.

(c) VOTERS WHO VOTE AFTER THE POLLS CLOSE.—Any individual who votes in an election for Federal office as a result of a Federal or State court order or any other order extending the time established for closing the polls by a State law in effect 10 days before the date of that election may only vote in that election by casting a provisional ballot under subsection (a). Any such ballot cast under the preceding sentence shall be separated and held apart from other provisional ballots cast by those not affected by the order.

(d) EFFECTIVE DATE FOR PROVISIONAL VOTING AND VOTING INFORMATION.—Each State and jurisdiction shall be required to comply with the requirements of this section on and after January 1, 2004.

**SEC. 303. COMPUTERIZED STATEWIDE VOTER REGISTRATION LIST REQUIREMENTS AND REQUIREMENTS FOR VOTERS WHO REGISTER BY MAIL.**

(a) COMPUTERIZED STATEWIDE VOTER REGISTRATION LIST REQUIREMENTS.—

(1) IMPLEMENTATION.—

(A) IN GENERAL.—Except as provided in subparagraph (B), each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State (in this subsection referred to as the "computerized list"), and includes the following:

(i) The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State.

(ii) The computerized list contains the name and registration information of every legally registered voter in the State.

(iii) Under the computerized list, a unique identifier is assigned to each legally registered voter in the State.

(iv) The computerized list shall be coordinated with other agency databases within the State.

(v) Any election official in the State, including any local election official, may obtain immediate electronic access to the information contained in the computerized list.

(vi) All voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official.

(vii) The chief State election official shall provide such support as may be required so that local election

H. R. 3295—44

officials are able to enter information as described in clause (vi).

(viii) The computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State.

(B) EXCEPTION.—The requirement under subparagraph (A) shall not apply to a State in which, under a State law in effect continuously on and after the date of the enactment of this Act, there is no voter registration requirement for individuals in the State with respect to elections for Federal office.

(2) COMPUTERIZED LIST MAINTENANCE.—

(A) IN GENERAL.—The appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis as follows:

(i) If an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.), including subsections (a)(4), (c)(2), (d), and (e) of section 8 of such Act (42 U.S.C. 1973gg–6).

(ii) For purposes of removing names of ineligible voters from the official list of eligible voters—

(I) under section 8(a)(3)(B) of such Act (42 U.S.C. 1973gg–6(a)(3)(B)), the State shall coordinate the computerized list with State agency records on felony status; and

(II) by reason of the death of the registrant under section 8(a)(4)(A) of such Act (42 U.S.C. 1973gg–6(a)(4)(A)), the State shall coordinate the computerized list with State agency records on death.

(iii) Notwithstanding the preceding provisions of this subparagraph, if a State is described in section 4(b) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–2(b)), that State shall remove the names of ineligible voters from the computerized list in accordance with State law.

(B) CONDUCT.—The list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that—

(i) the name of each registered voter appears in the computerized list;

(ii) only voters who are not registered or who are not eligible to vote are removed from the computerized list; and

(iii) duplicate names are eliminated from the computerized list.

(3) TECHNOLOGICAL SECURITY OF COMPUTERIZED LIST.—The appropriate State or local official shall provide adequate technological security measures to prevent the unauthorized access to the computerized list established under this section.

(4) MINIMUM STANDARD FOR ACCURACY OF STATE VOTER REGISTRATION RECORDS.—The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including the following:

H. R. 3295—45

(A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.), registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote.

(B) Safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters.

VERIFICATION OF VOTER REGISTRATION INFORMATION.—

(A) REQUIRING PROVISION OF CERTAIN INFORMATION BY APPLICANTS.—

(i) IN GENERAL.—Except as provided in clause (ii), notwithstanding any other provision of law, an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes—

(I) in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or

(II) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last 4 digits of the applicant's social security number.

(ii) SPECIAL RULE FOR APPLICANTS WITHOUT DRIVER'S LICENSE OR SOCIAL SECURITY NUMBER.—If an applicant for voter registration for an election for Federal office has not been issued a current and valid driver's license or a social security number, the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes. To the extent that the State has a computerized list in effect under this subsection and the list assigns unique identifying numbers to registrants, the number assigned under this clause shall be the unique identifying number assigned under the list.

(iii) DETERMINATION OF VALIDITY OF NUMBERS PROVIDED.—The State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.

(B) REQUIREMENTS FOR STATE OFFICIALS.—

(i) SHARING INFORMATION IN DATABASES.—The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration.

(ii) AGREEMENTS WITH COMMISSIONER OF SOCIAL SECURITY.—The official responsible for the State motor vehicle authority shall enter into an agreement with

H. R. 3295—46

the Commissioner of Social Security under section
205(r)(8) of the Social Security Act (as added by
subparagraph (C)).

(C) ACCESS TO FEDERAL INFORMATION.—Section 205(r)
of the Social Security Act (42 U.S.C. 405(r)) is amended
by adding at the end the following new paragraph:

"(8)(A) The Commissioner of Social Security shall, upon the
request of the official responsible for a State driver's license agency
pursuant to the Help America Vote Act of 2002—

"(i) enter into an agreement with such official for the pur-
pose of verifying applicable information, so long as the require-
ments of subparagraphs (A) and (B) of paragraph (3) are met;
and

"(ii) include in such agreement safeguards to assure the
maintenance of the confidentiality of any applicable information
disclosed and procedures to permit such agency to use the
applicable information for the purpose of maintaining its
records.

"(B) Information provided pursuant to an agreement under
this paragraph shall be provided at such time, in such place, and
in such manner as the Commissioner determines appropriate.

"(C) The Commissioner shall develop methods to verify the
accuracy of information provided by the agency with respect to
applications for voter registration, for whom the last 4 digits of
a social security number are provided instead of a driver's license
number.

