IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| LATINOS FOR TRUMP, BLACKS FOR TRUMP, JOSHUA MACIAS, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>PETE SESSIONS, MITCH MCCONNELL, NANCY PELOSI, MARK ZUCKERBERG, CHUCK SCHUMER, ALEXANDRIA OCASIO CORTEZ, BRAD RAFFENSPERGER, ALL MEMBERS OF THE 117TH U.S. CONGRESS, ALL SECRETARIES OF STATE, ALL STATE GOVERNORS, ET AL.<br><br>Defendants. | Civil Action No.:<br>6:21-cv-43-ADA-JCM |

**MOTION TO DISMISS AND BRIEF IN SUPPORT OF
DEFENDANTS BRIAN KEMP AND BRAD RAFFENSPERGER**

Brian Kemp (the "Georgia Governor") and Brad Raffensperger (the "Georgia Secretary") (collectively the "Georgia Defendants"), move for dismissal of Plaintiffs' Second Amended Complaint, (Doc. 14), pursuant to the Eleventh Amendment of the United States Constitution, Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, Rule 12(b)(2), lack of personal jurisdiction, and Rule 12(b)(5), insufficient service of process, for the reasons shown in the following brief in support.

# **INTRODUCTION**

This case is another futile attempt in a long line of baseless lawsuits to overturn the 2020 Presidential Election based on unsubstantiated evidence, conspiracy theories, and now, an article from Time Magazine that Plaintiffs say states their claims for them.[1] This case is perhaps one of the most frivolous yet, because Plaintiffs not only regurgitate the same debunked myths, conspiracy theories, and outright lies regarding the election that have been repeatedly rejected by courts, they filed their lawsuit in a court that has no jurisdiction over the Governor and Secretary of State of Georgia. There is no reason for this Court to seriously entertain Plaintiffs' claims and re-litigate the integrity and accuracy of

---

[1] Numerous litigants, including former President Donald J. Trump, filed state election contests seeking to re-do the 2020 Presidential Election, in addition to federal lawsuits seeking to stop or undo certification of the general election results. In all of these cases, injunctive relief was denied and/or the case was dismissed. *See, e.g., Trump v. Kemp*, No. 1:20-cv-05310-MHC, 2021 U.S. Dist. LEXIS 4185 (N.D. Ga. Jan. 5, 2021) (motion for injunction denied); *Trump v. Raffensperger*, No. 2020cv343255 (Fulton Superior Court) (election contest voluntarily dismissed by plaintiff on the day before trial); *Texas. v. Pennsylvania*, No. 155 (Orig.) 2020 WL 7296814 (U.S. Dec. 11, 2020) (denying petition to file original action challenging Georgia's general election results); *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) (affirming denial of motion to enjoin certification of general election results); *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga.) (dismissed); *Wisconsin Voters Alliance, et al. v. Pence*, No. 20-3791, 2021 U.S. Dist. LEXIS 127 (D.D.C. Jan. 4, 2021) (*sua sponte* dismissal of a challenge to Georgia's general election results, in which the district court referred plaintiffs' counsel to the court's grievance commission for discipline for filing a frivolous action); *Wood v. Raffensperger*, No. 2020cv342959 (Fulton County Superior Court) (dismissed); *Della Polla v. Raffensperger*, No. 20-1-7490-46 (Cobb County Superior Court) (dismissed); *Boland v. Raffensperger*, No. 2020cv34018 (Fulton County Superior Court) (dismissed); *O'Rourke et al. v. Dominion Voting Systems Inc., et al*, No. 1:20-cv-3747-NRN, U.S. Dist. Lexis, 81135 (D. Col. Apr 28, 2021) (dismissed).

Georgia's election results, which have been upheld over and over again under enormous scrutiny. Instead, it should be quickly dismissed.