"(D) For purposes of this paragraph—

"(i) the term 'applicable information' means information
regarding whether—

"(I) the name (including the first name and any family
forename or surname), the date of birth (including the
month, day, and year), and social security number of an
individual provided to the Commissioner match the
information contained in the Commissioner's records, and

"(II) such individual is shown on the records of the
Commissioner as being deceased; and

"(ii) the term 'State driver's license agency' means the
State agency which issues driver's licenses to individuals within
the State and maintains records relating to such licensure.

"(E) Nothing in this paragraph may be construed to require
the provision of applicable information with regard to a request
for a record of an individual if the Commissioner determines there
are exceptional circumstances warranting an exception (such as
safety of the individual or interference with an investigation).

"(F) Applicable information provided by the Commission pursu-
ant to an agreement under this paragraph or by an individual
to any agency that has entered into an agreement under this
paragraph shall be considered as strictly confidential and shall
be used only for the purposes described in this paragraph and
for carrying out an agreement under this paragraph. Any officer
or employee or former officer or employee of a State, or any officer
or employee or former officer or employee of a contractor of a
State who, without the written authority of the Commissioner,
publishes or communicates any applicable information in such
individual's possession by reason of such employment or position
as such an officer, shall be guilty of a felony and upon conviction

H. R. 3295—47

thereof shall be fined or imprisoned, or both, as described in section 208.".

(D) SPECIAL RULE FOR CERTAIN STATES.—In the case of a State which is permitted to use social security numbers, and provides for the use of social security numbers, on applications for voter registration, in accordance with section 7 of the Privacy Act of 1974 (5 U.S.C. 552a note), the provisions of this paragraph shall be optional.

(b) REQUIREMENTS FOR VOTERS WHO REGISTER BY MAIL.—

(1) IN GENERAL.—Notwithstanding section 6(c) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4(c)) and subject to paragraph (3), a State shall, in a uniform and nondiscriminatory manner, require an individual to meet the requirements of paragraph (2) if—

(A) the individual registered to vote in a jurisdiction by mail; and

(B)(i) the individual has not previously voted in an election for Federal office in the State; or

(ii) the individual has not previously voted in such an election in the jurisdiction and the jurisdiction is located in a State that does not have a computerized list that complies with the requirements of subsection (a).

(2) REQUIREMENTS.—

(A) IN GENERAL.—An individual meets the requirements of this paragraph if the individual—

(i) in the case of an individual who votes in person—

(I) presents to the appropriate State or local election official a current and valid photo identification; or

(II) presents to the appropriate State or local election official a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

(ii) in the case of an individual who votes by mail, submits with the ballot—

(I) a copy of a current and valid photo identification; or

(II) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter.

(B) FAIL-SAFE VOTING.—

(i) IN PERSON.—An individual who desires to vote in person, but who does not meet the requirements of subparagraph (A)(i), may cast a provisional ballot under section 302(a).

(ii) BY MAIL.—An individual who desires to vote by mail but who does not meet the requirements of subparagraph (A)(ii) may cast such a ballot by mail and the ballot shall be counted as a provisional ballot in accordance with section 302(a).

(3) INAPPLICABILITY.—Paragraph (1) shall not apply in the case of a person—

H. R. 3295—48

(A) who registers to vote by mail under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4) and submits as part of such registration either—

(i) a copy of a current and valid photo identification; or

(ii) a copy of a current utility bill, bank statement, government check, paycheck, or government document that shows the name and address of the voter;

(B)(i) who registers to vote by mail under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4) and submits with such registration either—

(I) a driver's license number; or

(II) at least the last 4 digits of the individual's social security number; and

(ii) with respect to whom a State or local election official matches the information submitted under clause (i) with an existing State identification record bearing the same number, name and date of birth as provided in such registration; or

(C) who is—

(i) entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff–1 et seq.);

(ii) provided the right to vote otherwise than in person under section 3(b)(2)(B)(ii) of the Voting Accessibility for the Elderly and Handicapped Act (42 U.S.C. 1973ee–1(b)(2)(B)(ii)); or

(iii) entitled to vote otherwise than in person under any other Federal law.

(4) CONTENTS OF MAIL-IN REGISTRATION FORM.—

(A) IN GENERAL.—The mail voter registration form developed under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4) shall include the following:

(i) The question "Are you a citizen of the United States of America?" and boxes for the applicant to check to indicate whether the applicant is or is not a citizen of the United States.

(ii) The question "Will you be 18 years of age on or before election day?" and boxes for the applicant to check to indicate whether or not the applicant will be 18 years of age or older on election day.

(iii) The statement "If you checked 'no' in response to either of these questions, do not complete this form.".

(iv) A statement informing the individual that if the form is submitted by mail and the individual is registering for the first time, the appropriate information required under this section must be submitted with the mail-in registration form in order to avoid the additional identification requirements upon voting for the first time.

(B) INCOMPLETE FORMS.—If an applicant for voter registration fails to answer the question included on the mail voter registration form pursuant to subparagraph (A)(i), the registrar shall notify the applicant of the failure and provide the applicant with an opportunity to complete the form in a timely manner to allow for the completion of

the registration form prior to the next election for Federal office (subject to State law).

(5) CONSTRUCTION.—Nothing in this subsection shall be construed to require a State that was not required to comply with a provision of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.) before the date of the enactment of this Act to comply with such a provision after such date.

(c) PERMITTED USE OF LAST 4 DIGITS OF SOCIAL SECURITY NUMBERS.—The last 4 digits of a social security number described in subsections (a)(5)(A)(i)(II) and (b)(3)(B)(i)(II) shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974 (5 U.S.C. 552a note).

(d) EFFECTIVE DATE.—

(1) COMPUTERIZED STATEWIDE VOTER REGISTRATION LIST REQUIREMENTS.—

(A) IN GENERAL.—Except as provided in subparagraph (B), each State and jurisdiction shall be required to comply with the requirements of subsection (a) on and after January 1, 2004.

(B) WAIVER.—If a State or jurisdiction certifies to the Commission not later than January 1, 2004, that the State or jurisdiction will not meet the deadline described in subparagraph (A) for good cause and includes in the certification the reasons for the failure to meet such deadline, subparagraph (A) shall apply to the State or jurisdiction as if the reference in such subparagraph to "January 1, 2004" were a reference to "January 1, 2006".