As a threshold issue, the Plaintiffs have failed to timely serve the Georgia Defendants, as 90 days has passed since the filing of Plaintiff's Second Amended Complaint, and still, the Georgia Defendants have yet to be served. Additionally, this Court lacks jurisdiction to consider Plaintiffs' claims against the Georgia Defendants. Specifically, this Court lacks personal jurisdiction over the Georgia Defendants, as it would violate due process and "offend 'traditional notions of fair play and substantial justice" for this Court to exercise personal jurisdiction over the Governor and Secretary of State of Georgia for actions they took in their capacity as elected officials of another state. Plaintiffs' claims against the Georgia Defendants in their official capacities are also barred by Eleventh Amendment. Plaintiffs also lack Article III standing. Plaintiffs have alleged no set of facts that establishes, nor could they, that the Georgia Defendants caused an injury in fact, that any injury is traceable to the Georgia Defendants, and that this Court can redress any perceived injury caused by the Georgia Defendants. Accordingly, Plaintiffs' claims against the Georgia Defendants must be dismissed.

## FACTUAL BACKGROUND

The named Plaintiffs, none of which reside in Georgia or voted in the 2020 Presidential Election in Georgia, rely on an article from Time Magazine to support their claims that the 2020 Presidential Election was rigged by one big conspiracy involving every state in the Union, the United States Congress, and private

individuals to prevent Donald Trump from being reelected.  (*See* Doc. 14 ¶¶ 8-25; *see also id*. at ¶ 10 (stating "Plaintiffs could likely state their entire claims upon which relief could be granted by merely cutting and pasting only the [Time article] in its entirety into the factual allegations section[.]"); Exhibit 1 to Second Amended Complaint).  As a result, Plaintiffs say, in a nutshell, that the Defendants, including the Georgia Defendants in their official capacities, conspired to violate state and federal laws and the constitution so as to unconstitutionally deprive them—along with every single United States citizen—of the right to vote, dilute their vote, and deprive them a republican form of government.  (*See* Doc. 14 ¶¶ 86-87, 99-100, 128-176). Interestingly though, as it pertains to the Georgia Defendants, Plaintiffs' complaint does not even mention how the the Georgia Defendants engaged in this alleged conspiracy to rig the 2020 Presidential Election,[2] and neither does the Time article they rely on.  (*See generally* Doc. 14).  In fact, the Time article appears to only be an article detailing the exercise of a group of private persons' First

---

[2] Plaintiffs Second Amended Complaint can be described as a textbook shotgun pleading.  This is because Plaintiffs allege that all of the Defendants engaged in this wide ranging conspiracy to rig the 2020 Presidential election, but they speak in general terms when it comes to the State Defendants—including every state governor and secretary of state—without attributing specific allegations to them, "though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  Such pleading practices are frowned upon, as they make it impossible for the Defendants to respond to them.  *See Lakeway Reg' Med. Ctr., LLC*, No. A-19-CV-00945-JRN, 2020 U.S. Dist. LEXIS 197656, at *4 (W.D. Tex. Feb. 13, 2020).

Amendment rights without ever mentioning if, or how, the Georgia Defendants were involved in those efforts. (*See* Exhibit 1 to Doc. 14).

Moreover, not only does the Plaintiffs' Second Amended Complaint and the Time article they rely on fail to explain how the Georgia Defendants engaged in a conspiracy to rig the 2020 Presidential Election, they do not even mention whether any of the Georgia Defendants' actions—which they do not specify—were purposefully directed at Plaintiffs or residents of Texas, that this litigation results from alleged injuries that arise out of or relate to those actions, or that the Georgia Defendants have general business contacts with Texas so as to provide this Court with personal jurisdiction over the Georgia Defendants. Also absent from Plaintiffs' Second Amended Complaint are any facts supporting their standing to sue the Georgia Defendants. Specifically, the Plaintiffs have not alleged that the Georgia Defendants injured any of the Plaintiffs in an individual particular way, and that any perceived injury is both traceable to the Georgia Defendants and redressable by this Court.