(2) REQUIREMENT FOR VOTERS WHO REGISTER BY MAIL.—

(A) IN GENERAL.—Each State and jurisdiction shall be required to comply with the requirements of subsection (b) on and after January 1, 2004, and shall be prepared to receive registration materials submitted by individuals described in subparagraph (B) on and after the date described in such subparagraph.

(B) APPLICABILITY WITH RESPECT TO INDIVIDUALS.—The provisions of subsection (b) shall apply to any individual who registers to vote on or after January 1, 2003.

## SEC. 304. MINIMUM REQUIREMENTS.

The requirements established by this title are minimum requirements and nothing in this title shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this title so long as such State requirements are not inconsistent with the Federal requirements under this title or any law described in section 906.

## SEC. 305. METHODS OF IMPLEMENTATION LEFT TO DISCRETION OF STATE.

The specific choices on the methods of complying with the requirements of this title shall be left to the discretion of the State.

H. R. 3295—50

# Subtitle B—Voluntary Guidance

### SEC. 311. ADOPTION OF VOLUNTARY GUIDANCE BY COMMISSION.

(a) IN GENERAL.—To assist States in meeting the requirements of subtitle A, the Commission shall adopt voluntary guidance consistent with such requirements in accordance with the procedures described in section 312.

(b) DEADLINES.—The Commission shall adopt the recommendations under this section not later than—

(1) in the case of the recommendations with respect to section 301, January 1, 2004;

(2) in the case of the recommendations with respect to section 302, October 1, 2003; and

(3) in the case of the recommendations with respect to section 303, October 1, 2003.

(c) QUADRENNIAL UPDATE.—The Commission shall review and update recommendations adopted with respect to section 301 no less frequently than once every 4 years.

### SEC. 312. PROCESS FOR ADOPTION.

The adoption of the voluntary guidance under this subtitle shall be carried out by the Commission in a manner that provides for each of the following:

(1) Publication of notice of the proposed recommendations in the Federal Register.

(2) An opportunity for public comment on the proposed recommendations.

(3) An opportunity for a public hearing on the record.

(4) Publication of the final recommendations in the Federal Register.

# TITLE IV—ENFORCEMENT

### SEC. 401. ACTIONS BY THE ATTORNEY GENERAL FOR DECLARATORY AND INJUNCTIVE RELIEF.

The Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 301, 302, and 303.

### SEC. 402. ESTABLISHMENT OF STATE-BASED ADMINISTRATIVE COMPLAINT PROCEDURES TO REMEDY GRIEVANCES.

(a) ESTABLISHMENT OF STATE-BASED ADMINISTRATIVE COMPLAINT PROCEDURES TO REMEDY GRIEVANCES.—

(1) ESTABLISHMENT OF PROCEDURES AS CONDITION OF RECEIVING FUNDS.—If a State receives any payment under a program under this Act, the State shall be required to establish and maintain State-based administrative complaint procedures which meet the requirements of paragraph (2).

(2) REQUIREMENTS FOR PROCEDURES.—The requirements of this paragraph are as follows:

(A) The procedures shall be uniform and nondiscriminatory.

(B) Under the procedures, any person who believes that there is a violation of any provision of title III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

(D) The State may consolidate complaints filed under subparagraph (B).

(E) At the request of the complainant, there shall be a hearing on the record.

(F) If, under the procedures, the State determines that there is a violation of any provision of title III, the State shall provide the appropriate remedy.

(G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

(b) REQUIRING ATTORNEY GENERAL APPROVAL OF COMPLIANCE PLAN FOR STATES NOT RECEIVING FUNDS.—

(1) IN GENERAL.—Not later than January 1, 2004, each nonparticipating State shall elect—

(A) to certify to the Commission that the State meets the requirements of subsection (a) in the same manner as a State receiving a payment under this Act; or

(B) to submit a compliance plan to the Attorney General which provides detailed information on the steps the State will take to ensure that it meets the requirements of title III.

(2) STATES WITHOUT APPROVED PLAN DEEMED OUT OF COMPLIANCE.—A nonparticipating State (other than a State which makes the election described in paragraph (1)(A)) shall be deemed to not meet the requirements of title III if the Attorney General has not approved a compliance plan submitted by the State under this subsection.

(3) NONPARTICIPATING STATE DEFINED.—In this section, a "nonparticipating State" is a State which, during 2003, does not notify any office which is responsible for making payments to States under any program under this Act of its intent to participate in, and receive funds under, the program.

H. R. 3295—52

# TITLE V—HELP AMERICA VOTE COLLEGE PROGRAM

### SEC. 501. ESTABLISHMENT OF PROGRAM.

(a) IN GENERAL.—Not later than 1 year after the appointment of its members, the Election Assistance Commission shall develop a program to be known as the "Help America Vote College Program" (hereafter in this title referred to as the "Program").

(b) PURPOSES OF PROGRAM.—The purpose of the Program shall be—

> (1) to encourage students enrolled at institutions of higher education (including community colleges) to assist State and local governments in the administration of elections by serving as nonpartisan poll workers or assistants; and
>
> (2) to encourage State and local governments to use the services of the students participating in the Program.

### SEC. 502. ACTIVITIES UNDER PROGRAM.

(a) IN GENERAL.—In carrying out the Program, the Commission (in consultation with the chief election official of each State) shall develop materials, sponsor seminars and workshops, engage in advertising targeted at students, make grants, and take such other actions as it considers appropriate to meet the purposes described in section 501(b).

(b) REQUIREMENTS FOR GRANT RECIPIENTS.—In making grants under the Program, the Commission shall ensure that the funds provided are spent for projects and activities which are carried out without partisan bias or without promoting any particular point of view regarding any issue, and that each recipient is governed in a balanced manner which does not reflect any partisan bias.