## ARGUMENT AND CITATION OF AUTHORITIES

**I.    Plaintiffs Failed to Serve the Georgia Defendants and Their Complaint Should Be Dismissed Pursuant to Rule 12(b)(5).**

Plaintiffs filed their amended complaint on February 16, 2021. As of the filing of this motion to dismiss—which is more than 90 days after Plaintiffs filed their Second Amended Complaint—Plaintiffs have yet to effectuate service on the Georgia Defendants. Accordingly, the Plaintiffs' claims against the Georgia

Defendants warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5). Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must dismiss the action without prejudice against that defendant or order that service be made within a specified time*. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added).[3] The Fifth Circuit has explained that "[w]hen service of process is challenged, the serving party bears the burden of proving good cause for failure to effect timely service[,]" which "requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (quotation marks omitted). Furthermore, "showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required." *Id.* (quotation marks omitted).

Here, Plaintiffs have completely failed to serve the Georgia Defendants within 90 days of filing their Second Amended Complaint. For that reason alone, their complaint should be dismissed. Fed. R. Civ. P. 4(m).

---

[3] Although it does not appear that the Fifth Circuit has yet to address the issue, the Eleventh Circuit has described service of process as "a jurisdictional requirement," and that "a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).

## II.     This Court Lacks Personal Jurisdiction Over the Georgia Defendants

This Court lacks personal jurisdiction over the Georgia Defendants, as haling the Georgia Defendants into Texas courts for official actions taken in Georgia to run a Georgia Election would offend traditional notions of fair play and substantial justice. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quotations omitted). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Id*. (quoting Fed. Rule Civ. Proc. 4(k)(1)(A)). This is only part of the inquiry, however. Due process also "constrains a State's authority to bind a nonresident defendant to a judgment of its courts," and thus, a federal court's exercise of personal jurisdiction through a state's long arm statue must also "comport with the limits imposed by federal due process." *Id*.

Due process requires a nonresident to have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry "focuses on the relationship among 'the defendant, the forum, and the litigation.'" *Id*. at 284 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Thus, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*.  Furthermore, "[d]ue process requires that a defendant be

7

haled into court in a forum State based on his own affiliation with the State, *not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.*" *Id.* at 286 (quotation omitted) (emphasis added).

The "minimum contacts standard can be met through either specific or general jurisdiction." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). With regard to specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., SF.*, 137 S. Ct. 1773 1780 (2017) (alternations omitted) (internal quotation marks and citation omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* Such activity or occurrence must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Absent this connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781. Consistent with these principles, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (internal quotation marks and citation omitted). General jurisdiction, on the other hand, exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).

8

According to the Fifth Circuit, Texas's long-arm statute "has been interpreted to extend to the limits of due process," which obviates the need for a long-arm statutory analysis separate from the due process inquiry required by *International Shoe Co* and its progeny. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

The Georgia Defendants lack sufficient minimum contacts with Texas for them to be haled into its courts. Indeed, Plaintiffs have pled no facts to explain why a federal court in Texas would have personal jurisdiction over the Governor and the Secretary of State of Georgia for actions done in Georgia pertaining to a Georgia election that affects Georgia voters, not a Texas election or Texas voters. Plaintiffs have failed to allege any facts that would support this Court's exercise of specific or general personal jurisdiction over the Georgia Defendants, as they have not even alleged that the Georgia Defendants' actions were purposefully directed at residents of Texas and that the litigation results from alleged injuries that arose out of or are related to those activities alleged, or that the Georgia Defendants have general business contacts with Texas. (*See* Doc. 14); *see also Wisconsin Voters Alliance, et al. v. Pence,* No. 20-3791, 2021 U.S. Dist. Lexis 127, at * 4 (D.D.C. Jan. 4, 2021) (dismissing challenge to Georgia's election results brought against the Georgia Governor and Georgia Secretary of State in part because of a lack of personal jurisdiction over the Georgia Defendants in the District of Columbia.). In fact, in the paragraph of Plaintiffs' complaint where they boldly allege that this Court has personal jurisdiction over certain Defendants, they only allege that this Court has

personal jurisdiction over the "federal elected officials and private individuals named as Defendants," not any of the State Defendants. (Doc. 14 ¶ 76).