(c) COORDINATION WITH INSTITUTIONS OF HIGHER EDUCATION.— The Commission shall encourage institutions of higher education (including community colleges) to participate in the Program, and shall make all necessary materials and other assistance (including materials and assistance to enable the institution to hold workshops and poll worker training sessions) available without charge to any institution which desires to participate in the Program.

### SEC. 503. AUTHORIZATION OF APPROPRIATIONS.

In addition to any funds authorized to be appropriated to the Commission under section 210, there are authorized to be appropriated to carry out this title—

> (1) $5,000,000 for fiscal year 2003; and
>
> (2) such sums as may be necessary for each succeeding fiscal year.

# TITLE VI—HELP AMERICA VOTE FOUNDATION

### SEC. 601. HELP AMERICA VOTE FOUNDATION.

(a) IN GENERAL.—Part B of subtitle II of title 36, United States Code, is amended by inserting after chapter 1525 the following:

H. R. 3295—53

## "CHAPTER 1526—HELP AMERICA VOTE FOUNDATION

"Sec.
"152601.  Organization.
"152602.  Purposes.
"152603.  Board of directors.
"152604.  Officers and employees.
"152605.  Powers.
"152606.  Principal office.
"152607.  Service of process.
"152608.  Annual audit.
"152609.  Civil action by Attorney General for equitable relief.
"152610.  Immunity of United States Government.
"152611.  Authorization of appropriations.
"152612.  Annual report.

### "§ 152601. Organization

"(a) FEDERAL CHARTER.—The Help America Vote Foundation (in this chapter, the 'foundation') is a federally chartered corporation.

"(b) NATURE OF FOUNDATION.—The foundation is a charitable and nonprofit corporation and is not an agency or establishment of the United States Government.

"(c) PERPETUAL EXISTENCE.—Except as otherwise provided, the foundation has perpetual existence.

### "§ 152602. Purposes

"(a) IN GENERAL.—The purposes of the foundation are to—

"(1) mobilize secondary school students (including students educated in the home) in the United States to participate in the election process in a nonpartisan manner as poll workers or assistants (to the extent permitted under applicable State law);

"(2) place secondary school students (including students educated in the home) as nonpartisan poll workers or assistants to local election officials in precinct polling places across the United States (to the extent permitted under applicable State law); and

"(3) establish cooperative efforts with State and local election officials, local educational agencies, superintendents and principals of public and private secondary schools, and other appropriate nonprofit charitable and educational organizations exempt from taxation under section 501(a) of the Internal Revenue Code of 1986 as an organization described in section 501(c)(3) of such Code to further the purposes of the foundation.

"(b) REQUIRING ACTIVITIES TO BE CARRIED OUT ON NON-PARTISAN BASIS.—The foundation shall carry out its purposes without partisan bias or without promoting any particular point of view regarding any issue, and shall ensure that each participant in its activities is governed in a balanced manner which does not reflect any partisan bias.

"(c) CONSULTATION WITH STATE ELECTION OFFICIALS.—The foundation shall carry out its purposes under this section in consultation with the chief election officials of the States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, and the United States Virgin Islands.

### "§ 152603. Board of directors

"(a) GENERAL.—The board of directors is the governing body of the foundation.

H. R. 3295—54

"(b) MEMBERS AND APPOINTMENT.—(1) The board consists of 12 directors, who shall be appointed not later than 60 days after the date of the enactment of this chapter as follows:

"(A) Four directors (of whom not more than two may be members of the same political party) shall be appointed by the President.

"(B) Two directors shall be appointed by the Speaker of the House of Representatives.

"(C) Two directors shall be appointed by the Minority Leader of the House of Representatives.

"(D) Two directors shall be appointed by the Majority Leader of the Senate.

"(E) Two directors shall be appointed by the Minority Leader of the Senate.

"(2) In addition to the directors described in paragraph (1), the chair and ranking minority member of the Committee on House Administration of the House of Representatives (or their designees) and the chair and ranking minority member of the Committee on Rules and Administration of the Senate (or their designees) shall each serve as an ex officio nonvoting member of the board.

"(3) A director is not an employee of the Federal Government and appointment to the board does not constitute appointment as an officer or employee of the United States Government for the purpose of any law of the United States (except as may otherwise be provided in this chapter).

"(4) The terms of office of the directors are 4 years.

"(5) A vacancy on the board shall be filled in the manner in which the original appointment was made.

"(c) CHAIR.—The directors shall select one of the directors as the chair of the board. The individual selected may not be a current or former holder of any partisan elected office or a current or former officer of any national committee of a political party.

"(d) QUORUM.—The number of directors constituting a quorum of the board shall be established under the bylaws of the foundation.

"(e) MEETINGS.—The board shall meet at the call of the chair of the board for regularly scheduled meetings, except that the board shall meet not less often than annually.

"(f) REIMBURSEMENT OF EXPENSES.—Directors shall serve without compensation but may receive travel expenses, including per diem in lieu of subsistence, in accordance with sections 5702 and 5703 of title 5.

"(g) LIABILITY OF DIRECTORS.—Directors are not personally liable, except for gross negligence.

## "§ 152604. Officers and employees

"(a) APPOINTMENT OF OFFICERS AND EMPLOYEES.—The board of directors appoints, removes, and replaces officers and employees of the foundation.

"(b) STATUS AND COMPENSATION OF EMPLOYEES.—

"(1) IN GENERAL.—Officers and employees of the foundation—

"(A) are not employees of the Federal Government (except as may otherwise be provided in this chapter);

"(B) shall be appointed and removed without regard to the provisions of title 5 governing appointments in the competitive service; and

H. R. 3295—55

"(C) may be paid without regard to chapter 51 and subchapter III of chapter 53 of title 5.

"(2) AVAILABILITY OF FEDERAL EMPLOYEE RATES FOR TRAVEL.—For purposes of any schedules of rates negotiated by the Administrator of General Services for the use of employees of the Federal Government who travel on official business, officers and employees of the foundation who travel while engaged in the performance of their duties under this chapter shall be deemed to be employees of the Federal Government.