The Supreme Court has routinely said "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State," *Walden*, 571 U.S. at 284. This is certainly not the case here. The Georgia Defendants did not create contacts with Texas by overseeing and certifying an election in Georgia. And to the extent that it can somehow be alleged that the Georgia Defendants' conduct created a contact with Texas, their actions and any resultant harm would merely be "a random, fortuitous, or attenuated contact," which is not sufficient to bring them into Texas courts. *Id.* at 286 (quotation omitted). Because there is simply no purposeful availment of the privilege of conducting activities within Texas by the Georgia Defendants, exercising personal jurisdiction over them would violate their due process rights and "offend 'traditional notions of fair play and substantial justice.'" *Id.* at 283 (quoting *International Shoe Co.*, 326 U.S. at 316). Therefore, this Court must dismiss the Georgia Defendants from this action for lack of personal jurisdiction.

### III. Plaintiffs' Claims Against the Georgia Defendants are Barred by the Eleventh Amendment.

Plaintiffs' claims are asserted against the Georgia Defendants in their official capacities. (*See* Doc. 14 ¶ 68; Doc. 14-2 at 3). These claims are barred by the Eleventh Amendment. The Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid

congressional override, when the State is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because claims against public officials in their official capacities are merely another way of pleading an action against the entity of which the officer is an agent, "official capacity" claims against a state officer are included in the Eleventh Amendment's bar. *Kentucky*, 473 U.S. at 165. While an exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), it is limited to suits against state officers for prospective injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997). "A federal court cannot award retrospective relief, designed to remedy past violations of federal law." *Id.*; *Simmons v. Smith*, 774 F. App'x 228, 229 (5th Cir. 2019) (*quoting Papasan v. Allain*, 478 U.S. 265, 278, 106 S. Ct. 2932 (1986) (stating the Ex parte Young exception does not apply when a plaintiff seeks relief for "a past violation of federal law.").

Plaintiffs' claims for money damages, including "General Damages . . . [and] Punitive Damages in an amount to be determined at the time of trial," as well as injunctive relief, (doc. 14 at 58-59), are premised on the conduct of the November 3, 2020 General Election and the certification of results that have already taken place. Accordingly, they are barred because they are retrospective in nature. "Retrospective relief is backward-looking, and seeks to remedy harm 'resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014) (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). Plaintiffs' claims for any relief

related to the conduct of the November 3, 2020, are entirely retrospective and barred by the Eleventh Amendment, and therefore, their claims should be dismissed against the Georgia Defendants.

## IV.  Plaintiffs Lack Standing.

Plaintiffs' claims suffer from another fatal jurisdictional defect: lack of standing. Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. A party invoking federal jurisdiction bears the burden of establishing standing at the commencement of the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As an irreducible constitutional minimum, Plaintiffs must demonstrate a "[1] concrete, particularized, and actual or imminent [harm]; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *see also Lujan*, 504 U.S. at 561. Additionally, as the party invoking federal jurisdiction, Plaintiffs bear the burden at the pleadings phase of "clearly alleg[ing] facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 1547 n.6 (quotation marks omitted).

## A. Plaintiffs have not clearly alleged an injury in fact.

"'[T]he first and foremost of standing's three elements' is injury in fact." *Ctr. for Biological Diversity v. United States EPA*, 937 F.3d 533, 537 (5th Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1547). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs cannot show, and have not alleged, that the Georgia Defendants' actions relating to the presidential election conducted in Georgia, even if unconstitutional as Plaintiffs posit, which they are not, harmed them at all. Plaintiffs' alleged injury, to put it simply, is that all of the Defendants—without clearly specifying what the Georgia Defendants specifically did—conspired to not follow state and federal laws, which essentially deprived them of their right to vote, diluted their vote, and deprived them of a republican form of government. (*See* Doc. 14 ¶¶ 128-176). Plaintiffs' alleged injury is not an injury particularized to Plaintiffs that is "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). This is because the complaints that Plaintiffs raise can be raised by any citizen, and in fact, they acknowledge as much by repeatedly stating that all 328 million Americans were harmed by the Defendants' conduct. (*See e.g.*, Doc. 14 ¶¶ 86, 87, 99, and 100) (stating that the effect of the perceived conspiracy was to "deprive three hundred and twenty–eight million Americans of their civil rights."). However, as the Eleventh Circuit recently