## "§ 152605. Powers

"(a) IN GENERAL.—The foundation may—

"(1) adopt a constitution and bylaws;

"(2) adopt a seal which shall be judicially noticed; and

"(3) do any other act necessary to carry out this chapter.

"(b) POWERS AS TRUSTEE.—To carry out its purposes, the foundation has the usual powers of a corporation acting as a trustee in the District of Columbia, including the power—

"(1) to accept, receive, solicit, hold, administer, and use any gift, devise, or bequest, either absolutely or in trust, of property or any income from or other interest in property;

"(2) to acquire property or an interest in property by purchase or exchange;

"(3) unless otherwise required by an instrument of transfer, to sell, donate, lease, invest, or otherwise dispose of any property or income from property;

"(4) to borrow money and issue instruments of indebtedness;

"(5) to make contracts and other arrangements with public agencies and private organizations and persons and to make payments necessary to carry out its functions;

"(6) to sue and be sued; and

"(7) to do any other act necessary and proper to carry out the purposes of the foundation.

"(c) ENCUMBERED OR RESTRICTED GIFTS.—A gift, devise, or bequest may be accepted by the foundation even though it is encumbered, restricted, or subject to beneficial interests of private persons, if any current or future interest is for the benefit of the foundation.

"(d) CONTRACTS.—The foundation may enter into such contracts with public and private entities as it considers appropriate to carry out its purposes.

"(e) ANNUAL CONFERENCE IN WASHINGTON METROPOLITAN AREA.—During each year (beginning with 2003), the foundation may sponsor a conference in the Washington, D.C. metropolitan area to honor secondary school students and other individuals who have served (or plan to serve) as poll workers and assistants and who have otherwise participated in the programs and activities of the foundation.

## "§ 152606. Principal office

"The principal office of the foundation shall be in the District of Columbia unless the board of directors determines otherwise. However, the foundation may conduct business throughout the States, territories, and possessions of the United States.

H. R. 3295—56

**"§ 152607. Service of process**

"The foundation shall have a designated agent to receive service of process for the foundation. Notice to or service on the agent, or mailed to the business address of the agent, is notice to or service on the foundation.

**"§ 152608. Annual audit**

"The foundation shall enter into a contract with an independent auditor to conduct an annual audit of the foundation.

**"§ 152609. Civil action by Attorney General for equitable relief**

"The Attorney General may bring a civil action in the United States District Court for the District of Columbia for appropriate equitable relief if the foundation—

"(1) engages or threatens to engage in any act, practice, or policy that is inconsistent with the purposes in section 152602 of this title; or

"(2) refuses, fails, or neglects to carry out its obligations under this chapter or threatens to do so.

**"§ 152610. Immunity of United States Government**

"The United States Government is not liable for any debts, defaults, acts, or omissions of the foundation. The full faith and credit of the Government does not extend to any obligation of the foundation.

**"§ 152611. Authorization of appropriations**

"There are authorized to be appropriated to the foundation for carrying out the purposes of this chapter—

"(1) $5,000,000 for fiscal year 2003; and

"(2) such sums as may be necessary for each succeeding fiscal year.

**"§ 152612. Annual report**

"As soon as practicable after the end of each fiscal year, the foundation shall submit a report to the Commission, the President, and Congress on the activities of the foundation during the prior fiscal year, including a complete statement of its receipts, expenditures, and investments. Such report shall contain information gathered from participating secondary school students describing the nature of the work they performed in assisting local election officials and the value they derived from the experience of educating participants about the electoral process.".

(b) CLERICAL AMENDMENT.—The table of chapters for part B of subtitle II of title 36, United States Code, is amended by inserting after the item relating to chapter 1525 the following new item:

**"1526. Help America Vote Foundation** .......................................................**152601".**

H. R. 3295—57

# TITLE VII—VOTING RIGHTS OF MILITARY MEMBERS AND OVERSEAS CITIZENS

## SEC. 701. VOTING ASSISTANCE PROGRAMS.

(a) VOTING ASSISTANCE OFFICERS.—Subsection (f) of section 1566 of title 10, United States Code, as added by section 1602(a) of the National Defense Authorization Act for Fiscal Year 2002 (Public Law 107–107; 115 Stat. 1274), is amended—

(1) by striking "Voting assistance" in the first sentence and inserting "(1) Voting assistance"; and

(2) by adding at the end the following new paragraph:

"(2) Under regulations and procedures (including directives) prescribed by the Secretary, a member of the armed forces appointed or assigned to duty as a voting assistance officer shall, to the maximum extent practicable, be given the time and resources needed to perform the member's duties as a voting assistance officer during the period in advance of a general election when members and their dependents are preparing and submitting absentee ballots.".

(b) POSTMARKING OF OVERSEAS VOTING MATERIALS.—Subsection (g)(2) of such section is amended by adding at the end the following: "The Secretary shall, to the maximum extent practicable, implement measures to ensure that a postmark or other official proof of mailing date is provided on each absentee ballot collected at any overseas location or vessel at sea whenever the Department of Defense is responsible for collecting mail for return shipment to the United States. The Secretary shall ensure that the measures implemented under the preceding sentence do not result in the delivery of absentee ballots to the final destination of such ballots after the date on which the election for Federal office is held. Not later than the date that is 6 months after the date of the enactment of the Help America Vote Act of 2002, the Secretary shall submit to Congress a report describing the measures to be implemented to ensure the timely transmittal and postmarking of voting materials and identifying the persons responsible for implementing such measures.".

(c) PROVIDING NOTICE OF DEADLINES AND REQUIREMENTS.—Such section is amended by adding at the end the following new subsection:

"(h) NOTICE OF DEADLINES AND REQUIREMENTS.—The Secretary of each military department, utilizing the voting assistance officer network established for each military installation, shall, to the maximum extent practicable, provide notice to members of the Armed Forces stationed at that installation of the last date before a general Federal election for which absentee ballots mailed from a postal facility located at that installation can reasonably be expected to be timely delivered to the appropriate State and local election officials.".