13

held in *Wood v. Raffensperger*—another unsuccessful attempt to overturn the 2020 Presidential election—a claim that the government has not followed the law, without more, is a generalized grievance, because any voter can raise it. 981 F. 3d 1307, 1314 (11th Cir. 2020). Additionally, the Supreme Court has stated that, in vote dilution and gerrymandering cases, the injury is district specific and not state wide in nature, and thus, a voter only has standing to bring claims concerning their own district. *See Gill*, 138 S. Ct. at 1930. Otherwise, the Supreme Court has stated, that person is asserting "only a generalized grievance against governmental conduct of which he or she does not approve." *Id. see also Lance v. Coffman*, 549 U.S. 437, 440– 41 (2007) (holding that "a generalized grievance that is plainly undifferentiated and common to all members of the public" is not sufficient for standing).

Here, Plaintiffs are not only raising claims that do not involve their own district, but also do not involve their own state, as, none of the named Plaintiffs allege to be Georgia citizens or to have voted in the 2020 Presidential Election in Georgia. As for the Georgia Defendants, Plaintiffs fail to allege any specific facts that their actions had any effect on the rights of people in other states. Therefore, Plaintiffs are only raising a generalized grievance against government conduct they do not approve of, which is insufficient in meeting the harm requirement of Article III standing. *Whitford*, 138 S. Ct. at 1930.

By Plaintiffs' own admission, any voter in any state could bring the same claims they raise here. (*See* Doc. 14 ¶¶ 86, 87, 99, 100) (stating that the effect of the

perceived conspiracy was to "deprive three hundred and twenty–eight million Americans of their civil rights."). Accordingly, Plaintiffs only assert a generalized grievance, rather than a concrete and particularized injury sufficient to satisfy Article III standing.

### B. Any perceived injury Plaintiffs allege they have suffered is not traceable to the Georgia Defendants or redressable by this Court.

Not only have Plaintiffs failed to demonstrate an injury in fact, they cannot satisfy the causation requirement of standing, which requires there to be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged *action of the defendant*, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation omitted) (emphasis added); *see also Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (same). Plaintiffs offer no explanation whatsoever as to how any injury they claim to have suffered would be traceable to any action of the Georgia Defendants, especially considering that none of the Plaintiffs voted in Georgia during the 2020 Presidential Election, nor could they. *See Trump v. Kemp*, No. 1:20-cv-05310-MHC, 2021 U.S. Dist. LEXIS 4185, at *14-15 (N.D. Ga. Jan. 5, 2021) ("because Defendants [the Georgia Governor and Secretary of State] did not have any role in the counting of any allegedly illegal votes, Plaintiff is unable to show that any injury he suffered was fairly traceable to any action on the part of Defendants or redressable by any judgment against Defendants"). Therefore, not

only could the Georgia Defendants not have caused an injury to the Plaintiffs, no injury can be traceable to the Georgia Defendants.

In sum, Plaintiffs allege only a vague injury to the right to vote that is common to all voters. This is not a cognizable injury traceable to the Georgia Defendants that is sufficient to support Article III standing. Accordingly, the Court lacks subject matter jurisdiction over this action and it should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against the Georgia Defendants must be dismissed.

Respectfully submitted, this 27th day of May, 2021.

Christopher M. Carr                    112505
Attorney General
Bryan K. Webb                           743580
Deputy Attorney General
Russell D. Willard                      760280
Senior Assistant Attorney General

*/s/ Lee M. Stoy, Jr.*
Lee M. Stoy, Jr.                        884654
Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334
lstoy@law.ga.gov
404-458-3661 (tel)
404-657-9932 (fax)

*Attorneys for Georgia Defendants*

**Certificate of Service**

I hereby certify that on this 27th day of May 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing. I further certify that a true and correct copy of the forgoing document was sent via the Court's ECF system to all registered parties.

/s/ *Lee M. Stoy, Jr.*
Lee M. Stoy, Jr.    884654
Assistant Attorney General