(d) REGISTRATION AND VOTING INFORMATION FOR MEMBERS AND DEPENDENTS.—Such section is further amended by adding at the end the following new subsection:

"(i) REGISTRATION AND VOTING INFORMATION FOR MEMBERS AND DEPENDENTS.—(1) The Secretary of each military department, using a variety of means including both print and electronic media, shall,

to the maximum extent practicable, ensure that members of the Armed Forces and their dependents who are qualified to vote have ready access to information regarding voter registration requirements and deadlines (including voter registration), absentee ballot application requirements and deadlines, and the availability of voting assistance officers to assist members and dependents to understand and comply with these requirements.

"(2) The Secretary of each military department shall make the national voter registration form prepared for purposes of the Uniformed and Overseas Citizens Absentee Voting Act by the Federal Election Commission available so that each person who enlists shall receive such form at the time of the enlistment, or as soon thereafter as practicable.

"(3) Where practicable, a special day or days shall be designated at each military installation for the purpose of informing members of the Armed Forces and their dependents of election timing, registration requirements, and voting procedures.".

## SEC. 702. DESIGNATION OF SINGLE STATE OFFICE TO PROVIDE INFORMATION ON REGISTRATION AND ABSENTEE BALLOTS FOR ALL VOTERS IN STATE.

Section 102 of the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff–1) is amended—

(1) by inserting "(a) IN GENERAL.—" before "Each State"; and

(2) by adding at the end the following new subsection:

"(b) DESIGNATION OF SINGLE STATE OFFICE TO PROVIDE INFORMATION ON REGISTRATION AND ABSENTEE BALLOT PROCEDURES FOR ALL VOTERS IN STATE.—

"(1) IN GENERAL.—Each State shall designate a single office which shall be responsible for providing information regarding voter registration procedures and absentee ballot procedures to be used by absent uniformed services voters and overseas voters with respect to elections for Federal office (including procedures relating to the use of the Federal write-in absentee ballot) to all absent uniformed services voters and overseas voters who wish to register to vote or vote in any jurisdiction in the State.

"(2) RECOMMENDATION REGARDING USE OF OFFICE TO ACCEPT AND PROCESS MATERIALS.—Congress recommends that the State office designated under paragraph (1) be responsible for carrying out the State's duties under this Act, including accepting valid voter registration applications, absentee ballot applications, and absentee ballots (including Federal write-in absentee ballots) from all absent uniformed services voters and overseas voters who wish to register to vote or vote in any jurisdiction in the State.".

## SEC. 703. REPORT ON ABSENTEE BALLOTS TRANSMITTED AND RECEIVED AFTER GENERAL ELECTIONS.

(a) IN GENERAL.—Section 102 of the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff–1), as amended by section 702, is amended by adding at the end the following new subsection:

"(c) REPORT ON NUMBER OF ABSENTEE BALLOTS TRANSMITTED AND RECEIVED.—Not later than 90 days after the date of each regularly scheduled general election for Federal office, each State and unit of local government which administered the election shall

H. R. 3295—59

(through the State, in the case of a unit of local government) submit a report to the Election Assistance Commission (established under the Help America Vote Act of 2002) on the combined number of absentee ballots transmitted to absent uniformed services voters and overseas voters for the election and the combined number of such ballots which were returned by such voters and cast in the election, and shall make such report available to the general public.".

(b) DEVELOPMENT OF STANDARDIZED FORMAT FOR REPORTS.— The Election Assistance Commission, working with the Election Assistance Commission Board of Advisors and the Election Assistance Commission Standards Board, shall develop a standardized format for the reports submitted by States and units of local government under section 102(c) of the Uniformed and Overseas Citizens Absentee Voting Act (as added by subsection (a)), and shall make the format available to the States and units of local government submitting such reports.

**SEC. 704. EXTENSION OF PERIOD COVERED BY SINGLE ABSENTEE BALLOT APPLICATION.**

Section 104(a) of the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff–1), as amended by section 1606(b) of the National Defense Authorization Act for Fiscal Year 2002 (Public Law 107–107; 115 Stat. 1279), is amended by striking "during that year," and all that follows and inserting the following: "through the next 2 regularly scheduled general elections for Federal office (including any runoff elections which may occur as a result of the outcome of such general elections), the State shall provide an absentee ballot to the voter for each such subsequent election.".

**SEC. 705. ADDITIONAL DUTIES OF PRESIDENTIAL DESIGNEE UNDER UNIFORMED AND OVERSEAS CITIZENS ABSENTEE VOTING ACT.**

(a) EDUCATING ELECTION OFFICIALS ON RESPONSIBILITIES UNDER ACT.—Section 101(b)(1) of the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff(b)(1)) is amended by striking the semicolon at the end and inserting the following: ", and ensure that such officials are aware of the requirements of this Act;".

(b) DEVELOPMENT OF STANDARD OATH FOR USE WITH MATERIALS.—

(1) IN GENERAL.—Section 101(b) of such Act (42 U.S.C. 1973ff(b)) is amended—

(A) by striking "and" at the end of paragraph (5);

(B) by striking the period at the end of paragraph (6) and inserting "; and"; and

(C) by adding at the end the following new paragraph:

"(7) prescribe a standard oath for use with any document under this title affirming that a material misstatement of fact in the completion of such a document may constitute grounds for a conviction for perjury.".

(2) REQUIRING STATES TO USE STANDARD OATH.—Section 102(a) of such Act (42 U.S.C. 1973ff–1(b)), as amended by section 702, is amended—

(A) by striking "and" at the end of paragraph (3);

(B) by striking the period at the end of paragraph (4) and inserting "; and"; and

H. R. 3295—60

(C) by adding at the end the following new paragraph:

"(5) if the State requires an oath or affirmation to accompany any document under this title, use the standard oath prescribed by the Presidential designee under section 101(b)(7).".

(c) PROVIDING STATISTICAL ANALYSIS OF VOTER PARTICIPATION FOR BOTH OVERSEAS VOTERS AND ABSENT UNIFORMED SERVICES VOTERS.—Section 101(b)(6) of such Act (42 U.S.C. 1973ff(b)(6)) is amended by striking "a general assessment" and inserting "a separate statistical analysis".

### SEC. 706. PROHIBITION OF REFUSAL OF VOTER REGISTRATION AND ABSENTEE BALLOT APPLICATIONS ON GROUNDS OF EARLY SUBMISSION.

(a) IN GENERAL.—Section 104 of the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff–3), as amended by section 1606(b) of the National Defense Authorization Act for Fiscal Year 2002 (Public Law 107–107; 115 Stat. 1279), is amended by adding at the end the following new subsection:

"(e) PROHIBITION OF REFUSAL OF APPLICATIONS ON GROUNDS OF EARLY SUBMISSION.—A State may not refuse to accept or process, with respect to any election for Federal office, any otherwise valid voter registration application or absentee ballot application (including the postcard form prescribed under section 101) submitted by an absent uniformed services voter during a year on the grounds that the voter submitted the application before the first date on which the State otherwise accepts or processes such applications for that year submitted by absentee voters who are not members of the uniformed services.".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply with respect to elections for Federal office that occur after January 1, 2004.

### SEC. 707. OTHER REQUIREMENTS TO PROMOTE PARTICIPATION OF OVERSEAS AND ABSENT UNIFORMED SERVICES VOTERS.

Section 102 of the Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff–1), as amended by the preceding provisions of this title, is amended by adding at the end the following new subsection:

"(d) REGISTRATION NOTIFICATION.—With respect to each absent uniformed services voter and each overseas voter who submits a voter registration application or an absentee ballot request, if the State rejects the application or request, the State shall provide the voter with the reasons for the rejection.".

# TITLE VIII—TRANSITION PROVISIONS

## Subtitle A—Transfer to Commission of Functions Under Certain Laws

### SEC. 801. FEDERAL ELECTION CAMPAIGN ACT OF 1971.

(a) TRANSFER OF FUNCTIONS OF OFFICE OF ELECTION ADMINISTRATION OF FEDERAL ELECTION COMMISSION.—There are transferred to the Election Assistance Commission established under section 201 all functions which the Office of Election Administration,

established within the Federal Election Commission, exercised before the date of the enactment of this Act.

(b) CONFORMING AMENDMENT.—Section 311(a) of the Federal Election Campaign Act of 1971 (2 U.S.C. 438(a)) is amended—

(1) in paragraph (8), by inserting "and" at the end;

(2) in paragraph (9), by striking "; and" and inserting a period; and

(3) by striking paragraph (10) and the second and third sentences.

### SEC. 802. NATIONAL VOTER REGISTRATION ACT OF 1993.

(a) TRANSFER OF FUNCTIONS.—There are transferred to the Election Assistance Commission established under section 201 all functions which the Federal Election Commission exercised under section 9(a) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–7(a)) before the date of the enactment of this Act.

(b) CONFORMING AMENDMENT.—Section 9(a) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–7(a)) is amended by striking "Federal Election Commission" and inserting "Election Assistance Commission".

### SEC. 803. TRANSFER OF PROPERTY, RECORDS, AND PERSONNEL.

(a) PROPERTY AND RECORDS.—The contracts, liabilities, records, property, and other assets and interests of, or made available in connection with, the offices and functions of the Federal Election Commission which are transferred by this subtitle are transferred to the Election Assistance Commission for appropriate allocation.

(b) PERSONNEL.—

(1) IN GENERAL.—The personnel employed in connection with the offices and functions of the Federal Election Commission which are transferred by this subtitle are transferred to the Election Assistance Commission.

(2) EFFECT.—Any full-time or part-time personnel employed in permanent positions shall not be separated or reduced in grade or compensation because of the transfer under this subsection during the 1-year period beginning on the date of the enactment of this Act.

### SEC. 804. EFFECTIVE DATE; TRANSITION.

(a) EFFECTIVE DATE.—This title and the amendments made by this title shall take effect upon the appointment of all members of the Election Assistance Commission under section 203.

(b) TRANSITION.—With the consent of the entity involved, the Election Assistance Commission is authorized to utilize the services of such officers, employees, and other personnel of the entities from which functions have been transferred to the Election Assistance Commission under this title or the amendments made by this title for such period of time as may reasonably be needed to facilitate the orderly transfer of such functions.

(c) NO EFFECT ON AUTHORITIES OF OFFICE OF ELECTION ADMINISTRATION PRIOR TO APPOINTMENT OF MEMBERS OF COMMISSION.—During the period which begins on the date of the enactment of this Act and ends on the effective date described in subsection (a), the Office of Election Administration of the Federal Election Commission shall continue to have the authority to carry out any of the functions (including the development of voluntary standards for voting systems and procedures for the certification of voting

H. R. 3295—62

systems) which it has the authority to carry out as of the date of the enactment of this Act.

# Subtitle B—Coverage of Commission Under Certain Laws and Programs

### SEC. 811. TREATMENT OF COMMISSION PERSONNEL UNDER CERTAIN CIVIL SERVICE LAWS.

(a) COVERAGE UNDER HATCH ACT.—Section 7323(b)(2)(B)(i)(I) of title 5, United States Code, is amended by inserting "or the Election Assistance Commission" after "Commission".

(b) EXCLUSION FROM SENIOR EXECUTIVE SERVICE.—Section 3132(a)(1)(C) of title 5, United States Code, is amended by inserting "or the Election Assistance Commission" after "Commission".

### SEC. 812. COVERAGE UNDER INSPECTOR GENERAL ACT OF 1978.

(a) IN GENERAL.—Section 8G(a)(2) of the Inspector General Act of 1978 (5 U.S.C. App.) is amended by inserting "the Election Assistance Commission," after "Federal Election Commission,".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect 180 days after the appointment of all members of the Election Assistance Commission under section 203.

# TITLE IX—MISCELLANEOUS PROVISIONS

### SEC. 901. STATE DEFINED.

In this Act, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, and the United States Virgin Islands.

### SEC. 902. AUDITS AND REPAYMENT OF FUNDS.

(a) RECORDKEEPING REQUIREMENT.—Each recipient of a grant or other payment made under this Act shall keep such records with respect to the payment as are consistent with sound accounting principles, including records which fully disclose the amount and disposition by such recipient of funds, the total cost of the project or undertaking for which such funds are used, and the amount of that portion of the cost of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit.

(b) AUDITS AND EXAMINATIONS.—

(1) AUDITS AND EXAMINATIONS.—Except as provided in paragraph (5), each office making a grant or other payment under this Act, or any duly authorized representative of such office, may audit or examine any recipient of the grant or payment and shall have access for the purpose of audit and examination to any books, documents, papers, and records of the recipient which in the opinion of the entity may be related or pertinent to the grant or payment.

(2) RECIPIENTS OF ASSISTANCE SUBJECT TO PROVISIONS OF SECTION.—The provisions of this section shall apply to all recipients of grants or other payments under this Act, whether by direct grant, cooperative agreement, or contract under this

H. R. 3295—63

Act or by subgrant or subcontract from primary grantees or contractors under this Act.

(3) MANDATORY AUDIT.—In addition to audits conducted pursuant to paragraph (1), all funds provided under this Act shall be subject to mandatory audit by the Comptroller General at least once during the lifetime of the program involved. For purposes of an audit under this paragraph, the Comptroller General shall have access to books, documents, papers, and records of recipients of funds in the same manner as the office making the grant or payment involved has access to such books, documents, papers, and records under paragraph (1).

(4) SPECIAL RULE FOR PAYMENTS BY GENERAL SERVICES ADMINISTRATION.—With respect to any grant or payment made under this Act by the Administrator of General Services, the Election Assistance Commission shall be deemed to be the office making the grant or payment for purposes of this section.

(5) SPECIAL RULE.—In the case of grants or payments made under section 251, audits and examinations conducted under paragraph (1) shall be performed on a regular basis (as determined by the Commission).

(6) SPECIAL RULES FOR AUDITS BY THE COMMISSION.—In addition to the audits described in paragraph (1), the Election Assistance Commission may conduct a special audit or special examination of a recipient described in paragraph (1) upon a vote of the Commission.

(c) RECOUPMENT OF FUNDS.—If the Comptroller General determines as a result of an audit conducted under subsection (b) that—

(1) a recipient of funds under this Act is not in compliance with each of the requirements of the program under which the funds are provided; or

(2) an excess payment has been made to the recipient under the program,

the recipient shall pay to the office which made the grant or payment involved a portion of the funds provided which reflects the proportion of the requirements with which the recipient is not in compliance, or the extent to which the payment is in excess, under the program involved.

## SEC. 903. CLARIFICATION OF ABILITY OF ELECTION OFFICIALS TO REMOVE REGISTRANTS FROM OFFICIAL LIST OF VOTERS ON GROUNDS OF CHANGE OF RESIDENCE.

Section 8(b)(2) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–6(b)(2)) is amended by striking the period at the end and inserting the following: ", except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual—

"(A) has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then

"(B) has not voted or appeared to vote in 2 or more consecutive general elections for Federal office.".

### SEC. 904. REVIEW AND REPORT ON ADEQUACY OF EXISTING ELEC-TORAL FRAUD STATUTES AND PENALTIES.

(a) REVIEW.—The Attorney General shall conduct a review of existing criminal statutes concerning election offenses to determine—

(1) whether additional statutory offenses are needed to secure the use of the Internet for election purposes; and

(2) whether existing penalties provide adequate punishment and deterrence with respect to such offenses.

(b) REPORT.—The Attorney General shall submit a report to the Committees on the Judiciary of the Senate and House of Representatives, the Committee on Rules and Administration of the Senate, and the Committee on House Administration of the House of Representatives on the review conducted under subsection (a) together with such recommendations for legislative and administrative action as the Attorney General determines appropriate.

### SEC. 905. OTHER CRIMINAL PENALTIES.

(a) CONSPIRACY TO DEPRIVE VOTERS OF A FAIR ELECTION.—Any individual who knowingly and willfully gives false information in registering or voting in violation of section 11(c) of the National Voting Rights Act of 1965 (42 U.S.C. 1973i(c)), or conspires with another to violate such section, shall be fined or imprisoned, or both, in accordance with such section.

(b) FALSE INFORMATION IN REGISTERING AND VOTING.—Any individual who knowingly commits fraud or knowingly makes a false statement with respect to the naturalization, citizenry, or alien registry of such individual in violation of section 1015 of title 18, United States Code, shall be fined or imprisoned, or both, in accordance with such section.

### SEC. 906. NO EFFECT ON OTHER LAWS.

(a) IN GENERAL.—Except as specifically provided in section 303(b) of this Act with regard to the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.), nothing in this Act may be construed to authorize or require conduct prohibited under any of the following laws, or to supersede, restrict, or limit the application of such laws:

(1) The Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.).

(2) The Voting Accessibility for the Elderly and Handicapped Act (42 U.S.C. 1973ee et seq.).

(3) The Uniformed and Overseas Citizens Absentee Voting Act (42 U.S.C. 1973ff et seq.).

(4) The National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.).

(5) The Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.).

(6) The Rehabilitation Act of 1973 (29 U.S.C. 701 et seq.).

H. R. 3295—65

(b) No Effect on Preclearance or Other Requirements Under Voting Rights Act.—The approval by the Administrator or the Commission of a payment or grant application under title I or title II, or any other action taken by the Commission or a State under such title, shall not be considered to have any effect on requirements for preclearance under section 5 of the Voting Rights Act of 1965 (42 U.S.C. 1973c) or any other requirements of such Act.

*Speaker of the House of Representatives.*

*Vice President of the United States and*
*President of the Senate.*